IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| DONNA GARCIA, Individually and As Guardian <u>Ad Litem</u> for Her Minor Children, J.L. and G.L.<br><br>       Plaintiff,<br><br>   v.<br><br>CITY AND COUNTY OF HONOLULU; RONALD J. LOMBARDI; APRIL DANIELS; ARLYNN ORPILLA; BONNIE McKEWEN; HAROLD UEHARA; TIMOTHY SLOVAK; MIKEL FREDERICK; ROBERT A. CRAVALHO; DARRIEN THORNLEY; GARY DANIELS; THOMAS NITTA; LEONARD NISHIMURA; BENJAMIN MOSZKOWICZ; ALAN RODRIGUES; KEITH VEGAS; LANELL ARAKAWA; BRIAN BLACKWELL; NATHAN HEE; BRANDON LAU; RYAN HIRONAKA; PAUL LEE; and JOHN and/or JANE DOES 1-10,<br><br>       Defendants. | Civ. No. 18-00100 ACK-KSC |

<u>ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS</u>

For the reasons set forth below, the Court GRANTS Defendants' motions to dismiss for failure to state claims upon which relief can be granted as follows:

1. The Court GRANTS WITH PREJUDICE the Officer Defendants' Motion as to all claims except those asserted against Officers Arakawa, Hee, and Lee in their individual capacities, which are dismissed WITHOUT PREJUDICE;

2. The Court GRANTS WITH PREJUDICE Defendant Cravalho's
   Motion and Defendant Moszkowicz's Motion as to all
   claims; and

3. The Court GRANTS WITHOUT PREJUDICE Defendant
   Honolulu's Motion as to all claims.

**PROCEDURAL BACKGROUND**

On March 15, 2018, Plaintiff Donna Garcia,
individually and as guardian ad litem for her minor children,
J.L. and G.L. ("Plaintiff") filed a Complaint against the City
and County of Honolulu ("Defendant Honolulu"), twenty-one
Honolulu Police Department ("HPD") officers, and John and/or
Jane Does 1-10 ("Doe Defendants").  ECF No. 1 ("Compl.") ¶¶ 11-
14.  The twenty-one HPD officer defendants are sued in both
their individual and official capacities, and are Ronald J.
Lombardi ("Defendant Lombardi"), Robert A. Cravalho ("Defendant
Cravalho"), Benjamin Moszkowicz ("Defendant Moszkowicz"), April
Daniels, Arlynn Orpilla, Bonnie McKewen, Harold Uehara, Timothy
Slovak, Mikel Frederick, Darrien Thornley, Gary Daniels, Thomas
Nitta, Leonard Nishimura, Alan Rodrigues, Keith Vegas, Lanell
Arakawa, Brian Blackwell, Nathan Hee, Brandon Lau, Ryan
Hironaka, and Paul Lee (the "Officer Defendants").  Id. ¶ 13.

The Complaint asserts five causes of action.  Counts
I, II and III, arising under 42 U.S.C. § 1983 ("Section 1983"),
allege that Defendants violated Plaintiff's rights under the
Equal Protection Clause of the Fourteenth Amendment.  Id. ¶¶

145-160.  Counts IV and V allege state law claims for intentional infliction of emotional distress ("IIED")[1] and negligence.  Id. ¶¶ 161-164.  Based on these claims, Plaintiff requests monetary relief, as well as punitive damages and attorneys' fees and costs.  Id. ¶ 164.

On May 4, 2018, Defendant Honolulu filed a Motion to Dismiss.  ECF No. 20.  ("Defendant Honolulu's Motion").  On May 14, 2018, Defendant Cravalho filed a Motion to Dismiss.  ECF No. 25.  ("Defendant Cravalho's Motion").  On June 19, 2018, Defendant Moszkowicz filed a Motion to Dismiss.  ECF No. 40.  ("Defendant Moszkowicz's Motion").  On July 31, 2018, the remaining Officer Defendants (with the notable exception of Defendant Lombardi) filed a Motion to Dismiss.  ECF No. 45.  ("Officer Defendants' Motion").  On October 11, 2018, Plaintiff filed her "Omnibus Memorandum in Opposition" to Defendant Honolulu's Motion, Defendant Cravalho's Motion, and Defendant Moszkowicz's Motion.  ECF No. 54.  ("Omnibus Opposition").  On October 15, Plaintiff filed her Memorandum in Opposition to Officer Defendants' Motion.  ECF No. 57 ("Second Opposition").  On October 18, 2018, Defendant Honolulu and Defendants Cravalho

---

[1] Plaintiff asserts her IIED claim solely against Defendant Lombardi.  Compl. ¶ 162.  Accordingly, because Defendant Lombardi has not filed a motion to dismiss, the Court does not address in this Order the adequacy of Plaintiff's claims against Defendant Lombardi.

and Moszkowicz filed their Replies.  ECF Nos. 58 and 59.  On October 22, 2018, the remaining Officer Defendants filed their Reply.  ECF No. 60.  The Court held a Hearing on Defendants' Motions on November 9, 2018 at 11:00 a.m.

## FACTUAL BACKGROUND

The facts in this order are recited only for the purpose of deciding Defendants' motions to dismiss and are not intended to be findings of fact upon which the parties may rely in future proceedings.

According to the Complaint, Plaintiff is employed as an officer with the Department of Homeland Security, Customs and Border Protection and currently resides in Georgia, having left Honolulu in 2009.  Compl. ¶¶ 9-10.  Defendant Lombardi is currently employed as an HPD officer and resides in Honolulu. Id. ¶ 12.  Defendants Cravalho and Moszkowicz, as well as the remaining Officer Defendants, are all currently employed as HPD officers.  Id. ¶ 13.  Defendant Honolulu is a municipal corporation of the State of Hawai'i.  Id. ¶ 11.

Plaintiff and Defendant Lombardi were married in November 1999.  Id. ¶ 15.  They have two children together, J.L. and G.L.  Id. ¶ 16.  Plaintiff and Defendant Lombardi were separated in November 2007, and divorced on February 14, 2011. Id. ¶ 17.  The separation and divorce were precipitated by Defendant Lombardi's sexual abuse of his children and his

physical domestic abuse of Plaintiff.  Id. ¶ 18.  In the final
divorce decree, Plaintiff was awarded sole legal and physical
custody of the children.  Id. ¶ 19.  Defendant Lombardi was
permitted phone visitation with the children and in-person
visitation under the supervision and approval of their current
treating therapist and Plaintiff.  Id.

The Complaint states that Plaintiff has been
victimized and harassed by Defendant Lombardi on an ongoing
basis since she and Defendant Lombardi separated in November
2007.  Id. ¶ 3.  On March 2, 2008, G.L. reported that she was
sexually assaulted by Defendant Lombardi.  Id. ¶ 20.  On March
7, 2008, G.L. was interviewed at the Children's Justice Center
in Honolulu regarding the reported sexual assault; J.L. was
interviewed regarding another incident where Defendant Lombardi
apparently sexually assaulted J.L.  Id. ¶ 21-22.

During the course of 2008, Plaintiff obtained three
protective orders against Defendant Lombardi.  Id. ¶¶ 27, 37 and
44.  Plaintiff also obtained a pre-decree relief order in her
divorce action.  Id. ¶ 34.  The first protective order was
obtained on March 7, 2008 and remained in effect until June 5,
2008.  Id. ¶¶ 27-28.  The second protective order was obtained
on June 18, 2008 and remained in effect until July 9, 2008, when
it was dissolved by agreement of the parties and replaced by the
pre-decree relief order dated July 15, 2008.  Id. ¶ 37.  The

third protective order was obtained on September 26, 2008 and remained in effect until March 26, 2009. Id. ¶ 44. The pre-decree relief order stayed in effect until February 14, 2011 when Plaintiff's final divorce decree was entered. Id. ¶ 19.

The first protective order was obtained based on threats by Defendant Lombardi to Plaintiff and the physical assault of J.L. and sexual assault of G.L. Id. ¶ 25. The second protective order was obtained based on physical threats involving fire arms directed at Plaintiff and attempts by Defendant Lombardi to enter Plaintiff's residence without permission. Id. ¶ 36. The second protective order required Defendant Lombardi to surrender all of his firearms to the HPD, but the HPD apparently seized only three of Defendant Lombardi's four firearms. Id. ¶¶ 37, 39. The third protective order was obtained based on Defendant Lombardi stalking Plaintiff and being in possession of firearms while in Plaintiff's presence in violation of the pre-decree relief order. Id. ¶ 43. Defendant Lombardi's firearms were seized on September 28, 2008, three days after the third protective order was issued. Id. ¶ 47.

Plaintiff points out that upon service of each protective order, Defendant Lombardi was placed on restricted duty, but that the HPD restored his police authority shortly after each protective order expired. Id. ¶¶ 28, 40, 51. Plaintiff avers that the rapid restoration of Defendant

Lombardi's police authority after each protective order expired indicates that the HPD failed to conduct independent internal investigations regarding the facts underlying the protective orders. Id. ¶¶ 29, 41, 52.

