IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

|  |  |
|---|---|
| DONNA GARCIA, Individually and As Guardian <u>Ad Litem</u> for Her Minor Children, J.L. and G.L.<br><br>   Plaintiff,<br><br>  v.<br><br>CITY AND COUNTY OF HONOLULU; RONALD J. LOMBARDI; LANELL ARAKAWA; NATHAN HEE; PAUL LEE; and JOHN and/or JANE DOES 1-10,<br><br>   Defendants. | Civ. No. 18-00100 ACK-RLP |

<u>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTIONS TO DISMISS</u>

For the reasons that follow, the Court GRANTS IN PART AND DENIES IN PART the Motion to Dismiss filed by Defendants Lanell Arakawa, Nathan Hee, and Paul Lee, ECF No. 77, and GRANTS IN PART AND DENIES IN PART the Motion to Dismiss filed by Defendant City and County of Honolulu, ECF No. 76, as follows:

1. The Officer Defendants' Motion is DENIED with respect to the individual capacity § 1983 equal protection claims and GRANTED with respect to the official capacity § 1983 claims and the negligence claims. The official capacity § 1983 claims are DISMISSED WITH PREJUDICE and the negligence claims are DISMISSED WITHOUT PREJUDICE. The Court declines to address the § 1983 substantive due process claims at this time because the Officer Defendants failed to address those claims in their Motion.

2. Defendant Honolulu's Motion is DENIED with respect to the § 1983 equal protection municipal liability claim and GRANTED with respect to the negligent supervision claims. The negligent supervision claims are DISMISSED WITHOUT PREJUDICE. The Court declines to address the § 1983 substantive due process municipal liability claim at this time because Defendant Honolulu failed to address that claim in its Motion.

## PROCEDURAL BACKGROUND

On March 15, 2018, Plaintiff Donna Garcia, individually and as guardian ad litem for her minor children, J.L. and G.L. ("Plaintiff Garcia"), filed a Complaint, ECF No. 1, against (1) the City and County of Honolulu ("Defendant Honolulu"); (2) twenty-one Honolulu Police Department ("HPD") officers;[1] and (3) John and/or Jane Does 1-10 ("Doe Defendants"). Compl. ¶¶ 11-14. The HPD officers were sued in their individual and official capacities. Id. ¶ 13.

The Complaint asserted five causes of action. Counts I, II, and III asserted claims against each of the Defendants under 42 U.S.C. § 1983 for violations of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Id. ¶¶ 145-160. Count IV asserted a state law claim against HPD officer Ronald J. Lombardi ("Defendant

---

[1] The HPD officers named in the Complaint were Ronald J. Lombardi, Robert A. Cravalho, Benjamin Moszkowicz, April Daniels, Arlynn Orpilla, Bonnie McKewen, Harold Uehara, Timothy Slovak, Mikel Frederick, Darrien Thornley, Gary Daniels, Thomas Nitta, Leonard Nishimura, Alan Rodrigues, Keith Vegas, Lanell Arakawa, Brian Blackwell, Nathan Hee, Brandon Lau, Ryan Hironaka, and Paul Lee. Compl. ¶ 13.

Lombardi") for intentional infliction of emotional distress ("IIED").  Id. ¶ 161–162.  Count V asserted state law negligence claims against each of the Defendants except Defendant Lombardi. Id. ¶ 163–164.

On May 4, 2018, Defendant Honolulu filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  ECF No. 20.  Thereafter, the HPD officers filed three motions to dismiss as follows:  (1) Robert A. Cravalho filed a Motion to Dismiss on May 14, 2018, ECF No. 25; (2) Benjamin Moszkowicz filed a Motion to Dismiss on June 19, 2018, ECF No. 40; and (3) the remaining HPD officers (except for Defendant Lombardi) filed a Motion to Dismiss on July 31, 2018, ECF No. 45.  On October 11, 2018, Plaintiff Garcia filed an Omnibus Memorandum in Opposition to the motions filed by Defendant Honolulu and HPD officers Cravalho and Moszkowicz.  ECF No. 54. Plaintiff Garcia filed a Memorandum in Opposition to the motion filed by the remaining HPD officers on October 15, 2018.  ECF No. 57.  On October 18, 2018, Defendant Honolulu and HPD officers Cravalho and Moszkowicz filed Replies.  ECF Nos. 58 and 59.  On October 22, 2018, the remaining HPD officers filed a Reply.  ECF No. 60.  The Court held a hearing on all four motions on November 9, 2018.  ECF No. 63.

On November 16, 2018, the Court issued an Order Granting Defendants' Motions to Dismiss (the "11/16/2018

Order"). ECF No. 64. Given that the Complaint alleged events dating back to 2008, the parties initially disputed the extent to which Plaintiff Garcia's claims were time-barred by the relevant two-year statute of limitations. 11/16/2018 Order at 14. The Court found that Plaintiff Garcia's claims against Defendant Honolulu were based on an ongoing policy of discrimination, and that she had alleged numerous acts within the limitations period taken in furtherance of the discriminatory policy. Id. at 21–22. Accordingly, the Court ruled that Plaintiff Garcia's claims against Defendant Honolulu constituted a continuing violation and were not time-barred. Id. at 22. With respect to the claims against the individual HPD officers, the Court ruled that only those claims involving non-time-barred acts taken in furtherance of the discriminatory policy could advance. Id. at 24.

In dismissing Plaintiff Garcia's claims, the Court held the following:

1. As to HPD officers Cravalho, Moszkowicz, Daniels, Orpilla, McKewen, Uehara, Slovak, Frederick, Thornley, Daniels, Nitta, Nishimura, Rodrigues, Vegas, Blackwell, Lau, and Hironaka, the Court dismissed all of Plaintiff Garcia's claims with prejudice because the Court found that the claims were time-barred.

2. As to HPD officers Arakawa, Hee, and Lee, the Court construed the official capacity § 1983 claims against Defendant Honolulu and dismissed those claims with prejudice; and the Court found that the individual capacity § 1983 claims and negligence claims against

- 4 -

HPD officers Arakawa, Hee, and Lee were not time-barred, but dismissed those claims without prejudice.

3. As to Defendant Honolulu, the Court found that Plaintiff Garcia's § 1983 municipal liability claim and negligence claim were not time-barred, but dismissed the claims without prejudice.[2]

4. The Court granted Plaintiff Garcia leave to file an amended complaint in order to cure the pleading deficiencies the Court identified with respect to the claims that were dismissed without prejudice. Specifically, the Court noted pleading deficiencies with respect to Plaintiff Garcia's failure to plead plausible constitutional violations, municipal liability, and state law negligence claims.

On December 14, 2018, Plaintiff Garcia filed her First Amended Complaint ("FAC"). ECF No. 70. The FAC alleges claims against Defendant Honolulu, Defendant Lombardi, HPD officer Lanell Arakawa ("Defendant Arakawa"), HPD officer Nathan Hee ("Defendant Hee"), HPD officer Paul Lee ("Defendant Lee"), and the Doe Defendants. The FAC alleges nearly the same claims as the Complaint, except that the FAC alleges an additional constitutional deprivation[3]—violation of the substantive due process right to bodily integrity, which is protected by the Due Process Clause of the Fourteenth Amendment. FAC ¶¶ 213–233.

---

[2] The 11/16/2018 Order did not address Count IV for IIED because it was asserted solely against Defendant Lombardi, and Defendant Lombardi did not file a motion. Compl. ¶ 161–162

[3] Plaintiff Garcia's original Complaint alleged only one constitutional deprivation—violation of the right to equal protection of enforcement of the law, which is guaranteed by the Equal Protection Clause of the Fourteenth Amendment.

On January 7, 2019, Defendant Honolulu filed a Motion to Dismiss First Amended Complaint ("Defendant Honolulu's Motion"). ECF No. 76. On that same date, Defendants Arakawa, Hee, and Lee (collectively, the "Officer Defendants") filed a Motion to Dismiss First Amended Complaint ("Officer Defendants' Motion"). ECF No. 77. On April 2, 2019, Plaintiff Garcia filed an Omnibus Memorandum in Opposition to Defendants' Motions. ECF No. 88. On April 9, 2019, Defendant Honolulu and the Officer Defendants filed Replies to Plaintiff Garcia's Opposition. ECF Nos. 89 and 90. The Court held a hearing on Defendants' Motions on April 23, 2019.

**FACTUAL BACKGROUND**

According to the FAC, Plaintiff Garcia is employed as an officer with the Department of Homeland Security, Customs and Border Protection, and currently resides in Georgia, having left Honolulu in 2009. FAC ¶¶ 9–10. Defendants Lombardi, Arakawa, Hee, and Lee are all currently employed as HPD officers and reside in Honolulu. Id. ¶¶ 12–13. Defendant Honolulu is a municipal corporation of the State of Hawai`i. Id. ¶ 11.

Plaintiff Garcia and Defendant Lombardi were married in November 1999, separated in November 2007, and divorced on February 14, 2011. Id. ¶¶ 15, 17. They have two children together, J.L. and G.L. Id. ¶ 16. Plaintiff Garcia was awarded temporary sole legal and physical custody of the children on

July 15, 2008, a custody arrangement that was made permanent in the divorce decree dated February 14, 2011.  Id. ¶ 19.

The 73-page FAC features allegations spanning a ten-year period from 2008 to 2018 that describe how Defendant Lombardi engaged in abusive and harassing conduct over that period.  The FAC also describes how Defendant Honolulu and numerous HPD officers allegedly failed to do anything to stop Defendant Lombardi and other HPD officers that Plaintiff Garcia alleges aided him in his harassment campaign.  The thrust of Plaintiff Garcia's claims is that the HPD has a "de facto" longstanding practice or custom of mishandling complaints of domestic abuse filed by victims against HPD officers.  The Court outlines below the various events that Plaintiff Garcia believes are symptomatic of the alleged longstanding practice or custom.