Plaintiff also contends that the HPD, Doe Defendants and Defendant Honolulu helped Defendant Lombardi pass a polygraph examination with respect to the first protective order sought after G.L. reported that Defendant Lombardi sexually assaulted her. Id. ¶¶ 30-32. The Complaint alleges that the HPD, Doe Defendants and Defendant Honolulu provided Defendant Lombardi with the polygraph questions in advance, selected the examiner, ignored physical evidence of sexual assault on G.L.'s body in addition to other evidence of sexual assault, and provided Defendant Lombardi with the videotaped interviews of G.L. and J.L. regarding their sexual assaults. Id. ¶¶ 23, 30-32.

From June through November 2008, Plaintiff filed seven incident reports with the HPD documenting Defendant Lombardi's violations of the three protective orders and the pre-decree relief order. Id. ¶ 53. The incident reports described various violations, including that Defendant Lombardi: (1) visited Plaintiff and entered her residence and vehicle without her permission and while armed; (2) delivered "disturbing books about murders, crime scene investigation, and autopsies to

Aikahi Elementary School to be given to J.L.;" (3) harassed Plaintiff and the children at a Jamba Juice in Kailua; (4) harassed and threatened Plaintiff regarding unsupervised visitation with the children; (5) visited G.L. at her pre-school without permission; (6) and left Plaintiff a threatening voicemail.[2] Id. ¶¶ 54, 56-59, 61. The Department of the Prosecuting Attorney declined to prosecute the latter two incident reports. Id. ¶ 64. Plaintiff believes that the HPD did not confer with the Department of the Prosecuting Attorney regarding the other incidents. Id.

In August 2009, J.L. and G.L. both again reported that they were sexually assaulted by Defendant Lombardi. Id. ¶ 67. Their therapist, Dr. Becky Padua, reported this information to Defendant Cravalho and Child Welfare Services, along with her fear of reprisal from Defendant Lombardi for reporting the information as required by law. Id. ¶ 68. In September 2009, Plaintiff provided a letter and binder of evidence to the Prosecuting Attorney for the City and County of Honolulu in order to seek its assistance regarding these incidents. Id. ¶ 69. The materials were turned over to Internal Affairs at HPD. Id. ¶ 70.

---

[2] The Court notes that although the Complaint states that Plaintiff filed seven incident reports, the Complaint only sets forth information regarding the six incident reports described herein.

Plaintiff contends that between June 2008 and June 2011, Defendant Lombardi, with the assistance of various Officer Defendants, filed six false police reports against Plaintiff in order to harass, victimize, and harm her professionally, as well as unduly influence the ongoing divorce and custody proceedings. Id. ¶¶ 73-88.

After Plaintiff moved to Ottawa, Canada for work in October 2012, Defendant Lombardi continued to harass her via mail, phone and email. Id. ¶¶ 89-90. Plaintiff reported this information to the Ottawa Police Service ("OPS"), which contacted the HPD and opened a criminal harassment investigation into the matter. Id. ¶¶ 91-92.

On June 25, 2015, Plaintiff filed a written complaint with the Professional Standards Office ("PSO") of the HPD regarding the handling of the three protective orders, the pre-divorce decree, the OPS investigation, Defendant Lombardi's continued harassment, threats of retaliation, and violations of standing Family Court orders in Virginia and Hawai'i. Id. ¶ 94. Plaintiff was notified on May 11, 2017 that on November 9, 2015, her complaint was closed after having been determined to be "'more of a civil matter.'" Id. ¶ 95.

Between November 2015 and March 2016, Defendant Lombardi filed four incident reports falsely accusing Plaintiff of custodial interference, which were referred to the Department

of the Prosecuting Attorney.  Id. ¶¶ 98, 104.  In May 2016, Defendant Lombardi attempted to use these reports in a show cause action he brought in Fairfax County, Virginia Juvenile and Domestic Relations Court to have Plaintiff held in contempt for violating the custody agreement, despite the fact that Plaintiff retained full custody of the children after the divorce.  Id. ¶ 108.  That action was subsequently dismissed.  Id. ¶ 109.  Plaintiff was informed on February 27, 2017, that Department of the Prosecuting Attorney would be taking no action on the custodial interference reports.  Id. ¶ 107.

On March 15, 2017, Plaintiff filed a second written complaint with the PSO regarding the four false incident reports that Defendant Lombardi filed accusing Plaintiff of custodial interference.  Id. ¶ 109.  Plaintiff was notified on August 9, 2017 that her complaint was sustained.  Id. ¶ 111.  On May 24, 2017 and on January 30, 2018, Defendant Lombardi sent Plaintiff emails wherein he threatened to file additional police reports and bring charges alleging custodial interference.  Id. ¶¶ 110, 112.

The HPD has six standing policies which are designed to address the misconduct that Plaintiff alleges in her Complaint.  Omnibus Opposition at 8-11.  The policies are HPD Policy Nos. 2.21 ("Standards of Conduct"); 3.12 ("Employee Early Recognition System"); 3.26 ("Employees Involved in Domestic

Violence"); 4.18 ("Abuse of Family or Household Members"); 5.01

("Complaints and Internal Investigations"); and 7.09 ("Court

Orders for Protection"). Compl. ¶ 114.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes

the Court to dismiss a complaint that fails "to state a claim

upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Rule 12(b)(6) is read in conjunction with Rule 8(a), which

requires only "a short and plain statement of the claim showing

that the pleader is entitled to relief." Fed. R. Civ. P.

8(a)(2). Although Rule 8 does not require detailed factual

allegations, "it demands more than an unadorned, the-defendant-

unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S.

662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S.

544, 555 (2007)). "A pleading that offers 'labels and

conclusions' or 'a formulaic recitation of the elements of a

cause of action will not do.'" Id. (quoting Twombly, 550 U.S.

at 555).

To survive a motion to dismiss, the complaint "must

contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" Id. at 678

(2009) (quoting Twombly, 550 U.S. at 570). "[T]he tenet that a

court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions." Id. (citing

Twombly, 550 U.S. at 555). Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

When the Court dismisses a complaint pursuant to Rule 12(b)(6) it should grant leave to amend unless the pleading cannot be cured by new factual allegations. OSU Student All. v. Ray, 699 F.3d 1053, 1079 (9th Cir. 2012).

A statute of limitations defense may properly be raised in a motion to dismiss if statute of limitations issues are "apparent from the face of the complaint." Seven Arts Filmed Entm't Ltd. v. Content Media Corp., 733 F.3d 1251, 1254 (9th Cir. 2013) (citations omitted).

## DISCUSSION

Defendants first argue that Plaintiff's Section 1983 claims and negligence claims are time-barred by the relevant statute of limitations. Defendants next argue that, even if Plaintiff's claims are not time-barred, the Complaint fails to

allege sufficient facts to state any plausible Section 1983
claims or state law negligence claims.

The statute of limitations for personal injury and
negligence actions in Hawai'i is two years.  Haw. Rev. Stat. §
657-7.  Plaintiff filed her Complaint on March 15, 2018.  Only
the following allegations in the Complaint occurred within the
statute of limitations period:  (1) on March 18, 2016, Defendant
Lombardi allegedly filed a police report, authored by Officer
Arakawa and approved by Officer Hee, accusing Plaintiff of
custodial interference, Compl. ¶ 103; (2) at an unidentified
time thereafter, Defendant Lombardi used that police report in
connection with his custody dispute with Plaintiff, Id. ¶ 108;
(3) on May 11, 2017, Officer Lee notified Plaintiff via email
that one of her complaints against Defendant Lombardi had been
closed on November 9, 2015, Id. ¶¶ 95-96; (4) on August 9, 2017,
the PSO notified Plaintiff that her complaint dated March 15,
2017 regarding the allegedly false police reports that Defendant
Lombardi filed against her was sustained, Id. ¶¶ 109, 111; and
(5) Defendant Lombardi sent two emails to Plaintiff dated May
24, 2017 and January 30, 2018, where he threatened to bring
custodial interference charges against Plaintiff.  Id. ¶¶ 110,
112.  Plaintiff alleges that she immediately forwarded the first
of these two emails to Officer Lee.  Id. ¶ 110.

The Court first addresses whether Plaintiff's claims against the moving defendants are time-barred, and then turns to the question of whether Plaintiff's Complaint adequately alleges claims upon which relief can be granted.

## I.    Statute of Limitations

Plaintiff argues that none of her claims are time-barred because she has alleged a continuing violation with respect to Defendant Honolulu and each of the individual Officer Defendants.