## I.  Assaults

Plaintiff Garcia alleges that on February 28, 2008, Defendant Lombardi sexually assaulted G.L., and that G.L. reported the sexual assault on March 2, 2008.  Id. ¶¶ 20-21.  At some point prior to or in March 2008, Defendant Lombardi physically and sexually assaulted J.L., the other daughter.  Id. ¶¶ 22, 25.  In October 2008, G.L. reported to her treating therapist at the Sex Abuse Treatment Center that Defendant Lombardi sexually assaulted her on another occasion.  Id. ¶ 54. In August 2009, J.L. and G.L. both reported to their therapist

that Defendant Lombardi committed additional sexual assaults.
Id. ¶ 79.

## II.  Protective Orders

Plaintiff Garcia obtained three separate protective orders and one order for pre-decree relief due to Defendant Lombardi's conduct.  Plaintiff Garcia obtained the first protective order on March 7, 2008, having stated in the petition for the order that Defendant Lombardi threatened her with physical harm if she attempted to end their marriage, physically assaulted J.L., and sexually assaulted G.L.  Id. ¶¶ 24–25.  The order prohibited Defendant Lombardi from threatening or abusing Plaintiff Garcia, J.L., and G.L.; prohibited Defendant Lombardi from coming within 100 feet of Plaintiff Garcia, her residence and workplace; and prohibited Defendant Lombardi from contacting Plaintiff Garcia or damaging or disturbing her property.  Id. ¶ 26.  Defendant Lombardi was also required to surrender his firearms to the HPD.  Id.  The order remained in effect until June 5, 2008.  Id.

On June 17, 2008, after divorce proceedings were underway, Plaintiff Garcia requested pre-decree relief prohibiting Defendant Lombardi from contacting her (other than to schedule visitation with the children), prohibiting him from coming near her residence or automobile absent an invitation,

and prohibiting him from possessing firearms while in her presence and while in the presence of the children.  Id. ¶ 38.

On June 18, 2008, Plaintiff Garcia obtained a second protective order with substantially the same terms as the first protective order, but also prohibiting Defendant Lombardi from contacting Plaintiff Garcia or anyone else in her household. Id. ¶ 41.  Plaintiff Garcia sought the second protective order because Defendant Lombardi made threats involving firearms and attempted to gain access to her residence in contravention of the first protective order.  Id. ¶ 40.  The second protective order remained in effect until July 9, 2008, when it was superseded by a pre-decree relief order dated July 15, 2008. Id. ¶¶ 39, 41.

The July 15, 2008 pre-decree relief order granted Plaintiff Garcia sole legal and physical custody of the children, and prohibited Defendant Lombardi from contacting her for any purpose other than scheduling visitation,[4/] prohibited him from coming near her residence or automobile absent an

_____

[4/] The custody arrangement was made permanent in the divorce decree dated February 14, 2011.  FAC ¶ 19.  The visitation terms in the divorce decree permitted Defendant Lombardi phone visitation with the children, as well as in-person visitation under the supervision and approval of their therapist and Plaintiff Garcia.  Id.  It is unclear whether this is the visitation arrangement that the FAC alludes to in the allegations concerning the pre-decree relief order, or whether the pre-decree relief order involved a different visitation arrangement.

invitation, and prohibited him from possessing firearms in her presence or in the presence of the children.  Id. ¶¶ 19, 38-39.

On September 26, 2008, Plaintiff Garcia obtained a third protective order with substantially the same terms as the first and second protective orders.  Id. ¶ 50.  Plaintiff Garcia sought the third protective order because Defendant Lombardi violated the pre-decree relief order in various ways, including stalking Plaintiff Garcia and the children, attempting to have unsupervised visitation with the children, initiating unauthorized communications with Plaintiff Garcia, possessing a firearm in the presence of the children, and attempting to manipulate G.L. when she was undergoing treatment at the Sex Abuse Treatment Center.  Id. ¶ 49.  The third protective order was set to expire on December 25, 2008 but was extended until March 26, 2009.  Id. ¶ 50.

## III.  Incident Reports

Plaintiff Garcia filed seven incident reports with the HPD throughout 2008 documenting Defendant Lombardi's violations of the three protective orders and pre-decree relief orders. Id. ¶ 60.  Plaintiff Garcia's FAC contains allegations about six of the incident reports.

The first incident report, dated June 20, 2008, detailed Defendant Lombardi having visited and entered Plaintiff Garcia's residence and vehicle without her permission and while

armed.  Id. ¶ 61.  The second incident report, dated September 12, 2008, detailed Defendant Lombardi having visited J.L. at elementary school and delivering her books about murders, crime scene investigations, and autopsies.  Id. ¶ 63.  Plaintiff Garcia filed a third incident report on September 13, 2008 because Defendant Lombardi, in full uniform and armed with his service firearm, threatened and harassed Plaintiff Garcia and the children at a Jamba Juice in Kailua.  Id. ¶ 64.  Plaintiff Garcia filed the fourth incident report on September 15, 2008 because Defendant Lombardi had harassed and threatened her, and again attempted to have unsupervised visitation with the children.  Id. ¶ 65.

Plaintiff Garcia filed the fifth incident report on September 25, 2008 because Defendant Lombardi violated the July 15, 2008 pre-decree relief order by visiting G.L. at her preschool.  Id. ¶ 66.  On that date, Defendant Lombardi told Plaintiff Garcia that "he could get to her with a gun, that he would visit the children wherever and whenever he wanted, and that he would prove to her that he could do whatever he wanted regardless of the court order because he was part of the Honolulu Police Department 'ohana.'"[5/]  Id. ¶ 67.  Defendant

[5/] The English translation of the Hawaiian word `ohana is "Family, relative, kin group; related."  M. Kawena Pukui and S.H. Elbert, Hawaiian Dictionary (1986) at p. 276.

Lombardi then called G.L.'s preschool and stated his intention of visiting G.L. during lunch. Id. ¶ 68. The preschool informed Plaintiff Garcia and building security of Defendant Lombardi's plan, both of whom in turn notified the HPD. Id. An HPD officer then called Defendant Lombardi to warn him that the HPD had been notified of his plan to visit the preschool. Id. ¶ 69. Defendant Lombardi explained that the June 18, 2008 protective order was no longer in effect, and that he was therefore allowed to visit G.L. Id. Responding officers confronted Defendant Lombardi after he arrived at the preschool in full uniform but took no further action against him, despite the fact that the pre-decree relief order was in effect. Id. ¶¶ 66, 70.

Plaintiff Garcia filed the sixth incident report on November 18, 2008 after Defendant Lombardi left her a threating voicemail from an HPD telephone. Id. ¶¶ 71-72.

Plaintiff Garcia alleges that after she filed each of the aforestated incident reports, Defendant Honolulu, pursuant to a longstanding custom or policy, failed to adequately investigate the incidents because they concerned allegations of abuse and harassment involving an HPD officer. Id. ¶ 73. Plaintiff Garcia alleges that Defendant Honolulu's inadequate

investigations violated several internal HPD policies.[6/]  Id. ¶
74.

## IV.  False Police Reports

      Plaintiff Garcia alleges that Defendant Lombardi
engaged in a campaign of harassment against her that involved
filing six false police reports beginning in June 2008.  Id. ¶
85.  The false police reports involved accusations that
Plaintiff Garcia committed criminal contempt, violated the child
custody arrangement, and made false allegations against
Defendant Lombardi.  Id. ¶ 86.  Defendant Lombardi filed reports
on June 17, 2008, July 10, 2008, January 7, 2009, October 22,
2009, June 9, 2011, and June 22, 2011.  Id. ¶¶ 88–92; 100–101.

      Plaintiff Garcia alleges that Defendant Lombardi
resumed his campaign of harassment in November 2015 by filing
four more false police reports.  Id. ¶ 113.  Each of these
reports falsely accused Plaintiff Garcia of custodial
interference despite the fact that she was granted sole physical
and legal custody of the children.  Id. ¶¶ 113–114.  These
reports were dated November 20, 2015, December 22, 2015, January
14, 2016, and March 18, 2016.  Id. ¶¶ 113, 116–119.  The last of
these reports was authored by Defendant Arakawa and approved by

---

[6/] The internal HPD policies are discussed infra where relevant.

Defendant Hee, both of whom worked with Defendant Lombardi in the HPD's Traffic Division.  Id. ¶ 119.

Plaintiff Garcia alleges that in filing these reports, Defendant Lombardi and the HPD officers who assisted him violated various internal HPD policies.  Id. ¶ 115.  Defendant Lombardi used these police reports as evidence in a show cause action he filed in a Virginia Family Court in May 2016 attempting to have Plaintiff Garcia held in contempt.  Id. ¶ 124.

## V.  Professional Standards Office ("PSO") Complaints

Plaintiff Garcia filed four[7/] PSO complaints with the HPD.  The first was dated June 25, 2015 and concerned Defendant Lombardi's continued harassment of Plaintiff Garcia by violating the protective orders and other Family Court orders obtained in Virginia and Hawai`i.  Id. ¶ 108.  The complaint also detailed Defendant Lombardi having made threats to resort to self-help to visit J.L. and G.L. unsupervised, as well as threats of retaliation against Plaintiff Garcia for accusing him of domestic violence and sexually assaulting G.L.  Id.  Defendant Lee was one of the officers who conducted the PSO investigation, which Plaintiff Garcia alleges was deficient and violated

---

[7/] The FAC indicates that Plaintiff Garcia filed four PSO complaints, however, it only features allegations regarding two PSO complaints.  FAC ¶¶ 161, 176, 200.

various internal HPD policies.  Id. ¶ 111–112.  Defendant Lee notified Plaintiff Garcia on May 11, 2017 that the investigation had been closed on November 9, 2015 because it was determined "to be more of a civil matter."  Id. ¶¶ 109–110.