For purposes of Section 1983 claims, federal courts apply the forum state's statute of limitations and its tolling provisions for personal injury tort actions. Klein v. City of Beverly Hills, 865 F.3d 1276, 1278 (9th Cir. 2017). Hawaiʻi has a two-year statute of limitations for personal injury actions. Haw. Rev. Stat. § 657-7. However, federal law governs when Section 1983 claims accrue. Klein, 865 F.3d at 1278. "Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." Id. (citing Maldonado v. Harris, 370 F.3d 945, 955 (9th Cir. 2004)). However, where a plaintiff alleges a "continuing violation," the claim accrues on the date of the last injury. Heard v. Sheahan, 253 F.3d 316, 319 (7th Cir. 2001) (citing Matson v. Burlington N. Santa Fe R.R., 240 F.3d 1233, 1237 (10th Cir. 2001)).

The continuing violation doctrine allows a plaintiff to sue where her injuries are "the consequence of a numerous and continuous series of events," which, under certain circumstances, can permit a plaintiff to bring a claim based on events that would normally be time-barred. Heard, 253 F.3d at 319. The doctrine is meant "to prevent a defendant from using its earlier illegal conduct to avoid liability for later illegal conduct of the same sort." O'Loghlin v. Cty. of Orange, 229 F.3d 871, 875 (9th Cir. 2000). A continuing violation is one where "it would be unreasonable to require or even permit [a plaintiff] to sue separately over every incident of the defendant's unlawful conduct." Heard, 253 F.3d at 319.

Historically, a plaintiff could invoke the continuing violation doctrine in the Ninth Circuit in two ways: (1) the "related acts" method; and (2) the discriminatory pattern or practice method. The "related acts" method required a plaintiff to allege timely acts that were sufficiently related to time-barred acts, such that the acts as a whole constituted a continuing violation. Gutowsky v. Cty. of Placer, 108 F.3d 256, 259 (9th Cir. 1997). The Supreme Court "invalidated the 'related acts' method of establishing a continuing violation, stating that 'discrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges.'" Carpinteria Valley Farms, Ltd. v. Cty.

of Santa Barbara, 344 F.3d 822, 828 (9th Cir. 2003) (quoting

Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002)).[3]

This Court has defined a discrete act as an "unlawful

practice that 'occurred' on the day it 'happened,'" which

includes, for example, 'termination, failure to promote, denial

of transfer, or refusal to hire.'" Yonemoto v. Shinseki, 3 F.

Supp. 3d 827, 842 (D. Haw. 2014) (quoting Morgan, 536 U.S. at

111, 114).[4]  Put another way, a discrete act of discrimination is

"one that constitutes a separate, actionable unlawful practice

that is temporally distinct."  Mansourian v. Regents of the

Univ. of California, No. CIV. S 03-2591 FCD EFB, 2011 WL

1897428, at *2 (E.D. Cal. May 18, 2011) (citing Morgan, 536 U.S.

at 114).  When a plaintiff alleges a claim based upon discrete

discriminatory acts, the statute of limitations runs separately

---

[3] Although Morgan involved a Title VII claim, the Ninth Circuit
has applied the Morgan framework to bar Section 1983 claims that
are based on discrete time-barred acts despite the fact that
those acts are related to timely-filed claims.  Carpinteria, 344
F.3d at 829 (citing RK Ventures, Inc. v. City of Seattle, 307
F.3d 1045, 1061 (9th Cir. 2002)).
[4] Examples of discrete acts in settings other than employment
discrimination include denial of a prisoner's request for
special meals during Ramadan, Long v. Makua, Civ. No. 16-00372
DWK-RLP, 2017 WL 5490835, at *5 (D. Haw. Nov. 15, 2017); a
city's withdrawal of a settlement offer after filing a public
nuisance abatement claim against a nightclub, RK Ventures, 307
F.3d at 1050; and a city's issuance of stop orders against a
developer's construction projects, Thompson v. City of Shasta
Lake, 314 F. Supp. 2d 1017, 1026-27 (E.D. Cal. 2004).

from each discrete act, and the continuing violation doctrine is no longer applicable. <u>Morgan</u>, 536 U.S. at 113.

After <u>Morgan</u>, "[o]ne of the only viable pathways to maintaining a cause of action for past acts occurring outside the statute of limitations period is where a plaintiff's claims are based, not on discrete acts, but rather on 'a series of separate acts that collectively constitute one unlawful practice.'" <u>Long</u>, 2017 WL 5490835, at *5 (quoting <u>RK Ventures</u>, 307 F.3d at 1061 n. 13).[5]

Thus, because Plaintiff may no longer avail herself of the "related acts" method of bringing a Section 1983 claim, the question necessarily becomes whether Plaintiff's Section 1983 claim is predicated upon a series of discrete discriminatory acts or upon a systematic pattern or practice of discrimination.

The Ninth Circuit has determined that a claim based on discrete time-barred acts involves a claim that "does not stem from [a discriminatory] policy . . . but rather from the individualized decisions that resulted from implementation of a

---

[5] <u>See also</u> <u>Carpinteria</u>, 344 F.3d at 829 n. 3 (noting that the Supreme Court "declined to address the 'systematic practice-or-pattern'" method of invoking the continuing violation doctrine) (citing <u>Morgan</u>, 536 U.S. at 115 n. 9); <u>Mansourian v. Regents of the Univ. of California</u>, 602 F.3d 957, 974 n. 22 (9th Cir. 2010) (stating that "<u>Morgan</u> left undisturbed [the Ninth Circuit's] case law governing continuing systemic violations" and applying the doctrine in the context of a Section 1983 sex discrimination claim).

policy." Pouncil v. Tilton, 704 F.3d 568, 579 (9th Cir. 2012) (citing Cherosky v. Henderson, 330 F.3d 1243, 1247 (9th Cir. 2003)). Indeed, "pattern-or-practice claims cannot be based on 'sporadic discriminatory acts' but rather must be based on discriminatory conduct that is widespread." Cherosky, 330 F.3d at 1247 (quoting Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 336 (1977)).

In the instant case, Plaintiff argues that Defendant Honolulu's continuing violation of her constitutional rights is its "de facto policy, practice and custom of ignoring criminal conduct, misconduct, and violations of its standing regulations and orders committed by [HPD] officers." Omnibus Opposition at 15. Although the Complaint is replete with allegations of individual instances in which various officer defendants engaged in acts of misfeasance and nonfeasance in violation of numerous internal HPD policies, the heart of Plaintiff's Complaint stems not from these numerous individual acts, but from Defendant Honolulu's alleged "de facto policy." Cf. Cherosky, 330 F.3d at 1247 (rejecting the continuing violation doctrine where "the heart of plaintiffs' complaint [did] not stem from [a discriminatory] policy regarding the use of respirators, but rather from the individualized decisions that resulted from implementation of a policy").

The Ninth Circuit in Gutowsky held that the Plaintiff successfully invoked the continuing violation doctrine in a Section 1983 case involving employment discrimination. 108 F.3d at 260. In that case, the Ninth Circuit stated that the Plaintiff "presents specific examples of discrimination which are not the basis of her charge of discrimination but evidence that a policy of discrimination pervaded" the employer's internal promotion decisions, and that the employer engaged in "widespread polic[ies] and practices of discrimination." Id. (emphasis in original) (internal quotations and citation omitted). Similar to Gutowsky, the Plaintiff in the instant case attacks a practice or policy—Defendant Honolulu's alleged policy of ignoring when HPD officers engage in misconduct that violates internal HPD policies—which Plaintiff alleges violates her constitutional rights and continues to affect her to this day. Omnibus Motion at 19.

Furthermore, it is unclear that any single act that Plaintiff complains of gave rise to a cause of action. A discrete act is one that gives rise to a claim when the act occurs. See Yonemoto, 3 F. Supp. 3d at 842. Although Plaintiff's allegations largely consist of acts by HPD officers, her purported equal protection claim arises from Defendant Honolulu and the Officer Defendants' failure to discipline and

take action against Defendant Lombardi and other HPD officers when officers act in violation of HPD internal policies.

Plaintiff's Complaint also features numerous allegations of instances in which the HPD apparently did respond to the police reports and other complaints that she filed. For example, Plaintiff alleges that one of the complaints she filed against Defendant Lombardi was sustained, and that another of her complaints was not sustained. Compl. ¶ 182. However, these apparent contradictions do not disavow Plaintiff's broader allegation that Defendant Honolulu and the HPD officers have a "de facto policy" of ignoring misconduct that HPD officers engage in. See Shomo v. City of New York, 579 F.3d 176, 182 (2d Cir. 2009) (affirming the district court's finding that a prisoner's continuing violation was based upon an ongoing discriminatory policy of doctors and prison staff disregarding medical treatment recommendations, even though the prisoner was frequently seen by doctors).

Accordingly, the Court finds that Plaintiff's claims are based upon a persistent discriminatory policy or practice, and not upon discrete discriminatory acts. The next question is whether Plaintiff has successfully alleged a continuing violation doctrine.