Plaintiff Garcia filed another PSO complaint with Defendant Lee on March 15, 2017 in response to Defendant Lombardi's having filed four false police reports against her. Id. ¶¶ 126–127.  Plaintiff Garcia also named in this complaint the HPD officers who helped Defendant Lombardi file the false police reports, including Defendants Arakawa and Hee.  Id. ¶ 127.  That complaint was sustained on August 9, 2017.  Id. ¶ 129.

## STANDARD OF REVIEW

Rule 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although Rule 8 does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic

recitation of the elements of a cause of action will not do.'"
Id. (quoting Twombly, 550 U.S. at 555).

To survive a motion to dismiss, the complaint "must
contain sufficient factual matter, accepted as true, to 'state a
claim to relief that is plausible on its face.'" Id. at 678
(2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial
plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." Id. (quoting
Twombly, 550 U.S. at 556). "[T]he tenet that a court must
accept as true all of the allegations contained in a complaint
is inapplicable to legal conclusions." Id. (citing Twombly, 550
U.S. at 555).

Accordingly, "[t]hreadbare recitals of the elements of
a cause of action, supported by mere conclusory statements, do
not suffice." Id. "The plausibility standard . . . asks for
more than a sheer possibility that a defendant has acted
unlawfully." Id. "Where a complaint pleads facts that are
'merely consistent with' a defendant's liability, it 'stops
short of the line between possibility and plausibility of
entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at
557). The Court must "accept as true all well-pleaded
allegations of material fact, and construe them in the light
most favorable to the non-moving party." Sateriale v. R.J.

Reynolds Tobacco Co., 697 F.3d 777, 784 (9th Cir. 2012) (citation omitted).

When the Court dismisses a complaint pursuant to Rule 12(b)(6) it should grant leave to amend unless the pleading cannot be cured by new factual allegations.  OSU Student All. v. Ray, 699 F.3d 1053, 1079 (9th Cir. 2012).

**DISCUSSION**

Defendants Honolulu, Arakawa, Hee, and Lee urge the Court to dismiss Plaintiff Garcia's claims because she has failed to plead non-conclusory allegations that, if accepted as true, state plausible claims for relief.  The Court first addresses the § 1983 claims and then turns to the negligence claims.

## I.  Official Capacity Claims Against the Individual Officer Defendants (Counts I-II)

As an initial matter, the Court notes that its 11/16/2018 Order dismissed Plaintiff Garcia's official capacity § 1983 claims against the individual officers with prejudice. The Court held the following:

> Personal capacity suits, on the one hand, seek to impose personal liability upon a government official for actions it takes under color of state law.  See Hafer v. Melo, 502 U.S. 21, 5 (1991).  Official capacity suits, on the other hand, "generally represent only another way of pleading an action against an entity of which an officer is an agent." Monell, 436 U.S. at 690 n. 55.  Courts, therefore, generally treat such suits as suits against the governmental entity.  Kentucky v. Graham, 473 U.S.

159, 166 (1985); see also Carnell v. Grimm, 872 F.
Supp. 746, 752 (D. Haw. 1994) (dismissing claims
against officials in their official capacity as
duplicative where the municipality had also been
sued); Freeland v. Cty. of Maui, Civ. No. 11-00617
ACK-KSC, 2013 WL 6528831, at *5 (D. Haw. Dec. 11,
2013) ("[T]he official-capacity claims 'duplicate[ ]
the claims asserted against the [County of Maui]' and
are therefore dismissed" (alterations in original)
(citations omitted)).

For the foregoing reasons, the Court dismisses with
prejudice all of Plaintiff's official capacity claims
against Officers Arakawa, Hee, and Lee.

11/16/2018 Order at 49.  The FAC still pursues official capacity

claims against the individual Officer Defendants.  FAC ¶ 13.  In

light of the Court's prior ruling, the Court again dismisses the

official capacity claims against the individual Officer

Defendants with prejudice.

## II.  Section 1983 Claims Against the Officer Defendants (Counts I and II) and Against Defendant Honolulu (Count III)

Plaintiff Garcia asserts § 1983 claims against the

Officer Defendants for depriving her of two constitutional

rights:  (1) the right to equal protection of enforcement of the

law; and (2) the substantive due process right to bodily

integrity.  She also asserts a § 1983 claim against Defendant

Honolulu for municipal liability under Monell v. Dep't of Soc.

Servs. of the City of New York, 436 U.S. 658 (1978).

As an initial matter, the Court notes the Officer

Defendants' argument that, at the hearing held on November 16,

2018, Plaintiff Garcia conceded that "she did not have any

viable claims against the Officer Defendants." Officer
Defendants' Motion at 8. This argument misrepresents Plaintiff
Garcia's concession. Plaintiff Garcia conceded only that she
did not have viable claims against the individual HPD officers
who did not undertake any acts within the two-year statute of
limitations period. ECF No. 66, Tr. 31:2-16. Accordingly, this
argument is without merit.

Section 1983 provides that "[e]very person who, under
color of any statute, ordinance, regulation, custom, or usage of
any State . . . subjects, or causes to be subjected any citizen
of the United States . . . to the deprivation of any rights,
privileges, or immunities secured by the Constitution and laws,
shall be liable to the party injured . . . ." 42 U.S.C. § 1983.
"To state a claim under § 1983, a plaintiff [(1)] must allege
the violation of a right secured by the Constitution and laws of
the United States, and [(2)] must show that the alleged
deprivation was committed by a person acting under color of
state law." West v. Atkins, 487 U.S. 42, 48 (1988) (citations
omitted). A "person" includes "state and local officials sued
in their individual capacities . . . and local government
entities." Park v. City and Cty. of Honolulu, 292 F. Supp. 3d
1080, 1090 (D. Haw. 2018) (citing Vance v. Cty. of Santa Clara,
928 F. Supp. 993, 995-96 (N.D. Cal. 1996)); see also Monell, 436

U.S. at 690 (holding that a local government is a person for purposes § 1983).

To hold a municipality liable under <u>Monell</u>, the plaintiff must show the municipality caused an employee or agent to violate the plaintiff's constitutional rights "under color of some official policy." 436 U.S. at 692. Specifically, the plaintiff must allege "(1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" <u>Oviatt v. Pearce</u>, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting <u>City of Canton v. Harris</u>, 489 U.S. 378, 389-91 (1989)); <u>see also</u> <u>Long v. Cty. of Los Angeles</u>, 442 F.3d 1178, 1185-86 (9th Cir. 2006) (citing <u>Gibson v. Cty. of Washoe</u>, 290 F.3d 1175, 1193-94 (9th Cir. 2002), <u>cert. denied,</u> 537 U.S. 1106 (2003)). Plaintiff Garcia's <u>Monell</u> claim is premised on a longstanding practice or custom theory.[8]

---

[8] Absent a formal policy, a municipality may be liable for constitutional deprivations "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." <u>Monell</u>, 436 U.S. at 690. The Supreme Court observed that Congress included "customs and usages" in § 1983 because state officials engaged in persistent and widespread discriminatory practices that, although not authorized by written law, "could well be so permanent and well-settled as to constitute a 'custom (Continued...)

The Officer Defendants and Defendant Honolulu argue
that Plaintiff Garcia has failed to plausibly allege
constitutional deprivations[9] and the requirements for municipal
liability under Monell.  The Court discusses each of these
arguments in turn.

### A. Constitutional Deprivations

Plaintiff Garcia alleges that Defendants deprived her
of two constitutional rights.  First, she alleges that
Defendants violated her right to equal protection of the
enforcement of the law, which is guaranteed by the Equal
Protection Clause of the Fourteenth Amendment.[10]  Second, she

---

or usage' with the force of law." Id. (citing Adickes v. S.H.
Kress & Co., 383 U.S. 144, 167–68, 90 (1970)).
[9] In its 11/16/2018 Order the Court ruled that Plaintiff
Garcia's original Complaint had plausibly alleged that
Defendants Arakawa, Hee, and Lee acted under color of state law
for purposes of § 1983.  See 11/16/2018 Order at 54–55; see also
West, 487 U.S. at 50 (holding that public employees who act in
their official capacities or exercise their responsibilities
pursuant to state law act under color of state law).
Accordingly, the Court need not further analyze this element of
a § 1983 claim.  Furthermore, the Court's 11/16/2018 Order
declined to address the parties' arguments regarding whether
Defendant Lombardi acted under color of state law because
Defendant Lombardi had not yet filed a motion.  11/16/2018 Order
at 54.  Defendant Lombardi has still not filed a motion, and the
parties have not briefed the point, so the Court again declines
to address whether Defendant Lombardi acted under color of state
law.
[10] As the Court noted in its 11/16/2018 Order, the Equal
Protection Clause applies to enforcement of the law.  See
11/16/2018 Order at 30 n. 7; Navarro v. Block, 72 F.3d 712, 717
(9th Cir. 1996) (finding that an equal protection claim for a
police department's custom of treating domestic violence 911
(Continued...)

alleges that Defendants violated her right to bodily integrity,
which is a substantive due process right guaranteed by the Due
Process Clause of the Fourteenth Amendment.

"A person 'subjects' another to the deprivation of a
constitutional right . . . if he does an affirmative act,
participates in another's affirmative acts, or omits to perform
an act which he is legally required to do that causes the
deprivation of which the complaint is made." Johnson v. Duffy,
588 F.2d 740, 743 (9th Cir. 1978) (citing Sims v. Adams, 537
F.2d 829 (5th Cir. 1976)).  The causal connection can be
established by direct personal participation in the deprivation
or "by setting in motion a series of events by others which the
actor knows or reasonably should know would cause others to
inflict the constitutional injury." Id. at 743–44.