To invoke the continuing violation doctrine in a Section 1983 case, a plaintiff must show "the maintenance of a

discriminatory system both before and during" the limitations

period.  Gutowsky, 108 F.3d at 260.  See also Mansourian, 602

F.3d at 974 (providing that a plaintiff has adequately pled an

ongoing claim if she alleges that a systematic discriminatory

policy or practice operated, in part, within the limitations

period).  More specifically, "the plaintiff 'must allege both

the existence of an ongoing policy of discrimination and some

non-time-barred acts taken in furtherance of that policy.'"

Shomo, 579 F.3d at 181 (quoting Harris v. City of New York, 186

F.3d 243, 248 (2d Cir. 1999)).[6]

Having established that Plaintiff's claims are based

on an alleged discriminatory policy, the Court must determine

whether Plaintiff has alleged non-time-barred acts with respect

to the various defendants in order to determine whether

Plaintiff has successfully invoked the doctrine.

A.    Claims Against Defendant Honolulu

Plaintiff alleges that she suffered from Defendant

Honolulu's alleged "de facto policy" of ignoring HPD officer

---

[6] See also Scarim v. Ryan, No. CV 11-1736-PHX-SRB, 2012 WL
12869325, at *2-3 (D. Ariz. Dec. 13, 2012) (applying the
continuing violations test to a prisoner's claim of deliberate
indifference to medical needs in violation of the Eighth
Amendment); Rodriguez v. City of Los Angeles, Case No. CV 11-
01135  DMG (JEMx), at *18-19 (C.D. Cal. May 8, 2015) (applying
the continuing violations test to plaintiffs' claims that
serving plaintiffs with unconstitutional injunctions, in
furtherance of a discriminatory policy, deprived plaintiffs of
procedural due process under the Fourteenth Amendment).

misfeasance and nonfeasance from 2008 until 2018 in violation of her right to equal protection.  Compl. ¶ 3.  Plaintiff alleges that the violation arose because Defendant Honolulu failed to adequately enforce various protective and restraining orders against Defendant Lombardi.  Id.  Plaintiff also alleges that Defendant Honolulu, by virtue of its "de facto policy," failed to take action against Defendant Lombardi and other officers who allegedly assisted him with filing a police report on March 18, 2016, Id. ¶ 103; failed to take action against Defendant Lombardi in response to threatening emails he sent Plaintiff in 2017 and 2018, Id. ¶¶ 110, 112; and failed to take action when Plaintiff filed a complaint in 2017 regarding Defendant Honolulu's failure to act in response to Defendant Lombardi's filing four police reports with the alleged help of other HPD officers.  Id. ¶ 109.

Accordingly, the Court finds that Plaintiff has alleged that Defendant Honolulu has a discriminatory policy, and has also alleged several acts sufficient to show that the policy was in place within the statute of limitations period. Therefore, Plaintiff has successfully invoked the continuing violation doctrine with respect to her claims against Defendant Honolulu, and, for that reason, Plaintiff's claims against Defendant Honolulu are not time-barred.

## B. Claims Against the Officer Defendants, Defendant Cravalho, and Defendant Moszkowicz

It appears from the face of Plaintiff's Complaint that only three events concerning the individual Officer Defendants occurred within the two-year statute of limitations period—that is, after March 15, 2016. The alleged events are as follows: (1) on March 18, 2016, Defendant Lombardi filed a police report that was authored by Officer Arakawa and approved by Officer Hee, which alleged Plaintiff committed custodial interference; (2) on May 11, 2017, Officer Lee notified Plaintiff via email that one of her complaints against Defendant Lombardi had been closed on November 9, 2015; and (3) on May 24, 2017, Defendant Lombardi sent Plaintiff an email threatening to bring custodial interference charges against her, which Plaintiff immediately forwarded to Officer Lee.

Shomo v. City of New York involved a prisoner who filed a Section 1983 suit alleging the City of New York, as well as several corrections officers and doctors, violated the prisoner's Eighth Amendment rights as a result of their deliberate indifference to his medical needs. 579 F.3d at 179. In that case, the prisoner alleged that the defendants engaged in an ongoing unconstitutional policy of ignoring recommendations regarding his medical treatment. Id. at 182. The court affirmed the district court's decision to dismiss as

untimely claims against several of the individual doctors and corrections officers where the events that gave rise to those claims were time-barred, notwithstanding that the prisoner had alleged the existence of a discriminatory policy.  <u>Id.</u> at 183-84.  However, the court noted that the prisoner's municipal liability claim would still be viable if he alleged non-time-barred acts in furtherance of the policy.  <u>Id.</u> at 185.  The court granted the prisoner leave to amend his complaint accordingly.  <u>Id.</u> at 185.

Although <u>Shomo</u> dealt with Section 1983 claims based on alleged Eighth Amendment violations, the facts of that case are similar to those in the instant case.  As in <u>Shomo</u>, Plaintiff attempts to invoke the continuing violation doctrine by alleging that the defendants have an unlawful discriminatory policy. Plaintiff has successfully invoked the doctrine with respect to Defendant Honolulu because she alleged specific acts taken in furtherance of the discriminatory policy that occurred after March 15, 2016.

As for the Officer Defendants, Plaintiff has only alleged non-time-barred acts taken in furtherance of the alleged discriminatory policy that involve Officers Arakawa, Hee, and Lee.  Accordingly, the Court GRANTS the Officer Defendants' Motion as to all of Plaintiff's claims, except those claims against Officers Arakawa, Hee, and Lee.

Defendant Cravalho and Defendant Moszkowicz filed motions to dismiss separately from the other Officer Defendants, and also argue that the claims against them are time-barred. Because Plaintiff has not alleged that Defendants Cravalho or Moszkowicz engaged in any acts in furtherance of the alleged discriminatory policy after March 15, 2016, the Court GRANTS Defendant Cravalho's Motion and Defendant Moszkowicz's Motion.

In addition, at the Hearing held on November 9, 2018, Plaintiff, through her counsel, conceded that her claims against the individual officers which are based on events not within the statute of limitations period are time-barred. Plaintiff and Defendants, through their counsel, subsequently agreed that such claims should be dismiss with prejudice. Accordingly, the Court GRANTS WITH PREJUDICE Defendants' motions to dismiss the claims against each of the individual officer defendants except for the claims against Officers Arakawa, Hee, and Lee, which are not time-barred.

## II. Claims Against Defendant Honolulu

Defendant Honolulu argues that Plaintiff's Section 1983 claims and negligence claim fail to state plausible claims for relief. The Court addresses each claim in turn.

### A. Section 1983 Claim (Count III)

Defendant Honolulu argues that Plaintiff's Section 1983 municipal liability claim ("Monell claim") should be

dismissed because the Complaint fails to allege facts that, accepted as true, plausibly state a claim for relief.

Section 1983 provides relief against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . causes . . . any citizen of the United Sates . . . the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution and laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). A "person" includes "state and local officials sued in their individual capacities, private individuals and entities which acted under color of state law, and local governmental entities." Park v. City and Cty. of Honolulu, 292 F. Supp. 3d, 1080, 1090 (D. Haw. 2018) (citing Vance v. Cty. of Santa Clara, 928 F. Supp. 993, 995-96 (N. D. Cal. 1996)); see generally Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658 (1978) (holding that a municipality is a "person" for purposes of Section 1983).

Local governments are only liable for Section 1983 violations "where 'the action that is alleged to be unconstitutional implements or executes a policy statement,

ordinance, regulation or decision officially adopted and promulgated by that body's officers.'" Anderson v. Warner, 451 F.3d 1063, 1070 (9th Cir. 2006) (citing Monell, 436 U.S. at 690). In other words, municipalities may not be held liable under Section 1983 for the actions of their employees based on a respondeat superior theory. Id. To satisfy the second element of a Section 1983 claim against a municipality, Monell requires the plaintiff to show that the municipality caused an employee or agent to violate the plaintiff's constitutional rights "under color of some official policy." 436 U.S. at 692.

Defendant Honolulu argues that Plaintiff's Complaint is deficient in two respects: first, that Plaintiff has not adequately alleged she was deprived of a constitutional right—specifically, equal protection of enforcement of the law; and second, that Plaintiff also has not adequately alleged additional requirements necessary to state a Section 1983 claim under Monell. Defendant Honolulu's Motion at 7. The Court addresses each argument in turn.

### 1. Deprivation of the Right to Equal Protection

The Equal Protection Clause of the Fourteenth Amendment prohibits a state from denying to "any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. The Equal Protection Clause essentially mandates that state and local governments treat alike all

persons that are similarly situated.  City of Cleburne v. Cleburne Living Ctr. 473 U.S. 432, 439 (1985).