### 1.    Equal Protection Violations (Count I)

The Equal Protection Clause of the Fourteenth
Amendment prohibits a state from denying to "any person within
its jurisdiction the equal protection of the laws." U.S. Const.
amend. XIV § 1.  The Equal Protection Clause essentially

---

calls differently from non-domestic violence 911 calls was
subject to rational basis review); see also DeShaney v.
Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 197 n. 3
(1989) ("The State may not . . . selectively deny its protective
services to certain disfavored minorities without violating the
Equal Protection Clause" (citing Yick Wo v. Hopkins, 118 U.S.
356 (1886)).

mandates that state and local governments treat alike all persons that are similarly situated. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). The Equal Protection Clause applies to enforcement of the law. See Navarro, 72 F.3d at 717; DeShaney, 489 U.S. at 197 n. 3. A class-based equal protection violation requires a plaintiff to allege intentional discrimination on the basis of the plaintiff's membership in an identifiable class. Flores v. Morgan Hill Unified Sch. Dist., 324 F.3d 1130, 1134 (9th Cir. 2003) (citation omitted); see also Gallinger v. Becerra, 898 F.3d 1012, 1017 (9th Cir. 2018).[11/]

To state a class-based equal protection claim, a plaintiff must allege: (1) membership in an identifiable class; Flores, 324 F.3d at 1134–35 (citations omitted); and (2) the existence of a similarly-situated class against which the plaintiff's class can be compared. Freeman v. City of Santa Ana, 68 F.3d 1180, 1187 (9th Cir. 1995). If the classification

---

[11/] In its 11/16/2018 Order, the Court discussed at length the other theory that can be used to plead an equal protection violation, which is known as the class-of-one doctrine. See 11/16/2018 Order at 28–29, 33–37; see also Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam); Hyland v. Office of Hous. & Cmty. Dev., Civ. No. 15-00504 LEK-RLP, 2018 WL 4119903, at *4, (D. Haw. Aug. 29, 2018). The Court's 11/16/2018 Order addressed the class-of-one doctrine because it was unclear whether Plaintiff Garcia's original Complaint advanced a class-based theory, a class-of-one theory, or perhaps both. However, it is clear that Plaintiff Garcia's FAC does not advance a class-of-one equal protection theory.

involves a protected class, such as race or gender, or if the classification implicates a fundamental right, the court applies a heightened level of scrutiny in order to determine whether the government's conduct is constitutional. See Gallinger, 898 F.3d at 1017; Freeman, 68 F.3d at 1187. If the classification is not inherently invidious, or does not implicate a fundamental right, the court applies rational basis review. Navarro, 72 F.3d at 717 (citation omitted). Under rational basis review, the government classification must be rationally related to legitimate government objectives. Id. (citing Schweiker v. Wilson, 450 U.S. 221, 230 (1981)).

> ### a. Whether Plaintiff Garcia Has Alleged Membership in an Identifiable Class and the Existence of a Similarly-Situated Class

In its 11/16/2018 Order, the Court found that Plaintiff Garcia adequately alleged membership in an identifiable class—victims of domestic abuse whose abusers are HPD officers—but that her equal protection violation was inadequately plead because she failed to identify a similarly-situated group of individuals. 11/16/2018 Order at 31-32.

Defendants argue that the Court should dismiss Plaintiff Garcia's claims because she has not alleged membership in a suspect class or the existence of a similarly-situated class. Defendant Honolulu's Motion at 4-7; Officer Defendants' Motion at 4-6. Defendants' first argument fails because the

Court already found in its 11/16/2018 Order that Plaintiff Garcia adequately alleged membership in an identifiable class.[12/]

Defendants' second argument fails because the FAC adequately identifies a similarly-situated class against which Plaintiff Garcia's class can be compared—that is, domestic abuse victims whose abusers are not HPD officers.[13/] FAC ¶¶ 170–173. The FAC identifies two incidents in which the HPD responded appropriately to domestic abuse situations where the abuser was an ordinary citizen. Id. ¶¶ 172–173. The first incident

_____

[12/] Moreover, as the Court noted in its 11/16/2018 Order, and again supra, it is not necessary for a plaintiff to allege membership in a suspect class in order to state a class-based equal protection claim. The plaintiff need only allege membership in an identifiable class. See Flores 324 F.3d at 1134–35 ("[t]he plaintiffs are members of an identifiable class for equal protection purposes because they allege discrimination on the basis of sexual orientation"); see also Davis v. Prison Health Servs., 679 F.3d 433, 441 (6th Cir. 2012) (explaining that when the identifiable group has been recognized as a suspect or quasi-suspect class, courts examine the classification under heightened scrutiny, whereas when the identifiable group has not been recognized as a suspect or quasi-suspect class, courts examine the classification under rational basis review).

[13/] The FAC appears to use the phrases "domestic violence" and "domestic abuse" interchangeably. On certain occasions, the FAC refers to instances of "domestic violence and abuse" and also refers to Defendant Lombardi's repeated violations of protective orders, harassment, threats, and related types of misconduct. See, e.g., FAC ¶¶ 3–4, 30, 58, 73, 170–173. For purposes of this Order, the Court will use only the phrase "domestic abuse" except where referring to a source that uses the phrase "domestic violence." Moreover, as the Court discusses infra, Plaintiff Garcia's purported class and similarly-situated class do not appear to be limited to physical domestic abuse within the meaning of HRS § 709-906, which governs abuse of family or household members. See Haw. Rev. Stat. § 709-906.

occurred on November 18, 2018 and involved an abusive husband who assaulted his wife.  Id. ¶ 172.  HPD arrested the abuser and he was charged with second-degree assault shortly thereafter. Id.  The second incident occurred on November 24, 2018 and involved a man who threatened his domestic partner in violation of a protective order.  Id. ¶ 173.  He was arrested the following day for violating that order.  Id.

Accepting these factual allegations as true, the Court finds that they give rise to a plausible inference that a similarly-situated class of victims exists for purposes of Plaintiff Garcia's equal protection claim.  The distinguishing factor between these classes of victims is the identity of the abusers.  For one class the abusers are HPD officers, and for the other class the abusers are ordinary citizens.

Although Defendants argue that two incidents are not enough to plausibly allege the existence of a similarly-situated class, they offer no authority in support of this argument. Moreover, the purpose of identifying a similarly-situated group is so the court can have a "control group" and determine whether "unequal treatment of people in similar circumstances" has taken place.  See Freeman, 68 F.3d at 1187 (internal quotations omitted) (citing Attorney general v. Irish People, Inc., 684 F.2d 929, 946 (D.C. Cir. 1982); United States v. Aguilar, 883 F.2d 662, 706 (9th Cir. 1989)).  The Court finds that the

incidents involving the similarly-situated class adequately illustrate the disparate treatment that Plaintiff Garcia complains about.  Accordingly, Defendants' argument is without merit.[14]

Moreover, the Hawai`i State Legislature's findings in H.B. No. 2133 bolster the Court's conclusion that Plaintiff Garcia has plausibly alleged the existence of a similarly-situated class.  H.B. No. 2133 is a state law that relieves

---

[14] The Court also notes several cases from another district court in the Ninth Circuit, one of which is very similar to the case at bar.  In Martinez v. Pennington, the plaintiff pursued equal protection claims against two municipalities and several individual police officers, alleging that the municipalities and officers violated her right to equal protection by enforcing domestic violence laws differently from other types of laws. No. 1:15-cv-00683-JAM-MJS, 2016 WL 40181881, at *2 (E.D. Cal. Aug. 9, 2016).  The court denied the defendants' motion to dismiss and ruled that the plaintiff stated plausible equal protection claims in part because some of the facts needed to support her claims were solely controlled and possessed by the defendants.  Id. (citing Estate of Duran v. Chavez, No. 2:14-cv-02048-TLN-CKD, 2015 WL 8011685, at *9 (E.D. Cal. Dec. 7, 2015) ("where most of the information needed to support a claim is in the defendants' custody and not available to plaintiffs prior to discovery, a more conclusory and formulaic approach to pleadings is acceptable"); Phillips v. Cty. of Fresno, No. 1:13-cv-0538-AWI-BAM, 2013 WL 6243278, at *10 (E.D. Cal. Dec. 3, 2013) ("Plaintiffs need only provide information sufficient to supply notice to Defendants as to the sorts of information they will need to refute, if they can, Plaintiffs' allegations in a subsequent motion for summary judgment")).  At the hearing held on April 23, 2019, counsel for Plaintiff Garcia noted that disciplinary records concerning HPD officers are not subject to disclosure under state law.  Accordingly, the Court finds that these cases lend additional support to its conclusion that the allegations in the FAC are sufficient for purposes of establishing a similarly-situated class.

domestic abuse victims whose abusers are police officers from having to file a notarized or sworn written statement when filing an administrative complaint against the abusive officer.[15/]  <u>See</u> Haw. Rev. Stat. § 52D-17; H.B. No. 2133, 29th Leg., Reg. Sess. (Haw. 2018); FAC ¶¶ 164–170.  The Legislature found that a pervasive problem exists within the HPD of mishandling domestic abuse complaints, in particular where the abuser is an HPD officer.  H.B. No. 2133; <u>see also</u> FAC ¶¶ 164–170.  The Legislature noted that between May 2013 and September 2014 the Hawai`i State Commission on the Status of Women received 38 complaints in which victims accused HPD officers of mishandling domestic abuse reports.  H.B. No. 2133; <u>see also</u> FAC ¶ 166.  One-third of these complaints involved abusers who were HPD officers or relatives of HPD officers.  H.B. No. 2133; <u>see also</u> FAC ¶ 166.

---

[15/] A court may consider certain materials, including documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice, without converting a motion to dismiss into a motion for summary judgment.  <u>U.S. v. Ritchie</u>, 342 F.3d 903, 908 (9th Cir. 2003) (citations omitted).  The Court finds that H.B. No. 2133 is subject to review under both the incorporation by reference doctrine and as a matter of judicial notice because it is a matter of public record.  <u>See</u> <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 689 (9th Cir. 2001) (noting that the court may take judicial notice of "matters of public record").  H.B. No. 2133 is accessible via the Hawai`i State Legislature's official government website.