There are two ways to establish an equal protection violation.  First, a plaintiff may allege that she was intentionally discriminated against on the basis of her membership in an identifiable class.  Flores v. Morgan Hill Unified Sch. Dist., 324 F.3d 1130, 1134-37 (9th Cir. 2003) (finding that the plaintiffs were "members of an identifiable class for equal protection purposes because they allege[d] discrimination on the basis of sexual orientation") (citing High Tech Gays v. Def. Indus. Sec. Clearance Office, 895 F.2d 563, 570-74 (9th Cir. 1990) ("finding that homosexuals are not a suspect or quasi-suspect class, but are a definable group entitled to rational basis scrutiny for equal protection purposes").

Second, a plaintiff may allege that the defendant intentionally treated her differently from similarly situated individuals, and that there was no rational state purpose for the different treatment.  Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curium); see also Hyland v. Office of Hous. & Cmty. Dev., Civ. No. 15-00504 LEK-RLP, 2018 WL 4119903, at *4 (D. Haw. Aug. 29, 2018).  The second type of claim, where the plaintiff does not allege membership in a particular class,

is known as a "class-of-one" equal protection claim.  <u>Olech</u>, 528
U.S. at 564.

Plaintiff does not specify which type of equal
protection claim she is asserting.  Indeed, it is reasonable to
read the Complaint as alleging that Plaintiff is part of a class
consisting of victims of domestic abuse whose abusers are HPD
officers.  Compl. at ¶ 3.  However, because Plaintiff's
Complaint is replete with allegations about how she, as an
individual, was treated by the various defendants, it is also
reasonable to read Plaintiff's Complaint as asserting a class-
of-one claim.  Accordingly, the Court addresses whether
Plaintiff has adequately alleged that she was subject to a
constitutional deprivation under both equal protection theories.

### i.  Whether Plaintiff Adequately Alleges a Class-Based Equal Protection Claim

A class-based equal protection claim requires the
plaintiff to allege that she was intentionally discriminated
against based on her membership in an identifiable class.
<u>Flores</u>, 324 F.3d at 1134; <u>see also</u> <u>Gallinger v. Becerra</u>, 898
F.3d 1012, 1017 (9th Cir. 2018).  Once the plaintiff has
established that she is a member of an identifiable class, the
plaintiff must identify a similarly situated class against which
the plaintiff's class can be compared.  <u>Freeman v. City of Santa
Ana</u>, 68 F.3d 1180, 1187 (9th Cir. 1995).  If the plaintiff

alleges membership in a protected class, such as race, national origin, or sex, or if the classification implicates a fundamental right, the court applies a heightened level of scrutiny in order to determine whether the government's treatment is constitutional.  See Gallinger, 898 F.3d at 1017; Freeman, 68 F.3d at 1187.  If plaintiff has not alleged membership in a protected class, the court applies rational basis review.  Gallinger, 898 F.3d 1017.

Plaintiff argues that Defendant Honolulu's conduct violated her right to equal protection of the enforcement of the law.[7]  Omnibus Opposition at 22.  Defendant Honolulu argues in its Reply that Plaintiff has failed to allege that she is a member of a protected class.[8]  Defendant Honolulu's Reply at 5.

---

[7] The Ninth Circuit has recognized that the Equal Protection Clause applies to enforcement of the law.  See, e.g., Estate of Macias v. Ihde, 219 F.3d 1018, 1028 (9th Cir. 2000) ("[t]here is a constitutional right . . . to have police services administered in a nondiscriminatory manner—a right that is violated when a state actor denies such protection to disfavored persons"); Navarro v. Block, 72 F.3d 712, 715-17 (9th Cir. 1996) (alleged police policy to treat domestic violence 911 calls less urgently than other 911 calls could form the basis for an equal protection claim); DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 197 n. 3 (1989) ("[t]he State may not, of course, selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause").

[8] The Court notes that because Defendant Honolulu raises this particular argument for the first time in its Reply, the argument "shall be disregarded."  L.R. 7.4.  Nevertheless, the Court addresses whether Plaintiff is part of an identifiable (Continued...)

Plaintiff alleges that she "was afforded little, if any, protection under the law as a victim of domestic violence and abuse because her abuser . . . was a[n] [HPD] officer." Compl. ¶ 3.  Plaintiff has adequately alleged a class—victims of domestic abuse whose abusers are HPD officers—and plead that she is a member of it because she states that her abuser was an HPD officer.  Id.  Accordingly, the Court finds that Plaintiff has adequately alleged she is a member of a class of domestic violence victims whose abusers are HPD officers, satisfying the first requirement for bringing a class-based equal protection claim.

However, Plaintiff's Complaint is deficient because she has not identified a similarly situated class against which her alleged class can be compared.  Plaintiff argues that the HPD's "de facto policy" of ignoring officer misfeasance and nonfeasance discriminates against victims whose perpetrators are HPD officers as opposed to victims whose perpetrators are not HPD officers.  Omnibus Opposition at 26.  However, nowhere in the Complaint has Plaintiff set forth plausible allegations identifying a second class of domestic abuse victims.  Plaintiff merely alleges, in a conclusory manner, that she was treated differently from other victims of domestic abuse because her

class because it is a requirement to state a cognizable equal protection claim.

abuser was an HPD officer. Such allegations are insufficient to withstand a 12(b)(6) motion.

The Ninth Circuit has observed that "[t]he goal of identifying a similarly situated class . . . is to isolate the factor allegedly subject to impermissible discrimination." Freeman, 68 F.3d at 1187 (internal quotations omitted). Alleging the existence of a similarly situated group of individuals is important because without such a "control group," a court cannot easily determine whether "unequal treatment of people in similar circumstances" has taken place. Id. (internal quotations omitted) (citing Attorney General v. Irish People, Inc., 684 F.2d 928, 946 (D.C. Cir. 1982); United States v. Aguilar, 883 F.2d 662, 706 (9th Cir. 1989)).

Plaintiff's claim is deficient not only because it fails to allege the existence of a similarly situated class, but also because it fails to allege—in a non-conclusory manner—that Plaintiff and members of her class were treated differently than a similarly situated class. For example, Plaintiff alleges that Defendant Honolulu's "de facto policy" of ignoring when HPD officers violate HPD Policy Number 3.26, titled "Employees Involved in Domestic Violence" and which requires formal investigations into allegations of domestic abuse against HPD officers—violates Plaintiff's right to equal protection. Compl. ¶¶ 123-26, 157-58. However, these allegations do not indicate

how members of Plaintiff's purported class were treated differently from members of another similarly situated class. Absent such allegations, the Court cannot conclude that there is a plausible inference that Plaintiff was deprived of her right to equal protection of the law.  See Iqbal, 556 U.S. at 678 ("The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully").

For the forgoing reasons, the Court finds that Plaintiff has failed to adequately plead the requirements necessary to bring an equal protection claim on a class-based theory.  Therefore, the Court must determine whether Plaintiff has adequately alleged a class-of-one equal protection violation.

### ii.  Whether Plaintiff Adequately Alleges a Class-of-One Equal Protection Claim

As an initial matter, the Court notes that the class-of-one theory does not apply to government action that "involve[s] discretionary decisionmaking based on a vast array of subjective, individualized assessments."  Engquist v. Oregon Dep't of Agric., 553 U.S. 591, 603 (2008).  Although the holding in Engquist was limited to barring class-of-one claims in the public employment context, id. at 605, the circuit courts are divided as to whether the class-of-one claim is a viable equal protection theory in the context of other discretionary forms of

government action, such as law enforcement.  Several circuits

have held that such claims are impermissible.  See, e.g.,

Flowers v. Minneapolis, 558 F.3d 794, 799-800 (8th Cir. 2009)

(holding that a police officer's investigative decisions may not

be attacked in a class-of-one equal protection claim); United

States v. Moore, 543 F.3d 891, 901 (7th Cir. 2008) (holding that

the exercise of prosecutorial discretion may not be challenged

in a class-of-one equal protection claim).  On the other hand,

the Seventh Circuit has permitted such claims in other law

enforcement situations.  See Hanes v. Zurick, 578 F.3d 491, 492

(7th Cir. 2009) (holding that a class-of-one claim was permitted

where officers repeatedly arrested plaintiff for reasons of

personal animus).

The Ninth Circuit has not definitively held that

class-of-one claims are permitted or barred in the law

enforcement context.  See, Williams v. Cty. of Alameda, 26 F.

Supp. 3d 925 (N.D. Cal. 2014) (permitting a class-of-one claim

asserting that the police intentionally treated plaintiff

differently from his similarly situated fiancé, but noting that

the Ninth Circuit has never addressed whether a class-of-one

claim is permissible in the law enforcement context).

Notwithstanding the dearth of authority in the Ninth

Circuit on class-of-one equal protection claims involving law

enforcement, the Court addresses whether Plaintiff's Complaint adequately states a claim for relief in this context.