The Legislature's findings also discuss a domestic abuse incident that occurred in September 2014 in which the HPD took no action against the abuser, an HPD officer named Darren Cachola. H.B. No. 2133 at p. 1-2; see also FAC ¶¶ 165. The HPD did not arrest the offending officer at the scene, no officer filed an incident report, and no investigation was initiated until an ordinary citizen presented surveillance footage of the incident to the media. H.B. No. 2133 at p. 2; see also FAC ¶ 165.

Defendants argue that the incident with Officer Cachola is not relevant to Plaintiff Garcia's equal protection claim because the incident involved an "on the scene" abuse complaint, whereas the FAC does not allege Plaintiff Garcia ever made such a complaint. Officer Defendants' Motion at 4-5; Defendant Honolulu's Motion at 5. At the hearing held on April 23, 2019, defense counsel raised a similar argument—that because the FAC does not allege physical abuse within the meaning of Hawai`i Revised Statutes § 709-906, the section of the Hawai`i Penal Code governing abuse of family or household members, Plaintiff Garcia's equal protection claim fails. See also Officer Defendants' Reply at 4.

The Court finds that these arguments are without merit for several reasons. First, Defendants misconstrue the allegations concerning Plaintiff Garcia's class. It is clear

from the FAC that Plaintiff Garcia is concerned with the HPD's response to complaints by victims concerning violations of protective orders, threats, and harassment where the perpetrator is an HPD officer—not solely the HPD's response to on-the-scene incidents of domestic abuse.  Second, even assuming that Plaintiff Garcia needed to allege acts of physical abuse by Defendant Lombardi, the FAC features such allegations prominently.  The FAC alleges that Defendant Lombardi sexually and physically assaulted his daughters, and children are included in Hawai`i's abuse of family or household members statute.  See Haw. Rev. Stat. § 709-906(1)(a).  Finally, Defendants first raised the argument regarding allegations of physical abuse within the meaning of HRS § 709-906 in the Officer Defendants' Reply.[16]

Accordingly, the Court concludes that Plaintiff Garcia has plausibly alleged membership in an identifiable class, as well as the existence of a similarly-situated class, for purposes of stating an equal protection claim.

> **b.** **Whether Plaintiff Garcia Has Plausibly Alleged that an HPD Officer Deprived Her of the Right to Equal Protection**

In its 11/16/2018 Order, the Court noted that Plaintiff Garcia failed to allege with sufficient particularity

---

[16] Local Rule 7.4 states in relevant part that "[a]ny argument raised for the first time in the reply shall be disregarded."

how the Officer Defendants' actions constituted equal protection
violations.  11/16/2018 Order at 52.  Now, Plaintiff Garcia
argues that Defendant Lee deprived her of her right to equal
protection, and that Defendants Arakawa and Hee deprived her of
her substantive due process rights.[17/]

Plaintiff Garcia argues that Defendant Lee deprived
her of her right to equal protection because he failed to
adequately investigate Defendant Lombardi's misconduct in
violation of numerous internal HPD policies.  Opposition at 33–
34.  Plaintiff Garcia argues that because Defendant Lee works as
an officer in Internal Affairs/Professional Standards, he was
required to conduct appropriate investigations into Defendant
Lombardi regarding the alleged sexual assaults of his daughters,
the protective orders and the pre-decree relief order that
Plaintiff Garcia obtained, and the incident reports and PSO
complaints that Plaintiff Garcia filed.  Id. at 33–34.  This
argument is perplexing, however, because the FAC features

---

[17/] The Officer Defendants' Motion only discusses equal
protection violations and misreads Plaintiff Garcia's FAC as
alleging that Defendants Arakawa and Hee also violated Plaintiff
Garcia's right to equal protection.  Officer Defendants' Motion
at 4–6.  Count I of the FAC concerns equal protection violations
and Count II of the FAC concerns substantive due process
violations.  FAC ¶¶ 204–220.  Counts I and II both contain
paragraphs naming all three of the Officer Defendants; however,
the specific factual allegations in the FAC relating to equal
protection violations concern only Defendant Lee, and the
allegations relating to substantive due process violations
concern only Defendants Arakawa and Hee.

allegations connecting Defendant Lee to only two PSO
investigations.

In that regard, Plaintiff Garcia alleges that she
filed a complaint with the HPD PSO on June 25, 2015.  FAC ¶ 108.
The complaint accused Defendant Lombardi of harassment,
including that he made threats to resort to self-help to have
unsupervised visitation with the children and threats to
retaliate against Plaintiff Garcia for accusing him of domestic
violence and sexually assaulting G.L., all in violation of
existing Family Court orders.  Id.  Plaintiff Garcia alleges
that Defendant Lee was one of the PSO detectives assigned to her
complaint and that he conducted an inadequate investigation in
violation of HPD Policies 3.26,[18/]  4.18,[19/] 5.01,[20/] and 7.09.[21/]

_____

[18/] HPD Policy Number 3.26 is titled "Employees Involved in
Domestic Violence."  The policy provides procedures concerning
the PSO's obligation to investigate and hold accountable HPD
officers involved in domestic violence disputes.  See Honolulu
Police Department, Policy Number 3.26 (Oct. 12, 2015); see also
FAC ¶¶ 143-145.
[19/] HPD Policy Number 4.18 is titled "Abuse of Family or
Household Members."  The policy requires HPD officers responding
to a domestic violence incident to conduct a detailed
investigation and prepare a written report regarding the
incident.  See Honolulu Police Department, Policy Number 4.18
(July 1, 2016); see also FAC ¶¶ 146-149.
[20/] HPD Policy Number 5.01 is titled "Complaints and Internal
Investigations."  The policy governs administrative and criminal
complaints against the HPD and its employees and requires the
PSO to expeditiously investigate any such complaints absent
exceptional circumstances.  See Honolulu Police Department,
Policy Number 5.01 (Feb. 26, 2016); see also FAC ¶¶ 150-151.

Id. ¶¶ 111–112.  She also alleges that on May 11, 2017,

Defendant Lee notified her that her complaint was closed on

November 9, 2015 because it had been determined "to be more of a

civil matter."  Id. ¶¶ 109–110.

The FAC also alleges that Plaintiff Garcia filed

another PSO complaint with Defendant Lee on March 15, 2017

regarding Defendant Lombardi's having filed four false police

reports with the assistance of other HPD officers, which he

later used against Plaintiff Garcia in custodial interference

proceedings.  Id. ¶ 126.  The FAC alleges that Defendant Lee

tried to discourage Plaintiff Garcia from including other

officers in her complaint and "only relented after he was told

that a Police Commissioner had expressed concern about

Plaintiff's complaint."  Id. ¶ 127.

Accepting these factual allegations as true and

drawing all reasonable influences in favor of the non-movant,

the Court finds that these allegations give rise to plausible

claims that Defendant Lee violated Plaintiff Garcia's right to

equal protection.  Given the disparity between the allegations

---

21/ HPD Policy Number 7.09 is titled "Court Orders for
Protection."  The policy requires the PSO to conduct an
investigation when an HPD officer who is the subject of a
protective order is suspected of violating that protective
order.  The policy sets forth extremely detailed procedures to
be followed.  See Honolulu Police Department, Policy Number 7.09
(Apr. 6, 2015); see also FAC ¶¶ 152–158.

in the first PSO complaint, which involved threats by a domestic abuser, and the outcome of the investigation (which was disclosed over 18 months after the investigation had concluded) determining the complaint "to be more of a civil matter," it is plausible that Defendant Lee conducted a cursory or inadequate investigation into Plaintiff Garcia's PSO complaint in violation of HPD Policy Numbers 3.26, 4.18, 5.01, and 7.09.  It is also plausible that Plaintiff Garcia was treated this way because of her status as a victim who filed a complaint against an HPD officer, and that there was no rational basis for treating her differently from victims who file complaints against ordinary citizens.

Plaintiff Garcia's second PSO complaint was ultimately sustained on August 9, 2017.  FAC ¶ 129.  However, the FAC alleges that Defendant Lombardi continued harassing Plaintiff Garcia after that complaint was sustained, and therefore, that whatever disciplinary action was taken against Defendant Lombardi was insufficient.  Id. ¶¶ 130–131.  Accordingly, the Court finds that Defendant Lee's conduct concerning the investigation of the second PSO complaint also gives rise to a plausible equal protection violation.

The Officer Defendants argue that Plaintiff Garcia has failed to allege that they caused or participated in the alleged equal protection violation.  Officer Defendants' Motion at 5.

The Officer Defendants are correct that for a person acting under color of state law to be liable under § 1983 there must be a showing of personal participation in the alleged constitutional deprivation. Park, 292 F. Supp. 3d at 1090 (citing Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002)). Here, however, the allegations concern inadequate investigations that Defendant Lee conducted and later discussed with Plaintiff Garcia. Accordingly, the FAC has adequately alleged that Defendant Lee participated in a constitutional deprivation and the Officer Defendants' argument is without merit.

For the foregoing reasons, the Court finds that Plaintiff Garcia has plausibly alleged constitutional deprivations under the Equal Protection Clause.

### 2. Substantive Due Process Violations (Count II)

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The substantive due process rights guaranteed by the Fourteenth Amendment include protection against the government's interference with "an individual's bodily integrity." P.B. v. Koch, 96 F.3d 1298, 1303 (9th Cir. 1996) (citations omitted). "The relevant inquiry in distinguishing simple tort actions from substantive due process violations is 'whether the deprivation is sufficiently serious

that the constitutional line has been crossed.'" Cullum v. Teton Cty., No. 4:10-CV-293-BLW, 2011 WL 841431, at *3 (D. Idaho Mar. 7, 2011) (quoting Wood v. Ostrander, 879 F.2d 583, 589 (9th Cir. 1989)). The standard for judging a substantive due process claim is whether the challenged government conduct is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Park, 292 F. Supp. 3d at 1094 (citing Cty. of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998)).