"[A]n equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called 'class-of-one.'" Engquist, 553 U.S. at 601 (citing Olech, 528 U.S. at 564). To establish an equal protection violation based on a class-of-one theory, the plaintiff must allege that the defendant: "(1) intentionally (2) treated [the plaintiff] differently than other similarly situated [individuals], (3) without a rational basis." Gerhart v. Lake Cty., 637 F.3d 1013 (9th Cir. 2011). The plaintiff must also "show that the discriminatory treatment 'was intentionally directed just at him, as opposed . . . to being an accident or a random act.'" N. Pacifica LLC v. City of Pacifica, 526 F.3d 478 (9th Cir. 2008) (citing Jackson v. Burke, 256 F.3d 93, 96 (2d Cir. 2001)).

Plaintiff's Complaint fails to advance a plausible class-of-one equal protection claim for reasons similar to why it fails to advance a plausible class-based equal protection claim. Critically, Plaintiff does not allege that the Equal Protection Clause requires state and local governments to treat similarly situated individuals alike. This pleading deficiency is significant because, without more facts, it is unclear how

Defendant Honolulu intentionally discriminated against Plaintiff.

Although Plaintiff argues that the HPD's "de facto policy" of inaction violates the Equal Protection Clause "because it discriminates against victims such as Plaintiff whose perpetrators are [HPD] officers as opposed to those whose perpetrators are regular citizens," this argument is not supported by non-conclusory allegations in the Complaint. Omnibus Opposition at 39. Nowhere in the Complaint does Plaintiff, for example, allege how Defendant Honolulu treated other similarly situated individuals, or how she was treated differently from such individuals.

The Ninth Circuit has observed that where a plaintiff asserts a class-of-one theory complaining of conduct involving the exercise of discretion, "there must be some respect in which the discretion is being exercised so that the complaining individual is being treated less favorably than others generally are." Towery v. Brewer, 672 F.3d 650, 661, 941-42 (9th Cir. 2012). Because much of the police conduct[9] that Plaintiff

_____

[9] The conduct that Plaintiff complains of which involves the exercise of police discretion includes, for example, the HPD officers' decisions about how to investigate Defendant Lombardi in response to the complaints Plaintiff filed against him over the last ten years, and what, if any, disciplinary action to take in response to Plaintiff's complaints. The Court acknowledges, however, that certain of Plaintiff's allegations, (Continued...)

complains of involves the exercise of police discretion, Plaintiff must plead facts that show how the exercise of discretion resulted in less favorable treatment as compared to other individuals.  Plaintiff has not met this burden.

Accordingly, the Court finds that Plaintiff's allegations regarding the deprivation of her rights under the Equal Protection Clause are vague and conclusory.  Indeed, Plaintiff has not even set forth the basic elements of either a class-based or class-of-one equal protection claim.  Because Plaintiff has failed to allege that she was deprived of a constitutional right under the Equal Protection Clause, the Court finds that Plaintiff's Complaint does not adequately plead the first element of a Section 1983 claim.

### 2.   **Monell Liability**

The Ninth Circuit has articulated the requirements of a Monell claim as follows:  the Plaintiff must show (1) "that [s]he possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'"  Oviatt v. Pearce,

---

such as that numerous HPD officers assisted Defendant Lombardi with filing false police reports against Plaintiff, do not involve the exercise of police discretion.

954 F.2d 1470, 1474 (9th Cir. 1992) (quoting <u>City of Canton v.</u> <u>Harris</u>, 489 U.S. 378, 389-91 (1989)).

Plaintiff appears to set forth two theories by which <u>Monell</u> liability can attach. Compl. ¶¶ 154-56. Defendant Honolulu argues that Plaintiff's Complaint fails to adequately plead each of the <u>Monell</u> requirements. Defendant Honolulu's Motion at 7. The Court addresses the first <u>Monell</u> requirement, and subsequently addresses the two theories that Plaintiff asserts in order to satisfy the second, third, and fourth <u>Monell</u> elements.

### i.    Deprivation of a Constitutional Right

With respect to the first <u>Monell</u> element, Defendant Honolulu argues extensively as to why Plaintiff's Complaint fails to adequately plead that any alleged constitutional violations were committed by HPD officers who were acting under color of state law. Defendant Honolulu's Opposition at 7-11.

For purposes of a Section 1983 claim against an individual defendant, a plaintiff is, indeed, required to allege that the individual defendant acted under color of state law when the its actions caused a constitutional deprivation. <u>Anderson</u>, 451 F.3d at 1067. However, when the defendant is a municipality, a plaintiff need not allege that the municipality acted "under color of state law" in order to state a Section 1983 claim. Instead, <u>Monell</u> requires the plaintiff to show that

the municipality, "under color of some official policy," caused an employee or agent to violate the plaintiff's constitutional rights. Monell, 436 U.S. at 692. This requirement is embodied in the four elements that the Ninth Circuit has articulated are required to state a Monell claim. See Oviatt, 954 F.2d at 1474. Therefore, the issue of whether any HPD officers acted under the color of state law when the alleged constitutional deprivations occurred is not relevant for purposes of determining whether Plaintiff has adequately plead a Monell claim.[10]

Because the Court addressed in the preceding section the inadequacy of Plaintiff's Complaint with respect to the deprivation of her rights under the Equal Protection Clause, the Court need not repeat that analysis here. Accordingly, the Court considers whether the Complaint adequately alleges the second, third and fourth elements of a Monell claim.

---

[10] Although whether any HPD officers acted under color of state law is not an appropriate inquiry when determining whether a municipality is liable under Monell, it is a critical element in determining whether an individual is liable under Section 1983. Anderson, 451 F.3d at 1067. Accordingly, the Court addresses the parties' arguments about whether the individual officers acted under color of state law in the section of its Order that concerns the motions filed by the individual officer defendants. The Court also notes that at the Hearing held on November 9, 2018, Defendants, through their counsel, agreed with the Court that whether Defendant Lombardi acted under color of state law at any time based on his interactions with Plaintiff is not an issue before the Court at this time.

### ii.  Whether the Municipality Had a Policy

A municipality may be liable under Section 1983 if it has a policy of inaction which amounts to a failure to protect constitutional rights.  <u>City of Canton</u>, 489 at 388.  Two theories that allow a plaintiff to establish municipal liability based on a policy of inaction are (1) by demonstrating that the alleged constitutional violations were caused pursuant to a "longstanding practice or custom that constitutes the standard operating procedure" of the municipality, <u>Trevino v. Gates</u>, 99 F.3d 911, 918 (9th Cir. 1996) (internal quotations omitted; citing <u>Gillette v. Delmore</u>, 979 F.2d 1342, 1346-47 (9th Cir. 1992)); <u>see also</u> <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 481-81 n. 10 (1986); and (2) by demonstrating that a municipality has a policy of inadequate training or supervision. <u>City of Canton</u>, 489 U.S. at 392.

Plaintiff alleges municipal liability based on both of theories, Compl. at ¶¶ 154-156, which the Court addresses in turn.

### a.  Longstanding Informal Practice or Custom

In order to establish a longstanding informal practice or custom, the plaintiff must show that the alleged custom is "so persistent and widespread that it constitutes a permanent and well settled city policy."  <u>Trevino</u>, 99 F.3d at 918

(internal quotations omitted) (citing <u>Monell</u>, 436 U.S. at 691).

"Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be found upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."  <u>Id.</u> (citations omitted).

Plaintiff's Complaint features many statements regarding Defendant Honolulu's alleged "<u>de facto</u> policy, practice or custom" of favoring its own officers by ignoring reported instances of officer misfeasance and nonfeasance in violation of various internal HPD Policies.  This conclusory allegation, without more, is insufficient to support a plausible inference that Defendant Honolulu has a policy of inaction with regard to officer misconduct.  In fact, Plaintiff's Complaint contains numerous factual allegations that contradict the alleged policy of inaction regarding instances where HPD officers <u>did respond</u> to the various police reports and other complaints she filed against Defendant Lombardi.  For example, Plaintiff alleges that two of the PSO complaints she filed against Defendant Lombardi were sustained; yet she also alleges, in a conclusory fashion, that the officers who worked in the PSO and Defendant Honolulu violated HPD Policy Number 5.01, titled "Complaints and Internal Investigations," because Defendant

Lombardi was allegedly never counseled, disciplined, suspended, terminated or prosecuted.  Compl. ¶ 114, 131, 142.

Plaintiff correctly notes that the existence of a custom or informal policy may be proved by "evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded," Navarro, 72 F.3d at 714.  However, Plaintiff's arguments in this respect fail because Plaintiff has not adequately alleged that she was deprived of any constitutional rights.[11]  Thus, Plaintiff has not adequately alleged repeated violations for which HPD officers were not reprimanded.