Plaintiff Garcia alleges that Defendant Lombardi violated her right to bodily integrity by repeatedly harassing and threatening her in violation of protective orders, filing false police reports against her, and trying to have her prosecuted for custodial interference. FAC ¶¶ 184–187. Plaintiff Garcia alleges that by assisting Defendant Lombardi in filing a false police report against her on March 18, 2016, Defendants Arakawa and Hee also engaged in constitutional deprivations of Plaintiff Garcia's substantive due process rights. Id. ¶¶ 213–233.

As Plaintiff Garcia correctly notes in her Opposition, neither Defendant Honolulu nor the Officer Defendants appear to contest the plausibility of Plaintiff Garcia's substantive due process claims. Opposition at 19. Accordingly, any objections to those claims are barred at this time. See Fed. R. Civ. P.

12(g)(2).[22/]  The Court will therefore not address Plaintiff

Garcia's substantive due process claims at this time.

## B.  **Monell Liability (Count III)**

Having determined that Plaintiff Garcia has plausibly

alleged constitutional deprivations, the Court must consider

whether Plaintiff Garcia has plausibly alleged municipal

liability for those deprivations under Monell.  Plaintiff Garcia

pursues municipal liability under a longstanding practice or

custom theory.[23/]

### 1.  **Longstanding Practice or Custom**

To establish Monell liability absent a formal

government policy, a plaintiff "must show a longstanding

practice or custom which constitutes the standard operating

procedure of the local government entity."  Trevino v. Gates, 99

F.3d 911, 918 (9th Cir. 1996) (internal quotation marks omitted)

(citing Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir.

---

[22/] The Court notes that although Defendants failed to contest
Plaintiff Garcia's substantive due process claims in the instant
Motions, they have not waived the failure-to-state-a-claim-upon-
which-relief-can-be-granted defense with respect to these
claims.  See Fed. R. Civ. P. 12(h)(2).  They are simply barred
from raising this defense in these Motions or in another pre-
answer motion.  Fed. R. Civ. P. 12(g)(2).

[23/] Plaintiff Garcia's original Complaint appeared to assert
Monell liability based on a failure to train theory, which the
Court addressed in its 11/16/2018 Order.  11/16/18 Order at 44-
47.  Plaintiff Garcia's FAC does not appear to advance a failure
to train theory, nor does she address this theory in her
Opposition.  Accordingly, the Court will not address Monell
liability on the basis of this theory.

1992), cert. denied, 510 U.S. 932 (1993)). "The custom must be so 'persistent and widespread' that it constitutes a 'permanent and well-settled city policy.'" Trevino, 99 F.3d at 918 (citing Monell, 436 U.S. at 691). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." Trevino, 99 F.3d at 918 (citations omitted).[24/]

In its 11/16/2018 Order, the Court addressed Plaintiff Garcia's argument that "a plaintiff may prove the existence of a custom or informal policy with evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded." Navarro, 72 F.3d at 714 (internal quotation marks omitted) (citing Gillette, 979 F.2d at 1348); see 11/16/2018 Order at 42. The Court noted that Plaintiff Garcia's argument in this respect failed because she

---

[24/] The Ninth Circuit has had little occasion to address Monell liability pursuant to a longstanding practice or custom. Another district court aptly described how an unconstitutional practice or custom originates, stating that "[u]nlike a 'policy', which comes into existence because of the top-down affirmative decision of a policymaker, a custom develops from the bottom-up. Thus, the liability of the municipality for customary constitutional violations derives not from its creation of the custom, but from its tolerance or acquiescence in it." Britton v. Maloney, 901 F. Supp. 444, 450 (D. Mass. 1995).

had not alleged any plausible constitutional violations.  Id.
Now that Plaintiff Garcia has cured that pleading deficiency and
plausibly alleged constitutional deprivations, the Court finds
Plaintiff Garcia's reliance on Navarro is appropriate for
alleging the existence of a longstanding practice or custom.

Accepting the well-pleaded allegations in the FAC as
true, it is clear that Plaintiff Garcia has alleged the
existence of a longstanding practice or custom—that is,
Defendant Honolulu's alleged custom of mishandling domestic
abuse complaints filed against HPD officers.  Indeed, the FAC is
replete with numerous allegations spanning a ten-year period[25]
which give rise to a reasonable inference that the such a
practice or custom exists.

---

[25] As the Court noted supra, the Court's 11/16/2018 Order found
that the claims against Defendant Honolulu constituted a
continuing violation and were not subject to the relevant two-
year statute of limitations.  11/16/2018 Order at 21-22.
Specifically, Plaintiff Garcia complains about Defendant
Honolulu's response to the sexual assault of G.L. in 2008, FAC
¶¶ 20-21, the HPD's failure to enforce protective orders
throughout 2008 and 2009, id. ¶¶ 60-74; the HPD's failure to
enforce its own internal policies by allowing Defendant
Lombardi, with the assistance of other officers, to file false
police reports throughout 2009, 2011, 2015, and 2016, id. ¶¶ 88-
92, 100-101, 113-119; the HPD's failure to properly respond to
an inquiry from the Ottawa Police Service regarding its criminal
investigation of Defendant Lombardi in 2012, which Plaintiff
Garcia initiated while living in Canada, id. ¶ 103-107; and the
HPD's inadequate investigations in response to Plaintiff
Garcia's PSO complaints filed in 2015 and 2017, id.
Accordingly, the Court's consideration of all of the allegations
in the FAC against Defendant Honolulu is proper.

Defendant Honolulu argues that the Court should dismiss Plaintiff Garcia's claims because she has failed to introduce evidence to establish the existence of a longstanding, persistent, and widespread practice or custom. Defendant Honolulu's Motion at 8-9. This argument is premature given the fact that Defendant Honolulu filed a motion to dismiss and not a motion for summary judgment. At this stage of litigation, where the pleadings have not yet closed, Plaintiff Garcia need not introduce evidence sufficient to establish the existence of a longstanding practice or custom—she just needs to plead facts sufficient for the Court to draw the reasonable inference that the practice or custom exists.

However, under <u>Monell</u>, the practice or custom must be more than longstanding—it must be "so persistent and widespread that it constitutes a permanent and well-settled city policy." <u>Monell</u>, 436 U.S. at 691 (internal quotation marks and citation omitted). In its 11/16/2018 Order, the Court noted that even if Plaintiff Garcia had plausibly alleged equal protection violations due to a longstanding practice or custom, she had not plausibly alleged that the custom was widespread. 11/16/2018 Order at 46. Based upon the FAC's discussion of other instances where HPD officers responded inappropriately to complaints filed against HPD officers, as well as instances where the HPD responded appropriately to complaints filed against ordinary

citizens, the Court finds that Plaintiff Garcia has cured this pleading deficiency and has plausibly alleged that the custom she complains of is sufficiently widespread for purposes of Monell.

The Court described these instances in detail supra in its discussion of the similarly-situated class and will not repeat that discussion here. The Court also reiterates that between May 2013 and September 2014 the Hawai`i State Commission on the Status of Women received 38 complaints wherein victims accused HPD officers of mishandling domestic abuse reports. Id. ¶ 166. One-third of these complaints involved abusers who were HPD officers or relatives of HPD officers. Id.

Accordingly, the Court finds that the allegations in the FAC indicate that the custom of mishandling domestic abuse complaints against HPD officers is so persistent and widespread as to constitute well-settled policy, see Trevino, 99 F.3d at 918 (citing Monell, 436 U.S. at 691), and that Plaintiff Garcia has therefore plausibly alleged this element of municipal liability.

The Hawai`i State Legislature's findings in H.B. No. 2133 also support the Court's finding that the FAC has plausibly alleged the existence of a longstanding, widespread custom. As the Court noted supra, H.B. No. 2133 is a state law designed to make it easier for victims of domestic abuse to file complaints

against HPD officers who commit domestic abuse.  See H.B. No.
2133.

In Section 1 of H.B. No. 2133, the Hawai`i State
Legislature made several findings, including that there exists
within the HPD a "pattern of inappropriate handling by some
police officers in response to allegations of domestic
violence."  H.B. No. 2133 at p. 3.

The Legislature also noted a significant disparity in
the degree of disciplinary actions taken against HPD officers
involved in domestic abuse incidents as opposed to other
misconduct, the former warranting much less severe disciplinary
responses than the latter.[26/]  Id.  The Legislature found that
the "disciplinary disparity leads the legislature to question
whether the Honolulu police department is minimizing the problem
of domestic abuse, particularly when incidents involve a police
officer."  Id. at p. 5.  It further found that "there are also
police officers who do not respond to domestic abuse situations

_____

[26/] As the Court noted supra, counsel for Plaintiff Garcia stated
at the hearing held on April 23, 2019 that disciplinary records
of HPD officers are privileged under state law.  Where some of
the facts needed to support a plaintiff's claim are solely
controlled and possessed by the defendants, a more conclusory
and formulaic pleading approach is acceptable.  Martinez, 2016
WL 40181881, at *2 (citing Estate of Duran, 2015 WL 8011685, at
*9).  Accordingly, the Court finds that this principle lends
additional support to its conclusion that the FAC plausibly
alleges the existence of a longstanding and widespread custom or
practice for purposes of Plaintiff Garcia's Monell claim.

appropriately when the perpetrator is a fellow police officer."
Id. at p. 6.

Accordingly, the Legislature's findings lend
additional support to the Court's conclusion that the FAC
plausibly alleges the existence of a longstanding, widespread
practice or custom.