Plaintiff also argues that Navarro stands for the proposition that a course of conduct with respect to a single plaintiff spanning a period of months is sufficient to establish the existence of a custom or informal policy.  Omnibus Opposition at 35.  Navarro, however, involved a motion for

---

[11] The Court also notes that establishing an unconstitutional longstanding practice or custom appears to be incompatible with a class-of-one equal protection claim because the practice or custom must also be widespread.  Trevino , 99 F.3d at 918. Because a class-of-one claim requires intentional discriminatory treatment of one individual in comparison to similarly situated individuals, it does not appear that such treatment could be so "persistent and widespread" that it constitutes a "permanent and well settled city policy" as required by Monell.  436 U.S. at 691.  Instead, a class-based equal protection claim appears to be more appropriate in the context of a municipality's alleged unconstitutional longstanding practice or custom, as the plaintiffs in Navarro alleged.  72 F.3d at 715.

summary judgment in which the court found that the district court erred in concluding that no genuine issue of material fact existed as to whether the county defendant had a policy or custom of not classifying domestic violence calls as emergencies. 72 F.3d at 715. The court further found that if the county defendant did have such a policy, it was up to the district court to determine whether the policy was constitutional by applying rational basis review. Id. at 716-17. The Navarro court was concerned with an alleged custom or policy that allegedly affected all 911 callers complaining of domestic abuse. Navarro is distinguishable from the instant case because Plaintiff has not alleged that Defendant Honolulu's allegedly unconstitutional "de facto policy" is so widespread as to constitute official policy—Plaintiff only describes how the alleged policy affects her. Accordingly, Plaintiff has not adequately alleged the existence of a longstanding practice or custom for purposes of establishing a policy under Monell.

As to the Monell causation requirements, Plaintiff merely alleges that Defendant Honolulu's informal policy of inaction "encouraged and emboldened Defendant Lombardi to act with reckless disregard and/or deliberate indifference" to Plaintiff's constitutional rights, and that the policy of inaction was "the moving force behind the deprivation" of Plaintiff's constitutional rights. Compl. ¶¶ 158, 159. Indeed,

the Supreme Court has stated that deliberate indifference "is a stringent standard of fault, requiring proof that the municipal actor disregarded a known or obvious consequences of his actions." Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 410 (1997). Nowhere does Plaintiff's Complaint plead non-conclusory allegations that meet this causation requirement.

Accordingly, the Court finds that Plaintiff has failed to state a Monell claim under the theory that Defendant Honolulu has a longstanding custom or practice of ignoring officer misfeasance and nonfeasance.

### b.    Failure to Train

In order to state a Monell claim based on a failure to train theory, the Plaintiff must plead facts sufficient to allege that the municipality has an inadequate training program, the municipality's deliberate indifference to adequately training its law enforcement officers, and that the failure to train actually caused the plaintiff to be deprived of constitutional rights. Merritt v. Cty. of Los Angeles, 875 F.2d 765, 770 (9th Cir. 1989). The Supreme Court has stated that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick v. Thompson, 563 U.S. 51, 61 (2011). "To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the

rights of persons with whom the [untrained employees] come into contact.'" Id. (quoting City of Canton, 489 U.S. at 388 (alterations in original)). Where policymakers continue to adhere to an approach that they "know or should know has failed to prevent tortious conduct by employees," the deliberate indifference necessary to trigger municipal liability is established. Connick, 563 U.S. at 62. A plaintiff may demonstrate deliberate indifference by establishing a "pattern of similar constitutional violations by untrained employees." Id.

Plaintiff's Complaint is deficient in pleading a failure to train theory for several reasons. First, although Plaintiff alleges that Defendant Honolulu "knew or should have known that it failed to adequately train[]" the various HPD officers with respect to complying with internal HPD policies, Compl. ¶¶ 154-56, Plaintiff does not allege any particular omissions with respect to HPD's training programs. Indeed, Plaintiff must allege facts that show Defendant Honolulu "disregarded the known or obvious consequence that a particular omission in their training program would cause employees to violate" her rights. Flores v. Cty. of Los Angeles, 758 F.3d 1154, 1159 (9th Cir. 2014). Accordingly, the Court finds that Plaintiff's allegations regarding the Defendant Honolulu's failure to train HPD officers are conclusory and implausible.

Second, Plaintiff alleges that various HPD officers and Defendant Honolulu were deliberately indifferent to Plaintiff's constitutional rights, and that because of this deliberate indifference Defendant Honolulu was the moving force behind the constitutional deprivation.  Compl. ¶¶ 151, 158.  The pleading standard established by Iqbal requires more than "[t]hreadbare recitals of the elements of a cause of action." 556 U.S. at 678.  To adequately establish the deliberate indifference required for a failure to train claim, Plaintiff must plead facts sufficient to establish a repeated pattern of constitutional violations.  Connick, 563 U.S. at 62.  Because Plaintiff's allegations regarding the Defendants' conduct are insufficient to establish an equal protection violation, the Court finds that Plaintiff has not adequately plead the deliberate indifference or causation requirements necessary to state a Monell claim based on a failure to train theory.  See Park, 292 F. Supp. 3d at 1100.

In sum, the Court finds that Plaintiff has not plausibly alleged a Monell claim under either a longstanding and widespread practice or custom theory or a failure to train theory.

Accordingly, the Court finds that Plaintiff has failed to plausibly allege that Defendant Honolulu deprived Plaintiff of her rights under the Equal Protection Clause.  For these

reasons, the Court dismisses Plaintiff's Section 1983 claim against Defendant Honolulu without prejudice.

## B. Negligence Claim (Count V)

The Complaint's negligence count incorporates all preceding allegations and states that "Defendant Officers, John and/or Jane Doe Defendants, and Defendant City and County of Honolulu acted herein negligently thereby proximately and directly causing Plaintiff and her children to suffer pain, mental anguish, severe emotional distress, anxiety, embarrassment, humiliation, worry, and anger . . ." Compl. ¶ 164.[12]

In order to properly plead a Hawai'i state law negligence claim, plaintiff must plead facts that plausibly establish the defendant's "(1) duty to conform to a certain standard of conduct, (2) breach of that duty, (3) causal connection between the breach and the injury, and (4) damage[s]." Park, 292 F. Supp. 3d at 1101 (citing Pourny v. Maui Police Dep't, Cty. of Maui, 127 F. Supp. 2d 1129, 1145 (D. Haw. 2000)).

_____

[12] Plaintiff argues that she has filed state tort claims against Defendant Honolulu for "negligence and negligent training, supervision, and/or discipline by the [HPD]." Omnibus Opposition at 11-12. Despite this argument, nowhere does Plaintiff's Complaint appear to allege negligence claims under the theories of negligent training, supervision, or discipline. As discussed herein, Plaintiff appears only to assert a general negligence claim.

Defendant Honolulu argues that Count V should be dismissed because Plaintiff has failed to sufficiently plead the first three elements of a general negligence claim. Honolulu's Motion at 19. In response, Plaintiff argues at length why Defendant Honolulu owed a duty to Plaintiff, and the ways in which Defendant Honolulu breached its duty and how the breach was the proximate cause of Plaintiff's injury. Omnibus Opposition at 45.

Despite Plaintiff's arguments in opposition to Defendant Honolulu's motion regarding the elements of a general negligence claim, nowhere in the Complaint has Plaintiff alleged any of the requisite elements of negligence. The Complaint does not allege that any defendants owed Plaintiff a duty, that any defendants breached a duty, or that any breach caused Plaintiff's injuries.

For the foregoing reasons, the Court dismisses Plaintiff's negligence claim against Defendant Honolulu without prejudice.

## III. Claims Against the Remaining Officer Defendants

Plaintiffs bring claims against all of the officer defendants in both their official and individual capacities. Compl. ¶¶ 12, 13. Because the Court has dismissed the claims against most of the Officer Defendants and against Defendant Cravalho and Defendant Moszkowicz, the Court only addresses the

claims against Officers Arakawa, Hee, and Lee. The Court first addresses the official capacity claims, and next addresses the individual capacity claims.

### A. Official Capacity Claims

Personal capacity suits, on the one hand, seek to impose personal liability upon a government official for actions it takes under color of state law. See Hafer v. Melo, 502 U.S. 21, 5 (1991). Official capacity suits, on the other hand, "generally represent only another way of pleading an action against an entity of which an officer is an agent." Monell, 436 U.S. at 690 n. 55. Courts, therefore, generally treat such suits as suits against the governmental entity. Kentucky v. Graham, 473 U.S. 159, 166 (1985); see also Carnell v. Grimm, 872 F. Supp. 746, 752 (D. Haw. 1994) (dismissing claims against officials in their official capacity as duplicative where the municipality had also been sued); Freeland v. Cty. of Maui, Civ. No. 11-00617 ACK-KS, 2013 WL 6528831, at *5 (D. Haw. Dec. 11, 2013) ("[T]he official-capacity claims 'duplicate[ ] the claims asserted against the [County of Maui]' and are therefore dismissed" (alterations in original) (citations omitted)).

For the foregoing reasons, the Court dismisses with prejudice all of Plaintiff's official capacity claims against Officers Arakawa, Hee, and Lee.