## 2. Deliberate Indifference

The existence of a policy (or, in this case, a
longstanding practice or custom), without more, is insufficient
to trigger Monell liability. City of Canton, 489 U.S. at 388–
89. The plaintiff must also allege that the practice or custom
evidences a deliberate indifference to the plaintiff's
constitutional rights. Id. at 389. The Ninth Circuit has
explained that deliberate indifference "occurs when the need for
more or different action is 'so obvious, and the inadequacy [of
the current procedure] so likely to result in the violation of
constitutional rights, that the policymakers . . . can
reasonably be said to have been deliberately indifferent to the
need." Oviatt, 954 F.2d at 1477–78 (alterations in original,
internal quotation marks omitted) (citing City of Canton, 489
U.S. at 390). Once the plaintiff has established the existence
of a longstanding practice or custom, "a municipality may be
liable for its custom irrespective of whether official policy-

makers had actual knowledge of the practice at issue."[27/]

Navarro, 72 F.3d at 714–15 (citing Thompson v. City of Los Angeles, 885 F.2d 1439, 1444 (9th Cir. 1989), overruled on other grounds by Bull v. City and Cty. of San Francisco, 595 F.3d 964 (9th Cir. 2010)).[28/]

Defendant Honolulu's sole argument regarding deliberate indifference is that the FAC fails to allege that Defendant Honolulu had any knowledge of Defendant Lombardi's constitutional violations. Defendant Honolulu's Motion at 10–11. However, as the Court noted, a plaintiff need not show that official policymakers had actual knowledge of the custom at issue when the Monell theory of liability is an unconstitutional

---

[27/] The Fourth Circuit follows a similar approach, which it has thoroughly explicated. See Spell v. McDaniel, 824, F.2d 1380 (4th Cir. 1987). The Fourth Circuit has explained that municipal fault for allowing an unconstitutional custom to continue requires (1) actual or constructive knowledge of its existence by responsible policymakers, and (2) their failure, as a matter of specific intent or deliberate indifference, thereafter to correct or stop the practices." Id. at 1391. Moreover, "[c]onstructive knowledge may be inferred from the widespread extent of the practices, general knowledge of their existence, manifest opportunities and official duty of responsible policymakers to be informed, or combinations of these." Id.
[28/] In Thompson, the Ninth Circuit noted that the existence of custom as a basis for Monell liability serves a critical role in ensuring that local governments are held responsible for widespread abuses or practices that cannot be affirmatively attributed to the decisions or ratification of an official government policymaker but are so pervasive as to have the force of law. 885 F.2d at 1444 (citing City of St. Louis v. Prapotnik, 495 U.S. 112, 126–27 (1988)).

longstanding practice or custom.[29/]  See <u>Navarro</u>, 72 F.3d at 714–

15.  It appears that Defendant Honolulu focuses solely on the

violations of Defendant Lombardi and not on the equal protection

violations committed by the other HPD officers—equal protection

violations visited pursuant to the longstanding practice or

custom that Plaintiff Garcia complains about.  In any event, the

Court finds that Defendant Honolulu had, at the very least,

constructive knowledge of the longstanding practice or custom

given the volume of complaints Plaintiff Garcia filed between

2008 and 2018.[30/]

Here, Plaintiff Garcia complains about a longstanding

practice or custom where the HPD handles domestic abuse

complaints against ordinary citizens appropriately but

mishandles domestic abuse complaints against HPD officers.  Her

---

[29/] As Plaintiff Garcia points out, Opposition at 32, Defendant
Honolulu's argument that it was without knowledge of Defendant
Lombardi's constitutional violations is quite surprising given
the fact that Plaintiff Garcia obtained four court orders and
filed at least six police reports and two PSO complaints over a
ten-year period detailing Defendant Lombardi's threatening
behavior and harassment.

[30/] In the aftermath of the domestic violence incident involving
HPD officer Darren Cachola, which occurred in September 2014,
the Hawai`i State Legislature held an informational briefing at
which the HPD's police chief and two of his deputies were
questioned about the HPD policies regarding domestic violence
investigations.  <u>See</u> H.B. 2133 at p. 2–3.  At that briefing, the
HPD's record on disciplining officers for domestic violence-
related misconduct was called into question.  <u>Id.</u> at p. 3.
Accordingly, it appears likely that after this informational
briefing was held, Defendant Honolulu had actual knowledge of
the alleged longstanding practice or custom.

allegations span a ten-year period and detail numerous instances
of plausible constitutional deprivations, including those
discussed <u>supra</u>.  She alleges that the HPD officers consistently
violated internal HPD policies when dealing with her complaints
about Defendant Lombardi, and that Defendant Honolulu and did
nothing to remedy the HPD policy violations that caused
Plaintiff Garcia constitutional deprivations.

It is plausible that the widespread failure to remedy
HPD policy violations could have been due to Defendant
Honolulu's deliberate indifference.  See <u>Spell</u>, 824 F.2d at 1391
(holding that an unconstitutional custom requires policymakers'
failure, as a matter of specific intent or deliberate
indifference, to correct or stop the practice once they have
actual or constructive knowledge of it).[31/]  It is also plausible
that, like the custom in <u>Navarro</u> of treating domestic violence
911 calls differently from non-domestic violence 911 calls, the
HPD's custom of handling domestic abuse complaints against HPD
officers differently from domestic abuse complaints against
ordinary citizens might fail rational basis review.  72 F.3d at
717.

---

[31/] Indeed, the question of whether a local government's
longstanding practice or custom amounts to deliberate
indifference is normally reserved for the jury.  <u>Oviatt</u>, 954
F.2d at 1478.

Moreover, the FAC refers to the Gun Ban for Individuals Convicted of a Misdemeanor Crime of Domestic Violence (informally known as the "Lautenberg Amendment"), which is codified at 18 U.S.C. § 922(g)(9). FAC ¶ 167. The Lautenberg Amendment, <u>inter alia</u>, prohibits any person who has been convicted of a misdemeanor crime of domestic violence from possessing a firearm. 18 U.S.C. 922(g)(9).

At the hearing held on April 23, 2019, counsel for Plaintiff Garcia echoed the Hawai`i State Legislature's findings that the Lautenberg Amendment may cause the HPD to minimize alleged incidents of domestic violence involving HPD officers. <u>See</u> H.B. 2133 at p. 5. Counsel for Plaintiff Garcia argued that the HPD has a strong incentive to ensure that its officers are not convicted of domestic violence crimes because, pursuant to the Lautenberg Amendment, any police officer so convicted would be barred from carrying a firearm and contribute to an existing manpower shortage within the HPD. Counsel for Plaintiff Garcia noted that the Lautenberg Amendment might serve as motivation for the HPD to look the other way when HPD officers engage in domestic abuse, and that by doing so Defendant Honolulu exhibits deliberate indifference to the rights of victims.

Although the Court expresses no opinion as to the HPD's motivation behind the alleged longstanding practice or custom, the Court finds that the FAC has plausibly alleged that

Defendant Honolulu's failure to correct a custom so likely to result in constitutional violations could constitute deliberate indifference under <u>Monell</u>.

### 3. Moving Force

Finally, a plaintiff alleging <u>Monell</u> liability is required to show that the policy is the moving force behind the ultimate injury. <u>Oviatt</u>, 954 F.2d at 1481 (citing <u>City of Canton</u>, 489 U.S. at 391). "For a policy to be the moving force behind the deprivation of a constitutional right, the identified deficiency in the policy must be closely related to the ultimate injury." <u>Long</u>, 442 F.3d at 1190 (quotation marks omitted, citing <u>Gibson</u>, 290 F.3d at 1196). The plaintiff must establish that the injury would have been avoided if the proper policies had been implemented. <u>Long</u>, 442 F.3d at 1190 (citing <u>Oviatt</u>, 954 F.2d at 1478). Thus, because Plaintiff Garcia's <u>Monell</u> claim is based on a longstanding practice or custom and not a formal policy, she must plead facts demonstrating that the practice or custom is the moving force behind her constitutional deprivation.

Neither party addresses this element of <u>Monell</u> liability. However, it seems obvious that Plaintiff Garcia's constitutional deprivations were closely related to the longstanding practice or custom. Indeed, had Defendant Honolulu and the Officer Defendants handled her complaints appropriately,

Plaintiff Garcia would not have been deprived of her constitutional rights. Accordingly, the Court finds that Plaintiff Garcia has adequately alleged that the longstanding practice or custom was the moving force behind the constitutional violations.

For the foregoing reasons, the Court finds that the FAC states a plausible claim for municipal liability under Monell.

## III. Negligence Claims (Count V)

The FAC's negligence count appears to assert direct negligence claims against Defendants Arakawa, Hee, and Lee, and negligent supervision claims against Defendant Honolulu. FAC ¶¶ 236–247.

### A. Negligence Claims Against the Individual Officer Defendants

To state a claim for negligence under Hawai`i law, a plaintiff must allege: "(1) [the defendant's] duty to conform to a certain standard of conduct; (2) breach of the duty; (3) causal connection between the breach and the injury; and (4) damage[s]." Park, 292 F. Supp. 3d 1080, 1101 (citing Pourny v. Maui Police Dep't, Cty. of Maui, 127 F. Supp. 2d 1129, 1145 (D. Haw. 2000)).

The FAC alleges that Defendant Lee violated duties imposed upon him by internal HPD Policy Numbers 3.26, 4.18,

5.01, and 7.09 by failing to timely and adequately investigate Plaintiff Garcia's PSO complaints against Defendant Lombardi. FAC ¶ 245.  The FAC alleges that Defendants Arakawa and Hee violated duties imposed upon them by internal HPD Policy Number 2.21 by authoring and approving a false police report filed by Defendant Lombardi accusing Plaintiff Garcia of custodial interference.  Id. ¶ 243.