## B. Individual Capacity Claims

Having determined that Plaintiff's claims against most of the individual Officer Defendants are time-barred, the Court considers whether the Plaintiff's allegations against Officers Arakawa, Hee, and Lee state plausible claims for relief.

### 1. Section 1983 Claims (Counts I and II)

The only allegations in the Complaint concerning the Officer Defendants which occurred after March 15, 2016 deal specifically with Officers Arakawa, Hee, and Lee.[13] These allegations are as follows: (1) on March 18, 2016, Defendant Lombardi filed a police report that was authored by Officer Arakawa and approved by Officer Hee, which alleged Plaintiff committed custodial interference; (2) on May 11, 2017, Officer Lee notified Plaintiff via email that one of her complaints against Defendant Lombardi had been closed on November 9, 2015; and (3) on May 24, 2017, Defendant Lombardi sent Plaintiff an email threatening to bring custodial interference charges against her, which Plaintiff immediately forwarded to Officer Lee.

---

[13] Although several allegations regarding Defendant Lombardi occurred after March 15, 2016, Defendant Lombardi has not filed a motion to dismiss. Accordingly, the Court does not address those allegations with respect to the Officer Defendants' Motion.

In order to bring a claim under Section 1983 against an individual defendant, a plaintiff must establish (1) the deprivation of a right secured by the Constitution and laws of the United States; and (2) that the alleged violation was committed by a person acting under color of state law. <u>West</u>, 487 U.S. at 48. Officer Defendants argue that Plaintiff's Complaint fails to plausibly allege both of these requirements. Officer Defendants' Motion at 5; Defendant Honolulu's Motion at 7.[14]

### i.  Deprivation of a Constitutional Right

Plaintiff argues that the Officer Defendants' actions deprived her of her rights under the Equal Protection Clause because, due to Defendant Honolulu's alleged <u>de facto</u> policy of ignoring HPD officer misfeasance and nonfeasance, the Officer Defendants "failed to intervene, counsel, investigate, or discipline Defendant Lombardi" and assisted Defendant Lombardi in his harassment of Plaintiff by, among other things, helping him file police reports against her. Second Opposition at 15. The Officer Defendants argue that Plaintiff's Complaint

---

[14] The Officer Defendants' Motion incorporates by reference the arguments set forth in Defendant Honolulu's Motion. Officer Defendants' Motion at 1. Because whether a person acts under the color of state law is properly analyzed in the context of a Section 1983 claim against an individual defendant, <u>see</u> <u>Anderson</u>, 451 F.3d at 1067-70, the Court addresses whether the individual defendants acted under color of state law in this section of its Order.

inadequately pleads a plausible claim that the Officer
Defendants' actions violated Plaintiff's equal protection
rights.  Officer Defendants' Motion at 6.

Because the Court has determined that most of
Plaintiff's allegations regarding the Officer Defendants are
time-barred, the Court focuses only on the events that occurred
after March 15, 2016.  These acts include (1) Officer Arakawa
drafting a police report filed by Defendant Lombardi; (2)
Officer Hee approving that same report; (3) Officer Lee
notifying Plaintiff via email that one of the complaints
Plaintiff filed against Defendant Lombardi had been closed; and
(4) Plaintiff forwarding Officer Lee an email she received from
Defendant Lombardi.

As discussed at length above, Plaintiff's Complaint
fails to adequately allege an equal protection violation.  In
addition to this basic deficiency, Plaintiff does not explain
how, specifically, the acts complained of violated her
constitutional rights.  For example, Plaintiff does not explain
how Officers Arakawa and Hee violated her right to equal
protection by authoring and approving a police report that
Defendant Lombardi filed.  Compl. ¶ 103.  It is equally unclear
how an email sent by Officer Lee notifying Plaintiff that one of
her complaints against Defendant Lombardi had been closed is an
equal protection violation.  Id. ¶¶ 95-96.

For these reasons, Plaintiff's Complaint fails to adequately plead that she suffered a constitutional deprivation at the hands of any individual Officer Defendants.

### ii. Under Color of State Law

Plaintiff argues that Defendant Lombardi and the other Officer Defendants' actions were conducted under color of state law, in satisfaction of the second requirement of a Section 1983 claim against an individual defendant. Defendant Honolulu argues that Defendant Lombardi's actions were not conducted under color of state law. Defendant Honolulu's Motion at 7.

The Ninth Circuit has observed that "[t]here is no 'rigid' formula for determining whether a state or local law official is acting under color of state law." Anderson, 451 F.3d at 1068. If a defendant's conduct amounts to state-action under the Fourteenth Amendment, "that conduct is also action under color of state law and will support a suit" under Section 1983. West, 487 U.S. at 49 (citation omitted). To constitute state action, the constitutional deprivation must be caused "by a person for whom the state is responsible and the party charged with the deprivation must be a person who may fairly be said to be a state actor." Id. Therefore, "a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." Id. at 50.

Defendant Honolulu argues that Plaintiff's Complaint fails to adequately plead that Defendant Lombardi acted under color of state law with respect to his alleged constitutional violations. Defendant Honolulu's Motion at 7. Defendant Honolulu describes the requirements for a court to find that an off-duty officer acted under the color of state law and explains how Plaintiff's Complaint fails to plead those requirements. Id. at 8; see Anderson, 451 F.3d at 1068-69. However, because Defendant Lombardi has not filed a motion to dismiss, the Court declines to address whether Defendant Lombardi acted under color of state law.

Thus, notwithstanding Plaintiff's failure to allege how any of the Officer Defendants violated her rights under the Equal Protection Clause, the Court is left to address the question of whether or not the Officer Defendants[15] were acting under color of state law when they engaged in the acts set forth in Plaintiff's Complaint.

As the Supreme Court clearly stated in West, public employees that act in their official capacities or exercise their responsibilities pursuant to state law act under color of state law. 487 U.S. at 50. The alleged acts by Officers

---

[15] Because the Court has already determined that claims against most of the Officer Defendants are time-barred, the Court only addresses the actions of Officers Arakawa, Hee and Lee.

Arakawa, Hee, and Lee consisted of drafting a police report, approving a police report, and sending an email about one of Plaintiff's complaints. Plaintiff adequately alleges that these acts were conducted under color of state law because the officers engaged in the acts in their official capacities as HPD officers. Therefore, Plaintiff has plausibly alleged that these particular defendants acted under color of state law, with respect to these specific acts, for purposes of bringing a Section 1983 claim.

Notwithstanding the fact that Plaintiff has plausibly alleged that Officers Arakawa, Hee, and Lee acted under color of state law, Plaintiff has failed to allege how their actions deprived her of constitutional rights. Accordingly, the Court GRANTS the Officer Defendants motion to dismiss with respect to all of the Section 1983 claims asserted against Officers Arakawa, Hee, and Lee without prejudice. Plaintiff is granted leave to amend her Complaint but only as to the claims arising from allegations that are not time-barred by the two-year statute of limitations.

### 2. Negligence Claims (Count V)

Plaintiff argues that the Officer Defendants' conduct constituted negligence under Hawai'i state law because certain Officer Defendants had a duty to supervise and investigate their employees, that the Officer Defendants breached their duty by

failing to investigate Defendant Lombardi, and that the harm Defendant Lombardi caused Plaintiff was foreseeable as a result of these breaches.  Second Opposition at 27-31.

Although Plaintiff raises these arguments regarding the elements of a negligence claim in her Second Opposition, she fails to allege in her Complaint how, specifically, the Officer Defendants' were negligent.  As discussed, Plaintiff's Complaint does not allege that any defendants owed her a duty, that a duty was breached, or that any breach caused Plaintiff's injuries.

Accordingly, the Court dismisses the negligence claims against the Officer Defendants without prejudice.  Plaintiff is granted leave to amend, but only as to claims against Officers Arakawa, Hee, and Lee because the allegations against the other individual Officer Defendants are time-barred by the two-year statute of limitations.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motions to dismiss for failure to state claims upon which relief can be granted as follows:

1. The Court GRANTS WITH PREJUDICE the Officer Defendants' Motion as to all claims except those asserted against Officers Arakawa, Hee, and Lee in their individual capacities, which are dismissed WITHOUT PREJUDICE;

2. The Court GRANTS WITH PREJUDICE Defendant Cravalho's Motion and Defendant Moszkowicz's Motion as to all claims; and

3. The Court GRANTS WITHOUT PREJUDICE Defendant
   Honolulu's Motion as to all claims.

Plaintiff must file an amended complaint within thirty days of the entry of this Order or else judgment will be entered against her.


IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, November 16, 2018.


_____
Alan C. Kay
Sr. United States District Judge

Garcia v. City and County of Honolulu, et al., Civ. No. 18-00100 ACK-KSC,
Order Granting Defendants' Motions to Dismiss.

– 57 –