The Officer Defendants argue that Plaintiff Garcia failed to adequately plead that they owed her a legal duty. Officer Defendants' Motion at 7–8.  The Court agrees.  Indeed, Plaintiff Garcia offers no authority establishing that the HPD internal policies themselves create a legal duty.  This Court has noted that HPD internal policies in fact do not create legal duties for purposes of negligence claims, as has another court in this District.  See Park, 292 F. Supp. 3d at 1101 n. 13 (noting that HPD policies do not necessarily create a duty); Dowkin v. Honolulu Police Dep't, Civ. No. 10-00087 SOM-RLP, 2012 WL 3012643, at *4 (D. Haw. July 23, 2012) (citations omitted) (finding that the HPD's Code of Conduct did not by itself create a legal duty).

Plaintiff Garcia cites two cases in support of her assertion that internal HPD policies impose a legal duty on police officers with respect to the general public.  Opposition at 37; see Doe Parents No. 1 v. State of Haw., Dep't of Educ.,

100 Haw. 34, 58 P.3d 545 (Haw. 2002); <u>Seibel v. City and Cty. of</u>
<u>Honolulu</u>, 61 Haw. 253, 602 P.2d 532 (Haw. 1979).

In <u>Doe Parents No. 1</u>, the Hawai`i Supreme Court held
that the Hawai`i State Department of Education owed a duty to
students and parents to take necessary precautions to ensure the
safety and welfare of students in its custody, and that this
duty arose from a special relationship between the DOE and its
students and their parents.  100 Haw. at 81, 58 P.3d at 592.  In
<u>Seibel</u>, the Hawai`i Supreme Court discussed another form of
special relationship that gives rise to a duty—a city's duty to
supervise a prisoner who has been conditionally released.  61
Haw. at 260, 602 P.2d at 538.  It is unclear how either of these
cases support Plaintiff Garcia's argument that the Officer
Defendants owed her a legal duty arising from internal HPD
policies.

Accordingly, the Court finds that the FAC fails to
state plausible negligence claims against the Officer Defendants
because it does not adequately allege that the Officer
Defendants owed her a legal duty that they breached.  The Court
therefore dismisses the negligence claims against the Officer
Defendants without prejudice.

**B.   Negligence Claims Against Defendant Honolulu**

The FAC alleges negligence claims against Defendant
Honolulu on the basis of negligent supervision of Defendant

Lombardi and the Officer Defendants.[32/]  "Under Hawai`i law,

before a plaintiff can establish a claim for negligent training

and/or supervision, the plaintiff must establish that 'the

employer knew or should have known of the necessity and

opportunity for exercising such control.'"  <u>Park</u>, 292 F. Supp.

3d at 1102 (citing <u>Otani v. City & Cty. of Hawai`i</u>, 126 F. Supp.

2d 1299, 1308 (D. Haw. 1998), <u>aff'd sub nom.</u> <u>Otani v. Hawai`i</u>

<u>Cty. Police Dep't</u>, 246 F.3d 675 (9th Cir. 2000) (quoting <u>Abraham</u>

<u>v. S.E. Onorato Garages</u>, 50 Haw. 628, 639, 446 P.2d 821

(1968))).  The key to a negligent supervision claim is

foreseeability.  <u>Id.</u>  "If an employer has not been put on notice

of the necessity for exercising a greater degree of control or

supervision over a particular employee, the employer cannot be

held liable as a matter of law."  <u>Id.</u>  The Court first addresses

Plaintiff Garcia's claims concerning the negligent supervision

of the Officer Defendants and then turns to the negligent

supervision of Defendant Lombardi.

### 1.    Negligent Supervision of the Officer Defendants

To state a claim for negligent failure to supervise

the Officer Defendants, the FAC must include allegations that

---

[32/] The FAC does not appear to allege that Defendant Honolulu
should be held liable for the Officer Defendants' or Defendant
Lombardi's actions on a respondeat superior theory of vicarious
liability.  Accordingly, the Court does not address this theory
of liability.

Defendant Honolulu was on notice of the necessity to exercise a greater degree of control or supervision over the Officer Defendants.  See Park, 292 F. Supp. 3d at 1102.

The FAC alleges that on March 15, 2017, Plaintiff Garcia filed a complaint with the PSO regarding Defendant Lombardi having filed four false police reports against her. FAC ¶¶ 124–126.  She named Defendants Arakawa and Hee in that complaint because they authored and approved the report.  Id. While these allegations might be sufficient to put Defendant Honolulu on notice of the need to exercise better supervision over Defendants Arakawa and Hee, the FAC is devoid of allegations attributable to those HPD officers occurring after the date on which Plaintiff Garcia filed the PSO complaint—a complaint that was ultimately sustained.  Id. ¶ 129.  Moreover, nothing in the FAC indicates that Plaintiff Garcia ever reported wrongdoing on the part of Defendant Lee.

Accordingly, Plaintiff Garcia has failed to plausibly allege that Defendant Honolulu was negligent in its supervision of the Officer Defendants and those claims are dismissed.

## 2.  Negligent Supervision of Defendant Lombardi

With respect to Defendant Lombardi, the parties do not appear to dispute that Defendant Honolulu was on notice of Defendant Lombardi's misconduct.  Consequently, Defendant Honolulu argues that it had no means or opportunity to control

Defendant Lombardi during his private interactions with Plaintiff Garcia.

An employer is liable for negligent supervision of an employee only where the employee, while under the employer's control, commits an act that is outside the scope of his employment. See Dairy Road Partners v. Island Ins. Co., Ltd., 92 Haw. 398, 427, 992 P.2d 93, 122 (Haw. 2000); Wong-Leong v. Hawaiian Independent Refinery, Inc., 76 Haw. 433, 444-45 879 P.2d 538, 549-50 (Haw. 1994). Thus an employer owes no general duty to the public to supervise or control an employee while that employee is not under the employer's control.

There are at least three incidents alleged in the FAC where Defendant Lombardi may have been acting outside the scope of his employment while on duty. The first incident, which occurred on September 13, 2008, involved Defendant Lombardi harassing and threatening Plaintiff Garcia and her children at a Jamba Juice while on duty and while in uniform and armed with his service firearm. FAC ¶ 64. The second incident, which occurred on September 25, 2008, involved Defendant Lombardi visiting G.L. at preschool in contravention of a protective order—he did so in full uniform and used his official identification to enter the building. Id. ¶ 66. The third incident, which occurred on or around November 18, 2008,

involved Defendant Lombardi calling Plaintiff Garcia from an HPD telephone and leaving her a threating voicemail.  Id. ¶ 72.

It well may be that many of Defendant Lombardi's interactions with Plaintiff Garcia were as a private citizen where Defendant Honolulu had no means to control his actions. Although at least the three aforestated interactions occurred while Defendant Lombardi was on duty and, therefore, Defendant Lombardi acted outside the scope of his employment while under the control of his employer, these interactions occurred in 2008—well outside the two-year Hawai`i statute of limitations for personal injury actions.  See Haw. Rev. Stat. § 657-7.

In order for the continuing violation doctrine to apply to a claim concerning the negligent supervision of Defendant Lombardi, the FAC needs to include allegations of non-time-barred acts undertaken within the limitations period.  See 11/16/2018 Order at 21-22.  While the FAC contains some allegations about threats that Defendant Lombardi made within the limitations period,[33/] it is unclear whether Defendant

---

[33/] For example, Defendant Lombardi filed a false police report on March 16, 2016 alleging that Plaintiff Garcia engaged in custodial interference (it is unclear from the pleading whether Defendant Lombardi filed this report while acting as a duty officer, or if in fact he filed a complaint in his capacity as a private citizen); on May 24, 2017, Defendant Lombardi emailed Plaintiff Garcia and threatened to file additional police reports alleging custodial interference; on January 30, 2018 Defendant Lombardi sent another email to Plaintiff Garcia (Continued...)

Lombardi was acting as a private citizen or acting outside the scope of his employment while under the control of HPD.

Accordingly, the Court concludes that Plaintiff Garcia's factual allegations are insufficient to support her claim against Defendant Honolulu for the negligent supervision of Defendant Lombardi and that claim is dismissed.

## CONCLUSION

For the foregoing reasons, the Officer Defendants' Motion and Defendant Honolulu's Motion are GRANTED IN PART AND DENIED IN PART as follows:

1. The Officer Defendants' Motion is DENIED with respect to the individual capacity § 1983 equal protection claims and GRANTED with respect to the official capacity § 1983 claims and the negligence claims. The official capacity § 1983 claims are DISMISSED WITH PREJUDICE and the negligence claims are DISMISSED WITHOUT PREJUDICE. The Court declines to address the § 1983 substantive due process claims at this time because the Officer Defendants failed to address those claims in their Motion.

2. Defendant Honolulu's Motion is DENIED with respect to the § 1983 equal protection municipal liability claim and GRANTED with respect to the negligent supervision claims. The negligent supervision claims are DISMISSED WITHOUT PREJUDICE. The Court declines to address the § 1983 substantive due process municipal liability claim at this time because Defendant Honolulu failed to address that claim in its Motion.

---

threatening to file custodial interference charges against her and copying the email to his Honolulu.gov work email address. FAC ¶¶ 119, 128, 130.

Plaintiff Garcia shall have 30 days to file an amended complaint that attempts to cure the pleading deficiencies identified herein—that is, the deficiencies identified in her negligence claims. If Plaintiff Garcia chooses to file a second amended complaint, she may not assert additional claims absent the Court's permission.

IT IS SO ORDERED:

DATED:  Honolulu, Hawai`i, May 3, 2019.



_____
Alan C. Kay
Sr. United States District Judge

<u>Garcia v. City and County of Honolulu, et al.</u>, Civ. No. 18-00100 ACK-RLP Order Granting in Part and Denying in Part Defendants' Motions to Dismiss.