IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

|  |  |
|---|---|
| DONNA GARCIA, Individually and As Guardian <u>Ad Litem</u> for Her Minor Children, J.L. and G.L.<br><br>        Plaintiff,<br><br>    v.<br><br>CITY AND COUNTY OF HONOLULU; RONALD J. LOMBARDI; LANELL ARAKAWA; NATHAN HEE; PAUL LEE; and JOHN and/or JANE DOES 1-10,<br><br>        Defendants. | Civ. No. 18-00100 ACK-WRP |

<u>ORDER GRANTING DEFENDANTS' MOTIONS FOR JUDGMENT ON THE PLEADINGS AND SUMMARY JUDGMENT</u>

         Defendant Ronald J. Lombardi is a Honolulu Police

Officer who was previously married to Plaintiff Donna Garcia.

Plaintiff Garcia alleges that Defendant Lombardi committed acts

of domestic violence and domestic abuse against her and their

two children since 2008.  Plaintiff Garcia further alleges that

Defendant Lombardi was enabled by his fellow police officers,

who either took insufficient action or actively assisted

Defendant Lombardi in harassing behavior, despite that Plaintiff

Garcia informed the Honolulu Police Department ("HPD") about

Defendant Lombardi's conduct.  Plaintiff Garcia asserts that the

HPD has a custom in which police officers provide favorable

treatment to fellow officers who are accused of domestic abuse—favor that is not provided when the accused abuser is not an HPD officer.

Based on these allegations, Plaintiff Garcia filed a lawsuit on March 15, 2018, against Defendant Lombardi, several of his fellow officers, and the City and County of Honolulu ("Defendant Honolulu") for violating her Fourteenth Amendment rights to equal protection and substantive due process.  The claims against most individual officers were subsequently dismissed as time-barred by the two-year statute of limitations, but the claims against individual Defendant Officers Lanell Arakawa ("Defendant Arakawa"), Nathan Hee ("Defendant Hee"), and Paul Lee ("Defendant Lee") involved at least one allegation of a timely act.  The claims against those individual officers largely survived a motion to dismiss on that basis.  The claims against Defendant Honolulu, which the Court found plausibly subject to the continuing violations doctrine, also largely survived.

Each of the remaining Defendants, except Defendant Lombardi, now moves for dismissal of the remaining claims.  As against Defendant Lee, the Court now considers the timely allegation that he conducted an intentionally deficient investigation of Plaintiff Garcia's complaint regarding certain incident reports.  As against Defendant Officers Arakawa and

Hee, the Court now considers the timely allegation that the officers assisted Defendant Lombardi in filing an HPD incident report accusing Plaintiff Garcia of custodial interference.  As against Defendant Honolulu, the Court now considers the sufficiency of the municipal liability claim.  For the reasons that follow, the Court GRANTS the Motion for Summary Judgment filed by Defendant Officer Paul Lee, ECF No. 131; GRANTS the Motion for Judgment on the Pleadings filed by Defendant Officers Lanell Arakawa and Nathan Hee, ECF No. 130; and GRANTS the Motion for Summary Judgment filed by Defendant Honolulu, ECF No. 134.

## PROCEDURAL BACKGROUND

On March 15, 2018, Plaintiff Donna Garcia, individually and as guardian ad litem for her minor children, J.L. and G.L. ("Plaintiff Garcia"), filed a Complaint, ECF No. 1, against Defendant Honolulu, twenty-one HPD officers, and John and/or Jane Does 1–10 ("Doe Defendants").  Compl. ¶¶ 11–14.

Defendant Honolulu and each HPD officer except Defendant Lombardi filed motions to dismiss.  ECF Nos. 20, 25, 40, 45.  The Court granted the Defendants' motions to dismiss, finding that (1) the claims against most of the officers were time-barred, except for those claims against Officers Arakawa, Hee, and Lee, which were insufficiently pled; (2) that the

official-capacity claims were duplicative of the claims against Defendant Honolulu; and (3) that the municipal liability claim was insufficiently pled.  ECF No. 64 (the "11/16/2018 Order").

On December 14, 2018, Plaintiff Garcia filed her First Amended Complaint ("FAC").  ECF No. 70.  The FAC alleges claims against Defendant Honolulu and Defendant HPD Officers Lombardi, Lee, Arakawa, and Hee, as well as Doe Defendants.  The FAC alleges nearly the same claims as the Complaint, except that the FAC alleges an additional constitutional deprivation—violation of the substantive due process right to bodily integrity, which is protected by the Due Process Clause of the Fourteenth Amendment.[1/]  FAC ¶¶ 213–233.

Defendant Honolulu and, separately, Defendant Officers Arakawa, Hee, and Lee, filed motions to dismiss the FAC.  ECF Nos. 76, 77.  The Court granted in part and denied in part those motions, leaving intact the 42 U.S.C. § 1983 claims against the officers in their individual capacities and against Defendant Honolulu, and dismissing the remaining claims.  ECF No. 93 (the "05/03/2019 Order").

Defendants filed the now-pending motions on December 23, 2019.  First, Defendant Officers Arakawa and Hee filed a motion for judgment on the pleadings, ECF No. 130;

---

[1/] Plaintiff Garcia's original Complaint alleged only one constitutional deprivation: violation of the Equal Protection Clause of the Fourteenth Amendment.

second, Defendant Officer Lee filed a motion for judgment on the pleadings or, in the alternative, for summary judgment, ECF No. 131; and third, Defendant Honolulu filed a motion for summary judgment, ECF No. 134.  The Court initially set a hearing for March 24, 2020, then granted Plaintiff's unopposed request for a continuance and reset the hearing for April 14.  ECF Nos. 152, 153.  After Plaintiff filed her oppositions on March 24 and 25, ECF Nos. 159, 160, 161, the Court granted Defendants' unopposed motion for a 90-day stay of the case, and reset the April 14 hearing date for July 23, ECF Nos. 162, 165. Defendants filed their respective replies on June 29, ECF Nos. 175, 176, 178.  A telephonic hearing was held on July 23.

## FACTUAL BACKGROUND

The Court provides a consolidated review of the facts alleged in the First Amended Complaint and outlined in the Court's prior 05/03/2019 Order, as well as a brief reference to some of the evidence now before it, noting at the outset that the two-year statute of limitation window commenced on March 15, 2016.

According to the FAC, Plaintiff Garcia is employed as an officer with the Department of Homeland Security, Customs and Border Protection, and she currently resides in Georgia, having permanently left Honolulu in 2009.  FAC ¶¶ 9-10.  Defendants

Lombardi, Arakawa, Hee, and Lee are all currently employed as HPD officers and reside in Honolulu.  Id. ¶¶ 12-13.

Plaintiff Garcia and Defendant Lombardi were married in November 1999, separated in November 2007, and divorced in February 2011.  Id. ¶¶ 15, 17.  They have two children together, J.L. and G.L.  Id. ¶ 16.  Plaintiff Garcia was awarded temporary sole legal and physical custody of the children in the year following the separation, and that custody arrangement was made permanent in the divorce decree.  Id. ¶ 19.  Defendant Lombardi was awarded certain visitation rights.  FAC ¶¶ 113-14.

The 73-page FAC features allegations spanning a ten-year period from 2008 to 2018 that describe how Defendant Lombardi engaged in abusive and harassing conduct over that period.  The FAC also alleges how Defendant Honolulu and numerous HPD officers failed to do anything to stop Defendant Lombardi and other HPD officers that Plaintiff Garcia alleges aided him in his harassment campaign.  The thrust of Plaintiff Garcia's claims is that the HPD has a longstanding practice or custom of mishandling complaints of domestic abuse filed by victims against HPD officers.[2/]

_____

[2/] As stated in the 05/03/2019 Order, the FAC appears to use the phrases "domestic violence" and "domestic abuse" interchangeably.  On certain occasions, the FAC refers to instances of "domestic violence and abuse" and also refers to Defendant Lombardi's repeated violations of protective orders, harassment, threats, and related types of misconduct.  See, e.g., FAC ¶¶ 3-4, 30, 58, 73, 170-173.  For purposes of this Order, the Court will use only the phrase "domestic abuse" except where referring to a source that uses the phrase "domestic violence."

## I.   Assaults and Protective Orders

Plaintiff Garcia alleges that on February 28, 2008, Defendant Lombardi sexually assaulted G.L.  Id. ¶¶ 20-21.  At some point prior to or in March 2008, Defendant Lombardi physically or sexually assaulted J.L, the other daughter.  Id. ¶¶ 22, 25.  In August 2009, J.L. and G.L. both reported to their therapist that Defendant Lombardi had committed sexual assaults. Id. ¶ 79.

Between March and September of 2008, Plaintiff Garcia obtained three separate protective orders and one order for pre-decree relief due to Defendant Lombardi's conduct.  In her petitions, Plaintiff Garcia reviewed instances in which Defendant Lombardi made threats of physical harm and assaulted the minor children.  Id. ¶¶ 24-50.

Plaintiff Garcia alleges that Defendant Lombardi then violated the protective orders and pre-decree relief in ways including stalking Plaintiff Garcia and the children, attempting to have unsupervised visitation with the children, initiating unauthorized communications with Plaintiff Garcia, possessing a firearm in the presence of the children, and attempting to manipulate G.L. when she was undergoing treatment at the Sex Abuse Treatment Center.  Id. ¶ 40, 49.

Plaintiff Garcia filed notice of these violations with the HPD throughout 2008.  Id. ¶ 60.  Despite such notices of

Defendant Lombardi's violations of the three protective orders and pre-decree relief order, Plaintiff Garcia alleges that Defendant Honolulu failed to adequately investigate the incidents.  She contends that Defendant Honolulu's failure to do so was pursuant to a longstanding custom or policy of mishandling allegations of abuse and harassment involving an HPD officer.  Id. ¶ 73.

## II.   Incident Reports

Plaintiff Garcia alleges that Defendant Lombardi further harassed her by obtaining the assistance of two other HPD officers to file six false incident reports with the HPD between 2008 and 2011.  Id. ¶ 85.  The false incident reports involved accusations that Plaintiff Garcia committed criminal contempt, violated custodial arrangements, and made false allegations against Defendant Lombardi.  Id. ¶ 86.

Plaintiff Garcia alleges that Defendant Lombardi resumed his campaign of harassment in November 2015 by again obtaining the assistance of other HPD officers to file four more false incident reports with HPD (the "Incident Reports").  Id. ¶ 113.  Each of these reports falsely accused Plaintiff Garcia of custodial interference even though she was granted sole custody of the children, with Defendant Lombardi having only visitation rights.  Id. ¶¶ 113–114.  In each of the four instances, Defendant Lombardi (1) provided the officers

authoring the report with a 2012 Virginia court order outlining his visitation rights, and (2) either informed the officers that Plaintiff Garcia had departed Hawai`i with the children or provided a "Notification of Relocation" documenting that departure.  Opp. to Lee Motion, CSF, ECF No. 157, Exs. 4-7.  In each of the four instances, the officers completed an "Incident Report," stating what Defendant Lombardi had reported, with a disposition "Pending CID-Child Abuse."  Id.  The last of the Incident Reports was filed on March 18, 2016—within the two-year limitations window prior to Plaintiff Garcia filing her initial Complaint.  Id. at Ex. 7.  That report was authored by Defendant Arakawa and approved by Defendant Hee, both of whom worked with Defendant Lombardi in the HPD's Traffic Division.  Id. ¶ 119.  Evidently, there were about 100 officers in the Traffic Division.[3/]  Lee Decl. ¶ 70.

Plaintiff Garcia alleges that in filing these reports, Defendant Lombardi and the HPD officers who assisted him violated internal HPD policies.  Id. ¶ 115.  Defendant Lombardi used the four Incident Reports as evidence in a show cause action he filed in a Virginia Family Court in May 2016

---

[3/] In Defendant Lee's Concise Statement of Facts, he states that "[t]here are about 100 officers in the Traffic Division, and Lee was unaware that [Defendant Lombardi] was friends with any of the officers she named." Lee CSF, ECF No. 132, ¶ 71.  Plaintiff Garcia "[d]ispute[s]" this fact in her opposing Concise Statement of Facts, but provides no basis for the dispute, and provides no contrary evidence as to the number of officers working in the Traffic Division.  Opp. to Lee CSF, ECF No. 157, at 8 ¶ 71.  Accordingly, the Court finds no genuine dispute of fact on this point.

attempting to have Plaintiff Garcia held in contempt for violating his visitation rights. Id. ¶ 124. In the course of that action, Defendant Lombardi sent the Incident Reports to Plaintiff Garcia's attorney as part of a discovery request. Garcia Decl., ECF No. 157-1 ("Garcia Decl."), ¶ 41.

Plaintiff Garcia subsequently retained a Honolulu criminal defense attorney who contacted the Honolulu Prosecutor's Office and received confirmation in February 2017 that no action would be taken on the Incident Reports—prior to the March 2017 Virginia court hearing. Id. ¶¶ 43, 45; FAC ¶¶ 121-23. Although no prosecution stemmed from the Incident Reports, they nevertheless caused Plaintiff Garcia to suffer significant mental disturbance. Garcia Decl. ¶ 54.

**III. Professional Standards Office ("PSO") Complaints**

Plaintiff Garcia filed two PSO complaints with the HPD.[4] The first was dated June 25, 2015, and concerned Defendant Lombardi's continued harassment of Plaintiff Garcia by violating the protective orders and other Family Court orders obtained in Virginia and Hawai`i. Id. ¶ 108. The PSO complaint also detailed Defendant Lombardi having made threats to resort to self-help to visit J.L. and G.L. unsupervised, as well as threats of retaliation against Plaintiff Garcia for accusing him

---

[4] The FAC indicates that Plaintiff Garcia filed four PSO complaints, however, it only features allegations regarding two PSO complaints. FAC ¶¶ 161, 176, 200.

of domestic violence and sexually assaulting G.L.   Id.
Defendant Lee notified Plaintiff Garcia on May 11, 2017, that
the investigation had been closed on November 9, 2015, because
it was determined "to be more of a civil matter."   Id. ¶¶ 109–
10.

The conduct at issue in the June 2015 PSO complaint
was also the subject of investigation by the Ottawa Police
Department, as Plaintiff Garcia was living in Canada at the
time.   Garcia Decl. ¶ 33; Lee Decl., ECF No 132-1 ("Lee Decl."),
¶¶ 43-45.   The Ottawa Police Department likewise classified the
case as a "family dispute" rather than criminal matter.[5/]   Lee
Decl. ¶ 50.

Plaintiff Garcia filed a second PSO complaint on
March 15, 2017—within the two-year limitations window prior to
Plaintiff Garcia filing her Complaint with this Court—in
response to Defendant Lombardi obtaining the assistance of other
HPD officers to file the four false Incident Reports against
her.   Id. ¶¶ 126-127.   Plaintiff Garcia alleges that each of the

---

[5/]   In her Opposing CSF, Plaintiff Garcia "Disput[s]" that "In a related
harassment investigation conducted by Ottawa PD Sgt. John Gibbons, he
concluded that his investigation did not reveal any elements of a criminal
offense and reclassified the case as a 'family dispute.'"   ECF No. 157 at 6
¶ 52.   Plaintiff Garcia provides no basis for her dispute and provides no
contradictory factual allegations.   Plaintiff Garcia does allege that she was
dissatisfied with the outcome of HPD's investigation because she believes
that the emails she submitted to the officers from Defendant Lombardi
constituted domestic violence—dissatisfaction that likely extended to the
Ottawa Police Department's same conclusion.   Garcia Decl. ¶¶ 34, 35.
Accordingly, the Court understands that Plaintiff disputes that the outcome
of the Ottawa investigation was reasonable, but not that the outcome was
reached.

Incident Reports contained Defendant Lombardi's accusations that Plaintiff Garcia had committed felony custodial interference. FAC ¶ 113.  Plaintiff Garcia also named in this complaint the HPD officers who helped Defendant Lombardi by filing the false Incident Reports with HPD, including Defendant Officers Arakawa and Hee.  Id. ¶ 127.  Defendant Lee conducted the investigation of this PSO complaint.[6]

Defendant Lee spent approximately two months investigating Plaintiff Garcia's March 2017 PSO complaint.  Lee Decl. ¶ 61.  In the course of that investigation, Defendant Lee concluded that there was insufficient evidence to support a criminal investigation against Lombardi and that there was no evidence of criminal wrongdoing by the other officers involved because there had been probable cause for the charge of custodial interference.  Lee Decl. ¶ 23-24.  Defendant Lee further determined that an administrative investigation was not possible because a year had elapsed from the dates of the incidents to the date of Plaintiff Garcia's PSO complaint.  Lee Decl. ¶ 20.  Under HPD Policy 5.01—based on Article 12 ¶ 12.B.2.m. of the collective bargaining agreement that the city reached with the police union—the statute of limitations on administrative investigations is one year from the date of the

---

[6] In his motion, Defendant Lee emphasizes that this March 2017 complaint was initially filed with the Honolulu Police Commission, and then later forwarded to the PSO.  See infra n.9.

alleged incident.  Lee Motion, CSF, ¶ 15 & Exs. B, E.  Because Plaintiff Garcia's references to Defendant Lombardi's harassment and domestic abuse had been previously investigated by HPD, Defendant Lee determined that he did not need to re-investigate those allegations.  Lee Decl. ¶¶ 41-51.

Defendant Lee concluded that Defendant Lombardi had, however, violated HPD's Code of Conduct and HPD policy by obtaining and sending copies of the Incident Reports—which were at the time open investigations—to Plaintiff Garcia's attorney. Lee Decl. ¶¶ 53-62.  On that basis, Defendant Lee prepared an internal complaint form causing Defendant Lombardi to appear before the Administrative Review Board and resulting in Defendant Lombardi's five-day suspension.  Lee Decl. ¶¶ 62-64.

Plaintiff Garcia alleges that during and after Defendant Lee's investigation of the false Incident Reports, Defendant Lombardi continued harassing Plaintiff Garcia by sending emails threatening to continue filing custodial interference reports, to publicize the contempt of court hearing, to notify Plaintiff Garcia's employer of the events, and to take other disruptive and distressing actions.  Garcia Decl. ¶ 55.  Plaintiff Garcia alleges that, to her knowledge, Defendant Lee took no action on the emails.  Id. ¶ 56.

## STANDARD

### I.   Summary Judgment

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Federal Rule of Civil Procedure ("Rule") 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); see also Broussard v. Univ. of Cal., 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact."  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (citing Celotex, 477 U.S. at 323); see also Jespersen v. Harrah's Operating Co., 392 F.3d 1076, 1079 (9th Cir. 2004).  "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a genuine issue for trial."  Matsushita Elec. Indus. Co. v. Zenith

Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (citation and internal quotation marks omitted); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008) (citing Anderson, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. Matsushita Elec. Indus. Co., 475 U.S. at 587; see also Posey v. Lake Pend Oreille Sch. Dist. No. 84, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor" (internal citation and quotation omitted)).

## II. Judgment on the Pleadings

Under Rule 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Judgment on the pleadings is properly granted "when, accepting all factual allegations in the

complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012) (citation and original alteration omitted).

Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy. Id.; see also Harris v. Cty. of Orange, 682 F.3d 1126, 1131 (9th Cir. 2012) (explaining that Rule 12(b)(6) and Rule 12(c) motions are functionally equivalent).

The Court must accept as true the facts as pled by the non-movant and will construe the pleadings in the light most favorable to the nonmoving party. U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1053 (9th Cir. 2011). However, mere conclusory statements in a complaint or "formulaic recitation[s] of the elements of a cause of action" are not sufficient. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007).

## **DISCUSSION**

Defendant Lee seeks judgment on the pleadings or, in the alternative, summary judgment on the basis of qualified immunity.  Lee argues that he did not personally engage in

differential treatment and that there is no clearly established law providing notice that his investigation of Plaintiff Garcia violated her equal protection rights.[7]

Defendants Arakawa and Hee seek judgment on the pleadings likewise on the basis of qualified immunity.  They argue that Garcia suffered no substantive due process violation, and that clearly established law shows that there is no constitutional right to an accurate police report.

Defendant Honolulu seeks summary judgment on the basis that (1) Plaintiff Garcia's claims are barred by the statute of limitations; (2) Plaintiff Garcia cannot demonstrate any underlying constitutional violation; and (3) no unlawful practice or custom exists in the Honolulu Police Department, nor are the other elements of municipal liability met.

Because Plaintiff Garcia's claims against all moving Defendants are asserted under § 1983, the Court begins there.

## I.   Section 1983

Plaintiff Garcia asserts a § 1983 claim against Defendant Officer Lee for depriving her of the rights under the Equal Protection Clause of the Fourteenth Amendment.  Plaintiff

---

[7] The Court found in its 05/03/2019 Order that, although Counts I and II both contain paragraphs naming all three of the Officer Defendants, the specific factual allegations in the FAC relating to equal protection violations concern only Defendant Lee, and the allegations relating to substantive due process violations concern only Defendants Arakawa and Hee. 05/03/2019 Order at 31 n.17.

Garcia asserts a § 1983 claim against Defendant Officers Arakwa and Hee for depriving her of the right to bodily integrity, which is a substantive due process right guaranteed by the Due Process Clause of the Fourteenth Amendment.  She also asserts a § 1983 claim against Defendant Honolulu for municipal liability under Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."  42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff [(1)] must allege the violation of a right secured by the Constitution and laws of the United States, and [(2)] must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 2255, 101 L. Ed. 2d 40 (1988) (citations omitted).  A "person" includes "state and local officials sued in their individual capacities . . . and local government entities."  Park v. City and Cty. of Honolulu, 292 F. Supp. 3d 1080, 1090 (D. Haw. 2018) (citing Vance v. Cty. of Santa Clara, 928 F. Supp. 993, 995–96

(N.D. Cal. 1996)); see also Monell, 436 U.S. at 690 (holding that a local government is a person for purposes § 1983).

To hold a municipality liable under Monell, a plaintiff must show that the municipality had a policy, practice, or custom that was the moving force behind a violation of her constitutional rights. Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011). Specifically, a plaintiff must prove "(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." Id. (quoting Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997)) (alterations in original); see also Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992).

Plaintiff Garcia's Monell claim is premised on a longstanding practice or custom theory. A municipality may also be sued for constitutional deprivations "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Monell, 436 U.S. at 690-91. The Supreme Court observed that Congress included "customs and usages" in § 1983 because state officials engaged in persistent and widespread discriminatory practices that, although not authorized by

written law, "could well be so permanent and well-settled as to constitute a 'custom or usage' with the force of law." Id. at 691 (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 167-68, 90 S. Ct. 1598, 1613, 26 L. Ed. 2d 142 (1970)).

The Court addresses first the claims of the individual officers and then turns to the municipal liability claims.

## II.   Claims Against the Defendant Officers Lee, Arakawa, and Hee (Counts I and II)

Defendant Officers Lee, Arakawa, and Hee all move for dismissal of the § 1983 claims asserted against them based on qualified immunity.

Qualified immunity shields government officials who perform discretionary functions from liability for civil damages when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). "To determine whether an individual officer is entitled to qualified immunity, we ask (1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." C.B. v. City of Sonora, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing Pearson, 555 U.S. at 232, 236).

As to the first prong, "[a] person 'subjects' another to the deprivation of a constitutional right . . . if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which the complaint is made." <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978) (citing <u>Sims v. Adams</u>, 537 F.2d 829 (5th Cir. 1976)). The causal connection can be established by direct personal participation in the deprivation or "by setting in motion a series of events by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." <u>Id.</u> at 743–44.

As to the second prong, "[a] clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" <u>Mullenix v. Luna</u>, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015) (quoting <u>Reichle v. Howards</u>, 566 U.S. 658, 664, 132 S. Ct. 2088, 2093, 182 L. Ed. 2d 985 (2012)). To analyze whether a right was clearly established, courts attribute to defendants "knowledge of constitutional developments at the time of the alleged constitutional violation, including all available case law." <u>Fed. Deposit Ins. Corp. v. Henderson</u>, 940 F.2d 465, 477 (9th Cir. 1991) (internal quotation marks and citation omitted). Whether an official is protected by qualified

immunity often turns on the "objective legal reasonableness" of his action.  Anderson v. Creighton, 483 U.S. 635, 639, 107 S. Ct. 3034, 3038, 97 L. Ed. 2d 523 (1987).

The Court now considers the motions of the individual officer Defendants, which turn on whether they are entitled to qualified immunity.

**A.    Defendant Lee's Motion**

As stated above, Defendant Lee moves for judgment on the pleadings or, in the alternative, for summary judgment, as to Plaintiff Garcia's equal protection claim.  The Court considers the evidence presented and accordingly proceeds on Defendant Lee's motion for summary judgment.

**1.    Equal Protection Violation**

The Equal Protection Clause of the Fourteenth Amendment prohibits a state from denying to "any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV § 1.  The Equal Protection Clause essentially mandates that state and local governments treat alike all persons that are similarly situated.  City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S. Ct. 3249, 3254, 87 L. Ed. 2d 313 (1985).  The Equal Protection Clause applies to enforcement of the law.  See Navarro v. Block, 72 F.3d 712, 716 (9th Cir. 1995); DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 197 n.3, 109 S. Ct. 998, 1004, 103 L. Ed.

2d 249 (1989).  A class-based equal protection violation

requires a plaintiff to allege intentional discrimination on the

basis of the plaintiff's membership in an identifiable class.

Flores v. Morgan Hill Unified Sch. Dist., 324 F.3d 1130, 1134

(9th Cir. 2003) (citation omitted); see also Gallinger v.

Becerra, 898 F.3d 1012, 1017 (9th Cir. 2018).

      To state a class-based equal protection claim, a

plaintiff must allege (1) membership in an identifiable class;

Flores, 324 F.3d at 1134–35 (citations omitted) and (2) the

existence of a similarly-situated class against which the

plaintiff's class can be compared.  Freeman v. City of Santa

Ana, 68 F.3d 1180, 1187 (9th Cir. 1995).  If the classification

involves a protected class—such as race or gender—or if the

classification implicates a fundamental right, the court applies

a heightened level of scrutiny to determine whether the

government's conduct is constitutional.  See Gallinger, 898 F.3d

at 1017; Freeman, 68 F.3d a 1187.  If the classification is not

inherently invidious, or does not implicate a fundamental right,

the court applies rational basis review.  Navarro, 72 F.3d at

717 (citation omitted).  Under rational basis review, the

government classification must be rationally related to

legitimate government objectives.  Id. (citing Schweiker v.

Wilson, 450 U.S. 221, 230, 101 S. Ct. 1074, 1081, 67 L. Ed. 2d

186 (1981)).  The Court finds that rational basis review applies here.

In its 05/03/2019 Order, the Court held that Plaintiff Garcia's FAC stated a plausible claim against Defendant Lee for an equal protection violation.  Plaintiff Garcia alleged membership in an identifiable class:  victims of domestic abuse whose abusers are HPD officers.  05/03/2019 Order at 24-25.  The FAC also plausibly identified a similarly-situated class against which Plaintiff Garcia's class can be compared:  domestic abuse victims whose abusers are not HPD officers.  05/03/2019 Order at 25-26.  Finally, Plaintiff Garcia alleged that Defendant Lee's role in two PSO complaints violated her right to equal protection.[8/]  05/03/2019 Order at 33-35.

Defendant Lee asserts that he is entitled to qualified immunity both because (1) the equal protection claim against him does not amount to a constitutional violation; and (2) there is no clearly established law that his conduct violated Plaintiff Garcia's equal protection rights.  The Court first addresses the sufficiency of Plaintiff Garcia's separate concise statement and then addresses each of the arguments on the merits.

---

[8/] As discussed below, Defendant Lee submits a declaration in support of his motion stating that he was only involved in the investigation of one of Plaintiff Garcia's PSO complaints, not two.  Defendant Lee further submits that the complaint he investigated was initially filed with the Honolulu Police Commission and thereafter referred to the PSO.  Because Plaintiff Garcia provides no evidence contradicting these assertions, the Court now finds them well-founded.  See infra.

### 2. Sufficiency of Plaintiff Garcia's Separate Concise Statement

Defendant Lee argues in his reply that Plaintiff Garcia's separate concise statement of facts submitted in opposition to Defendant Lee's motion for summary judgment failed to comply with Local Rule 56.1(g), and that the facts submitted by Defendant Lee should therefore be deemed admitted.  Lee Reply, ECF No. 176, at 4.  Defendant Lee argues that "since Plaintiff failed to properly dispute and propose new facts in her Opposition, it would be prejudicial to Defendant Lee [for the Court] to consider any new facts not set forth in Plaintiff's pleadings."  Id.

Local Rule 56.1(g) provides that, "[f]or purposes of a motion for summary judgment, material facts set forth in the movant's concise statement will be deemed admitted unless controverted by a separate concise statement of the opposing party."  See also Rule 56(e); Heinemann v. Satterberg, 731 F.3d 914, 917 (9th Cir. 2013) (stating that Rule 56(e) was amended in 2010 to reflect the "deemed admitted" provision in many local rules, including Hawai`i's Local Rule 56.1(g)).

Plaintiff Garcia submits a separate concise statement with two sections.  ECF No. 157.  In the first section, Plaintiff Garcia writes only whether she "Admit[s]" or "Dispute[s]" the facts submitted by Defendant Lee.  Id. at 1-8.

In the second section, Plaintiff Garcia submits her own statement of the facts, which she supports with citations to evidence.  Id. at 9-14.  Although the Court would prefer for Plaintiff Garcia to make clear what evidence she relies on when she writes that Defendant Lee's facts are "Dispute[d]," the Court is generally able to discern the basis for Plaintiff Garcia's disputes from her evidentiary citations in her separate provision of additional facts.  On that basis, the Court denies Defendant Lee's request to construe all facts submitted in his concise statement as admitted.  See Adwalls Media, LLC v. Ad Walls, LLC, No. CIV. 12-00614 SOM, 2015 WL 419659, at *4 (D. Haw. Jan. 30, 2015) ("Although Ad Walls contends that Adwalls Media must be deemed to have admitted the facts in Ad Walls' concise statements, entitling Ad Walls to summary judgment, it is clear from Adwalls Media's concise statement which facts are controverted.  That is at the heart of what Local Rule 56.1(g) requires.  Under these circumstances, the court will not treat all of Ad Walls' assertions as admitted.").

The Court is not persuaded by Defendant Lee's claim that he would be prejudiced if the Court were to consider the additional facts proposed by Plaintiff Garcia in her separate concise statement.  In the cases Defendant Lee cites—one of which Defendant Lee fails to acknowledge is an unpublished decision without precedential value—the party opposing summary

judgment did not submit the subject evidence at all.  Heinemann, 731 F.3d at 917 (holding that, where no opposition was filed to a motion for summary judgment, the court could deem the facts in the moving party's concise statement admitted but it was still required to assess whether the moving party was entitled to summary judgment on the basis of its submitted facts); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1029-31 (9th Cir. 2001) (holding that the court need not consider evidence that was not submitted with the pending motion, even though the evidence was in the record from a prior motion); Davis v. Gardiner, 1999 U.S. App. LEXIS 32529, *3 (9th Cir. 1999) (unpublished) (finding no genuine issue of material fact where plaintiff did not submit any evidence in opposing summary judgment).

Plaintiff Garcia here submitted evidence in opposition to Defendant Lee's motion, and the Court finds that Defendant Lee is not unfairly prejudiced by the Court's consideration thereof.

### 3.   Allegations of a Constitutional Violation

Turning to the merits, Defendant Lee first argues that Plaintiff Garcia has failed to adequately allege a similarly-situated class against which Plaintiff Garcia's class can be compared (hereinafter, a "Compare Class").  The Court found in its 05/03/2019 Order that Plaintiff Garcia had plausibly

identified a Compare Class by pointing to two incidents in which the HPD responded appropriately to domestic abuse situations where the abuser was an ordinary citizen.  05/03/2019 Order at 25-26.

Defendant Lee argues the Court's finding was erroneous because he was not personally involved in those appropriate responses, and accordingly "they cannot constitute a compare class as to him." Lee Motion at 19.  Defendant Lee does not otherwise submit evidence as to the sufficiency of the Compare Class.  Because the Court finds no genuine issue of material fact exists on the issue of intent—that is, because the Court ultimately finds that Defendant Lee neither intentionally discriminated nor was he deliberately indifferent—the Court need not further analyze the sufficiency of the asserted classes for the purposes of Defendant Lee's motion.  The Court does address the sufficiency of the asserted classes in its analysis of Defendant Honolulu's motion, infra.

Plaintiff Garcia's equal protection claim requires a showing that Plaintiff Garcia was discriminated against based on her membership in the identified class, as evidenced by a similarly situated Compare Class receiving better treatment.  The Court now finds, based on the evidence presented on summary judgment, that (1) Defendant Lee did not discriminate against Plaintiff Garcia based on her membership in the identified

class; and (2) when considering the preliminary purpose of the
Incident Reports that stated on their face that their
"disposition" was pending further investigation by the criminal
investigation division ("CID")-Child Abuse section, Defendant
Lee's investigation was sufficient.

### a.   Whether Defendant Lee Investigated One or Two of Plaintiff Garcia's Complaints

Plaintiff Garcia alleges in her FAC that Defendant Lee
investigated two of her PSO complaints.  Defendant Lee now
submits a declaration stating that he was only involved in one
of those investigations: the investigation of Plaintiff Garcia's
March 2017 complaint alleging that Defendant Lombardi wrongly
filed the four Incident Reports against Plaintiff Garcia.  Lee
Motion at 4; Lee Decl. ¶ 10; FAC ¶¶ 126–127.

Notably, Plaintiff Garcia's factual background in her
opposing memorandum only references the March 2017 complaint.
Opp. to Lee Motion at 2-3.  Although Plaintiff Garcia's CSF
opposing Lee's motion disputes that "Lee did not handle Garcia's
6/25/15 PSO complaint," ECF No. 157, at 3 ¶ 7, Plaintiff Garcia
does not cite to any evidence contesting this fact, and her own
statement of the facts does not reference Lee's involvement
prior to March 2017, id. at 12 ¶ 27 (stating only that Lee
informed Plaintiff Garcia in May 2017 that the prior complaint
had been closed and contains no indication that Defendant Lee

was involved in the investigation).   Accordingly, based on the evidence presented, the Court concludes that Defendant Lee has shown that he was only involved in the investigation of the March 2017 complaint.[9]

Plaintiff Garcia also alleges that Defendant Lee tried to discourage her from including the names of HPD officers other than Defendant Lombardi in her March 2017 complaint.   FAC ¶ 127. Defendant Lee explains that he was first provided the March 2017 complaint two weeks after it had been filed and then contacted Plaintiff Garcia the following day.   Lee Decl. ¶¶ 12-19.   It follows that Defendant Lee cannot have discouraged Plaintiff Garcia from including the names of other officers in a complaint that she had already filed weeks prior.   Lee Decl. ¶¶ 66-67.

Defendant Lee notes that the officers who initially filed the Incident Reports (named in Plaintiff Garcia's PSO complaint) were different from the CID detectives who

---

[9] Defendant Lee further emphasizes that the only one of Plaintiff Garcia's complaints he worked on was not submitted directly to the PSO office but rather was transferred there after its initial filing with the Honolulu Police Commission.   Lee Motion at 3-4.   Lee submits a letter to verify that this transfer occurred.   Lee CSF, ECF No. 132, Ex. D.   Plaintiff Garcia's opposition to Lee's motion does not directly address Defendant Lee's characterization of the March 2017 complaint originating with the Honolulu Police Commission and later being transferred to PSO, instead continuing to refer to Plaintiff Garcia filing the March 2017 complaint with PSO.   Opp. to Lee Motion at 3.   Since Defendant Lee acknowledges that he handled this complaint, it is not clear to the Court that there is any significance to the complaint being transferred from the Honolulu Police Commission as opposed to being originally filed with the PSO.   Accordingly, in the absence of any contrary evidence from Plaintiff Garcia, the Court finds that Lee's Exhibit D adequately establishes this fact, but the Court concludes that the fact has no bearing on the outcome of Lee's motion.

subsequently investigated the allegations in those Incident Reports (not named in Plaintiff Garcia's PSO complaint). Lee Decl. ¶ 39. Defendant Lee told Plaintiff Garcia "that when someone reports a case, officers are required to classify and initiate the complaint," and that the officers involved in filing the Incident Reports were acting pursuant to those obligations. Lee Decl. ¶¶ 68, 71, 73. Defendant Lee surmises that Plaintiff Garcia "felt that [Defendant Lee] was saying those things to 'discourage' her from including those officers in the investigation," but emphasizes again that "her complaint had already been made, and those other officers had already been named in the complaint. I was not in a position to influence who was or was not involved in the investigation at that point." Lee Decl. ¶ 74.

Plaintiff Garcia admits that she had already filed her March 2017 complaint by the time Defendant Lee contacted her, ECF No. 157, at 8 ¶ 68, but still maintains that Defendant Lee tried to discourage her from including other officers in her complaint, id. at 7 ¶ 67. Plaintiff Garcia provides no explanation or evidence for her dispute. The Court accordingly finds that Defendant Lee could not have discouraged Plaintiff Garcia from including the names of other officers on an already-filed complaint.

> **b.    Whether Defendant Lee Discriminated Against Plaintiff Garcia**

Plaintiff Garcia must make a showing that Defendant Lee intentionally discriminated against her on the basis of her membership in an identifiable class.  Flores, 324 F.3d at 1134. As stated above, Plaintiff alleges that she is a member of a class of victims of domestic abuse whose abusers are HPD officers, as compared against a class of victims of domestic abuse whose abusers are not HPD officers.  05/03/2019 Order at 24-25.

Defendant Lee's involvement is limited to his investigation of Plaintiff Garcia's March 2017 PSO complaint. According to that complaint, Defendant Lombardi had fellow officers file unfounded custodial interference reports against Plaintiff Garcia on four separate occasions in order to harass her.  Opp. to Lee Motion, CSF, ECF No. 157, Ex. 8.  Plaintiff Garcia alleges that because Defendant Lombardi is an HPD officer, Defendant Lee's investigation of that complaint was less thorough than it would have been had her abuser been an ordinary citizen.

> **i.    Whether Filing the Incident Reports Qualifies as Domestic Abuse**

Because Plaintiff Garcia's identified class involves victims of domestic abuse, and because Defendant Lee's involvement is limited to investigating the filing of the four

Incident Reports, the Court must first determine if Defendant Lombardi's actions in the filing of the Incident Reports qualifies as domestic abuse.  The Court notes that Defendant Lee's investigation did not pertain to acts or threats of physical violence.  Although Plaintiff Garcia's March 2017 complaint included some limited references to Defendant Lombardi's prior acts or threats of violence, Defendant Lee explains that he did not re-investigate those claims because they had been previously investigated by other officers.  Lee Decl. ¶ 51.  Plaintiff Garcia submits no evidence suggesting that Defendant Lee had any duty to re-investigate claims that were already investigated.

Domestic abuse may include, however, acts of extreme psychological abuse.[10/]  Drawing all reasonable inferences in the light most favorable to Plaintiff Garcia, the Court finds that a genuine issue of material fact exists as to whether Defendant Officer Lombardi's actions in the filing of the four Incident Reports would qualify as extreme psychological abuse.  Yet even assuming Defendant Lee was involved in investigating allegations of domestic abuse against an HPD officer—Plaintiff Garcia's identified class—there is nevertheless no evidence before the Court suggesting that Defendant Lee discriminated against Plaintiff Garcia in conducting that investigation.

---

[10/] See HRS § 586-1; 05/03/2019 Order at 25 n.13.

### ii.     Whether Defendant Lee Had Discriminatory Intent

A showing of discriminatory intent requires "more than intent as volition or intent as awareness of consequences," it requires that the decisionmaker "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." Pers. Adm'r of Mass. v. Feeney, 442 U.S. 256, 279, 99 S. Ct. 2282, 2296, 60 L. Ed. 2d 870 (1979).  The determination of discriminatory intent is usually reserved for the factfinder—indeed, the Ninth Circuit has held that "any indication of discriminatory motive may suffice to raise a question that can only be resolved by a factfinder." Lyons v. England, 307 F.3d 1092, 1113 (9th Cir. 2002) (internal quotation marks, ellipses, and citation omitted).  This does not, however, relieve Plaintiff of her duty to "present[] sufficient evidence to raise an inference" that "each of the" defendants acted with wrongful intent in order to survive summary judgment. Flores, 324 F.3d at 1135 (going on to separately analyze the evidence of each defendant's individual actions or inaction).

Plaintiff Garcia submits the Draft Expert Witness Report of Dorotha (Dottie) L. Davis, Opp. to Lee Motion, CSF, Ex. 1, ECF No. 157-4 (the "Davis Report").  Davis therein identifies several ways in which HPD policy was not followed in

responding to Plaintiff Garcia's 2008 allegations of domestic
abuse committed by Defendant Lombardi.  Davis also identifies
certain ways in which HPD's policies were themselves deficient.
But the Davis Report does not reference Defendant Lee's
involvement and accordingly does not provide an indicia of
Defendant Lee's discriminatory intent.

When the Court asked about evidence of discriminatory
intent at the July 23, 2020 hearing, Plaintiff Garcia's counsel
indicated that discriminatory intent could be imputed to
Defendant Lee from the statements made by other officers at
other times.  Plaintiff Garcia's argument appears to be a tacit
acknowledgment that there is no evidence before the Court that
Defendant Lee <u>personally</u> had any discriminatory intent.

Plaintiff Garcia does not offer any authority enabling
the Court to impute stray comments by other officers onto
Defendant Lee individually and the Court declines to do so here,
particularly where Defendant Lee is not alleged to have been
present for the prior comments of others, and those comments
date back several years.[11/]  <u>See</u> <u>Taylor v. List</u>, 880 F.2d 1040,

---

[11/] The Ninth Circuit has held that unconstitutional discriminatory
motive may be found if a plaintiff can show either intentional discrimination
or deliberate indifference, here requiring a showing that Defendant Lee
responded in a clearly unreasonable manner to Plaintiff Garcia's complaints.
<u>Flores</u>, 324 F.3d at 1135.  Again, Plaintiff Garcia must point to Defendant
Lee's individual conduct.  <u>Id.</u>  As reviewed above, Plaintiff Garcia fails to
identify any intentional discrimination by Defendant Lee, and Plaintiff
Garcia makes no argument on summary judgment as to Defendant Lee's deliberate
(Continued . . .)

1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant."); see also Jones v. Williams, 297 F.3d 930, 936 (9th Cir. 2002) (rejecting any "inference of individual liability of individual officers based on merely being present at the scene" where there was no evidence of "the required link of personal involvement" in the "deprivation of [the plaintiff's] constitutional rights" as is "required to hold an officer liable").

Because there is no evidence of discriminatory intent, Plaintiff Garcia's equal protection claim against Defendant Lee fails.  Flores, 324 F.3d at 1134.

### c.   Whether Defendant Lee's Investigation was Sufficient

Defendant Lee next argues that the investigation he conducted was legally sufficient.  Defendant Lee's motion and supporting declaration describe the investigation he conducted. Defendant Lee states that he:

- was assigned to investigate Plaintiff Garcia's March 2017 complaint on April 4, 2017, Lee Decl. ¶ 17;

- called and emailed Plaintiff Garcia the following day, Lee Decl. ¶ 19;

- reviewed the allegations and concluded that, as to most of the allegations, an administrative investigation was time-barred, Lee Decl. ¶¶ 21-32;

---

indifference.  In any event, as discussed next, the Court finds that Plaintiff Garcia has failed to put forward evidence creating a genuine issue of fact as to the sufficiency of Defendant Lee's investigation of Plaintiff Garcia's complaints.

- found that, to the extent that Plaintiff Garcia's allegations of Defendant Lombardi's harassing, intimidating, stalking, and bullying conduct had been previously investigated, Defendant Lee did not have a duty to re-investigate, Lee Decl. ¶¶ 45-51;

- found that Plaintiff Garcia had alleged that Defendant Lombardi had obtained copies of the four Incident Reports and sent those copies to Plaintiff Garcia's attorney, and if true, that conduct would be improper; and Defendant Lee further found that those allegations were both timely and had not been previously investigated, Lee Decl. ¶¶ 53, 56;

- investigated that incident—including several interviews and reviewing documents—and concluded that Defendant Lombardi had committed seven violations of HPD's Code of Conduct and policy, Lee Decl. ¶¶ 56-59;

- worked on the investigation nearly every day for eight weeks, Lee Decl. ¶ 63;

- completed a report from the investigation that was over 200 pages, including exhibits, Lee Decl. ¶ 60; and

- submitted an internal complaint form alleging that Defendant Lombardi had committed seven different violations of HPD's Code of Conduct and of policy 8.17 (Security and Handling of Departmental Records and Files), which resulted in Defendant Lombardi appearing before an Administrative Review Board to answer for the allegations, and in the Board ultimately recommending Lombardi be found in violation of six sections of HPD's Code of Conduct and policy 8.17 and subject to a five-day suspension.  Lee Decl. ¶¶ 62-63.

To undermine the purported thoroughness of Defendant Lee's investigation, Plaintiff Garcia argues that Defendant Lee "ignored evidence that Defendant LOMBARDI had committed domestic violence by sending abusive emails to Plaintiff between 2014 and 2017," which Defendant Lee became aware of when he "reviewed

Case 15-0442 or had them sent to him by Plaintiff." Opp. to
Lee's Motion at 11-12. Plaintiff Garcia also argues that
Defendant Lee "cannot explain how the investigation into the
sexual assault of G.L. was closed." Id. at 12. Both of these
claims reference prior investigations in which Defendant Lee was
not involved, and Defendant Lee explains that it was not his
duty to re-investigate those prior complaints. Lee Decl. ¶ 9
(stating PSO No. 15-0442 was a previous investigation in which
he did not participate); ¶¶ 42-51 (discussing Defendant Lee's
review of prior investigations and his conclusion that he did
not need to re-investigate). Again, Plaintiff Garcia does not
offer any evidence showing that Defendant Lee had any duty to
re-investigate prior claims which had been concluded by other
officers many years earlier. Likewise, the emails from
Defendant Lombardi that Plaintiff Garcia forwarded to Defendant
Lee during and after his investigation did not pertain to the
Incident Reports that were the subject of Defendant Lee's
investigation. Garcia Decl. ¶ 55.

        The Court further notes that, as to the 2015
allegations of harassment by Defendant Lombardi that Plaintiff
Garcia argues were improperly closed as "more of a civil
matter," Plaintiff Garcia submitted similar allegations to the
Ottawa Police Department. Garcia Decl. ¶ 33. In fact, the 2015
PSO complaint originated when Defendant Lombardi self-reported

that the Ottawa Police Department was investigating him on charges of harassment.  Id.; Opp. to Lee Motion, CSF at 6 ¶ 45. After Defendant Lombardi self-reported, Plaintiff Garcia submitted her 2015 PSO complaint and attached the reports she had filed with the Ottawa Police Department.  Id.  The investigation by the Ottawa Police Department—like HPD—concluded Plaintiff Garcia had not shown the elements of a criminal offense and reclassified the matter as a family dispute.  Lee Decl. ¶ 50; see also supra n.5.  To the extent that the Court considers these untimely allegations for context, they support HPD's findings that Plaintiff Garcia's 2015 claims of harassment were not of a criminal nature or of the type requiring police involvement.

Plaintiff Garcia also argues that "it is inconceivable how Defendant LEE arrived at the conclusion that there was probable cause to charge Plaintiff with custodial interference." Id.  The four Incident Reports were the subject of Defendant Lee's investigation.  Those four reports related to Defendant Lombardi's claims that he was not receiving visitation with the children as provided for in the court orders.

Each of the four Incident Reports lists the "incident type" as custodial interference under HRS § 707-726, then describes Defendant Lombardi's accusations of Plaintiff Garcia denying him court-ordered visitation.  Defendant Lee concluded

in his investigation that there was no evidence of criminal wrongdoing by Defendant Lombardi or the officers who filed the Incident Reports because there had been probable cause that Plaintiff Garcia committed a custodial interference violation under HRS § 707-726(a).  Lee Decl. ¶¶ 23-24.  Under the specific provision cited by Defendant Lee, custodial interference occurs when there is a violation of a court-ordered custody right plus removal of the minor from the state.  As discussed below, the Court concludes that Plaintiff Garcia could not reasonably be charged with custodial interference.  But by the time of Defendant Lee's investigation, Plaintiff Garcia had already obtained written confirmation from the prosecutor's office that it would take no action on the Incident Reports.  Garcia Decl. ¶ 43.  Defendant Lee's investigation was limited to whether there had been sufficient cause for the preliminary internal Incident Reports that stated on their face that they were submitted for further investigation by the CID-Child Abuse section.[12]  See Opp. to Lee Motion, CSF, Ex. 8 (the March 2017 PSO complaint arguing that Defendant Lombardi should not have been permitted to file complaints against her).

---

[12] The CID-Child Abuse section apparently conferred with the Honolulu Prosecutor's Office regarding the four Incident Reports and the Prosecutor's Office correctly decided not to take any action.  Plaintiff Garcia learned that no action would be taken by the Honolulu Prosecutor in February 2017, before the Virginia court proceeding.  Garcia Decl. ¶¶ 43, 45; see also Lee Reply, CSF, ECF No. 177, at 4 ¶¶ 32, 34.

In support of his conclusion that there was probable cause of custodial interference under HRS § 707-726(a), Defendant Lee asserts that the police officers who filed the custodial interference reports were presented with the following information.  First, the officers had Defendant Lombardi's statements that Plaintiff Garcia was violating a court order by failing to have their children call him.  Lee Decl. ¶ 26; Incident Reports.  Second, the officers had a copy of certain pages from a court order containing Defendant Lombardi's visitation rights.  Lee Decl. ¶ 27; Incident Reports; Opp. to Lee Motion, CSF, Ex. 10 (2012 Virginia Order for Custody/Visitation).  Third, the officers had Defendant Lombardi's statements that Plaintiff Garcia had left the state of Hawai`i with the children, a formal notification of Plaintiff Garcia's relocation documenting that move, or both.  Lee Decl. ¶ 28; Incident Reports.

Defendant Lee also submits HPD Policy 8.06 and HPD's Information Notice on the Handling of Custodial Interference Incidents.  HPD Policy 8.06 requires HPD officers to file a report "each time he or she receives a complaint or observes a violation of law," unless subject to an exception, Lee Decl. ¶ 32, Lee Motion, CSF, Ex. A.  Generally, the report must be prepared by the end of the work shift.  Lee Motion, CSF, Ex. A. HPD Information Notice on the Handling Custodial Interference

Incidents, issued on May 3, 2012, "recommend[s] that officers initiate a criminal case for documentation whenever there are allegations of custodial interference," rather than classifying the reports as "miscellaneous."  Lee Decl. ¶¶ 34-36; Lee CSF Ex. C.

In the face of this information and the required time limitation, the reporting officers filed the Incident Reports outlining Defendant Lombardi's allegations and the documents reviewed.  However, it is significant that the Incident Reports were submitted for further investigation and disposition by the CID-Child Abuse division as to what, if any, action should be taken.  Contrary to Plaintiff Garcia's claims, the Incident Reports were preliminary internal documentation of Defendant Lombardi's accusations, and did not function to charge Plaintiff Garcia with any crime.  Although the CID-Child Abuse section later conferred with the Honolulu Prosecutor's Officer regarding the Incident Reports, Defendant Lee was not investigating whether prosecution was warranted—by the time Plaintiff submitted her March 2017 PSO complaint, she had already been assured no prosecution would occur.

Indeed, Plaintiff Garcia only became aware of the Incident Reports through Defendant Lombardi's subsequent attempt to use them in a Virginia contempt proceeding.  Garcia Decl. ¶¶ 40-41.  The Incident Reports were restricted for internal use

only, but Defendant Lombardi turned them over in a discovery request from Plaintiff Garcia's attorney, which was ultimately the basis for Defendant Lombardi's suspension.  Lee Decl. ¶¶ 52-56, 62-64.  The intended internal and preliminary nature of the reports that Defendant Lee investigated supports Defendant Lee's finding of sufficient cause for the minimal action of submitting the allegations for further investigation, and the use of the Incident Reports beyond that limited capacity resulted in discipline.

Plaintiff Garcia argues that because she had sole physical and legal custody, "Defendant [Lombardi] had no custodial rights with which Plaintiff could interfere," which "should have been immediately evident" from the 2011 divorce decree.[13/]  Opp. to Lee Motion at 12-13.  The Court agrees that Plaintiff Garcia could not be properly charged with custodial interference.  Defendant Lombardi did not have any custody rights, only visitation rights.  As stated above, the relevant charge requires a violation of a court-ordered custody right.  Further, although Plaintiff Garcia had left the state of Hawai`i, she had only done so pursuant to court approval.

Yet HPD and the Honolulu Prosecutor never charged

_____

[13/] It appears that the officers were presented with the 2012 Virginia court order, not the 2011 divorce decree.  See Incident Reports.  The distinction is irrelevant because both documents state that Plaintiff Garcia had custody of the children and that Defendant Lombardi had only visitation rights.  Opp. to Lee Motion, CSF, Exs. 2, 10.

Plaintiff Garcia with custodial interference.  The issue for Defendant Lee was whether the reporting officers, given the time limitation within which to submit their reports, had sufficient cause to document Defendant Lombardi's false accusations of custodial interference and forward those reports to the CID-Child Abuse section for further investigation.  The issue before Defendant Lee was not whether there was probable cause for a felony charge.  Drawing all reasonable inferences in favor of Plaintiff Garcia, the Court finds that Defendant Lee's determination was objectively reasonable given the above-discussed circumstances and especially given the preliminary nature of the Incident Reports.

Plaintiff Garcia submits evidence that Defendant Lombardi's allegations of violations of his visitation rights were untrue, and when Defendant Lombardi pursued contempt charges in the Virginia court based on these alleged violations, the charges were dismissed.  Indeed, the focus of Defendant Lombardi's claims against Plaintiff Garcia was that she violated his visitation rights, not whether she violated any of his custodial rights.[14]  Opp. to Lee Motion, CSF, ECF No. 157, Ex. 9 (2017 Virginia court order stating "findings of the court: the

---

[14] As Plaintiff Garcia explains in her declaration, "I was served with documents regarding an order to show cause that Defendant Lombardi filed against me with the Virginia Juvenile and Domestic Relations Court to have me held in contempt for not providing monthly reports to him, and for refusing to allow him visitation, none of which were true."  Garcia Decl. ¶ 40.

court dismissed father's show-cause rule against mother");
Garcia Decl. ¶ 40 (stating Defendant Lombardi's allegations that
Plaintiff was refusing him visitation were not true), ¶ 45
(stating that after an evidentiary hearing, the Virginia court
"found that [Plaintiff Garcia] had not violated any of the
visitation terms of the court's order"); ¶ 46 (stating that
Plaintiff Garcia sent Defendant Lee a copy of the 2017 Virginia
court order).  Regardless, the later-proved falsity of the
allegations does not mean that the officers lacked probable
cause when initially provided with the documents and Defendant
Lombardi's representations.

    In the absence of evidence that Defendant Lee's
investigation was deficient or discriminatory, Plaintiff Garcia
has failed to meet her burden on summary judgment.

### 4.  Clearly Established Law

    Having found that no constitutional violation
occurred, the Court need not address the second element of
qualified immunity: whether the right was clearly established.
Ashcroft v. al-Kidd, 563 U.S. 731, 735, 131 S. Ct. 2074, 2080,
179 L. Ed. 2d 1149 (2011).  The Court nevertheless briefly notes
that the law is clearly established to the extent that
differential treatment of domestic abuse victims is an equal
protection violation.  Navarro v. Block, 72 F.3d 712, 716 (9th
Cir. 1995); Balistreri v. Pacifica Police Dep't, 901 F.2d 696,

701 (9th Cir. 1988); <u>Martinez v. Pennington</u>, No. 115CV00683JAMMJS, 2016 WL 4191881, at *4 (E.D. Cal. Aug. 9, 2016); <u>Motley v. Smith</u>, No. 1:15-CV-00905, 2016 WL 3407658, at *8 (E.D. Cal. June 20, 2016); <u>Chavira v. Chavez</u>, No. SACV1300890JVSANX, 2014 WL 12576819, at *3 (C.D. Cal. Apr. 21, 2014).

However, the "clearly established" inquiry "turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." <u>Pearson</u>, 555 U.S. at 244 (internal quotation marks and citation omitted). The Supreme Court has "repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." <u>Ashcroft</u>, 563 U.S. at 742 (internal citation omitted). For example, the general proposition "that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." <u>Id.</u>

Here, the general proposition that discriminating against domestic abuse victims violates the Equal Protection Clause is of similarly little help in determining whether Defendant Lee's conduct is of a violative nature. Instead, the particular conduct at issue is Defendant Lee spending two months investigating the allegations in Plaintiff Garcia's PSO

complaint regarding the four preliminary Incident Reports, and ultimately issuing a 200+ page report that recommended disciplinary action against Defendant Lombardi for his external release of those Incident Reports.  The Court finds that this conduct is not constitutionally deficient under any clearly established law.  Although Plaintiff Garcia cites several cases establishing a right to equal police protection, none suggest that Defendant Lee's conduct here would violate that right.  See generally Opp. to Lee's Motion at 5-9.

In sum, the Court finds that Defendant Lee is entitled to summary judgment both (1) because Defendant Lee met his initial burden of identifying the absence of a genuine issue of material fact as to Plaintiff Garcia's failure to establish her claim that he violated her right to equal protection, and Plaintiff Garcia has failed to show a genuine issue of material fact remains for trial; and (2) because Defendant Lee is entitled to qualified immunity as there is no clearly established law indicating that his conduct was legally unreasonable.  Accordingly, the Court GRANTS Defendant Lee's Motion for Summary Judgment.

### B.   Defendant Arakawa and Hee's Motion

As stated above, Defendants Arakawa and Hee move for judgment on the pleadings as to Plaintiff Garcia's substantive

due process claim for violation of her right to bodily integrity.

### 1.   Right to Bodily Integrity

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Substantive due process "bar[s] certain government actions regardless of the fairness of the procedures used to implement them." Daniels v. Williams, 474 U.S. 327, 331, 106 S. Ct. 662, 665, 88 L. Ed. 2d 662 (1986). Specifically, it "protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." Washington v. Glucksberg, 521 U.S. 702, 720-21, 117 S. Ct. 2258, 2268, 138 L. Ed. 2d 772 (1997) (internal quotation marks and citations omitted).

The liberty interests secured by the Due Process Clause "include[] the right 'generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men.'" Ingraham v. Wright, 430 U.S. 651, 673, 97 S. Ct. 1401, 1413, 51 L. Ed. 2d 711 (1977) (quoting Meyer v. Nebraska, 262 U.S. 390, 399, 43 S. Ct. 625, 626, 67 L. Ed. 1042 (1923)). The Supreme Court has held that

these common-law privileges specifically include protection against the government's interference with an individual's bodily integrity, Glucksberg, 521 U.S. at 720.  The threshold standard for judging a substantive due process claim is whether the challenged conduct is so arbitrary and capricious that it "shocks the conscience and violates the decencies of civilized conduct."  Cty. of Sacramento v. Lewis, 523 U.S. 833, 846, 118 S. Ct. 1708, 1717, 140 L. Ed. 2d 1043 (1998) (internal quotation marks omitted).

Further, although "conduct deliberately intended to injure in some way unjustifiable by any government interest" is "most likely to rise to the conscience-shocking level," the Supreme Court has emphasized that "[l]iability for negligently inflicted harm is categorically beneath the constitutional due process threshold."  Id. at 834 (citing Daniels v. Williams, 474 U.S. 327, 328, 331, 106 S. Ct. 662, 663, 665, 88 L. Ed. 2d 662 (1986)).

In its 05/03/2019 Order, the Court found that Plaintiff Garcia had adequately alleged that Defendants Arakawa and Hee violated her right to bodily integrity via their participation in Defendant Lombardi's actions.  Specifically, the Court found that Plaintiff Garcia had alleged Defendant Lombardi repeatedly harassed and threatened her in violation of protective orders, had HPD officers file false incident reports

against her, and tried to have her prosecuted for custodial
interference; and Plaintiff Garcia had alleged that Defendants
Arakawa and Hee also engaged in constitutional deprivations of
Plaintiff Garcia's substantive due process rights by assisting
Defendant Lombardi in filing one of those false incident reports
against her on March 18, 2016.[15/]  Plaintiff Garcia alleged that
the actions of Defendants Arakawa and Hee were in violation of
HPD policy.

Defendants Arakawa and Hee assert that they are
entitled to judgment on the pleadings on the basis of qualified
immunity both because (1) the filing of a false police report is
not a constitutional violation; and (2) precedent establishing
there is no such right requires the conclusion that any such
right was not clearly established.

### 2. Whether Defendants Arakawa and Hee Violated Plaintiff Garcia's Constitutional Rights

#### a. Negligence

The Court initially finds that the allegations against
Defendants Arakawa and Hee are fundamentally that they acted

_____

[15/] In their motion, Defendant Officers Arakawa and Hee note that "the
March 18, 2018 report is the only report authored by Arakawa and approved by
Hee, but Arakawa authored another report dated January 14, 2016," and "the
same analysis applies equally to" both reports.  Arakawa and Hee Motion at 4
n.1.  The January 2016 report is not at issue here because it is barred by
the statute of limitations.  11/16/2018 Order at 13.  The Court here analyzes
the March report authored by Defendant Arakawa and approved by Defendant Hee,
but notes the report is dated March 2016, and Defendants Arakawa and Hee
mistakenly reference the report date as March 2018.  FAC ¶ 119; Opp. to
Honolulu Motion, CSF, Ex. 7 (the March 2016 report).

negligently in filing a false incident report.  Negligent
conduct necessarily does not rise to the level of a substantive
due process violation.  Lewis, 523 U.S. at 834; Daniels 474 U.S.
at 331.

According to the First Amended Complaint, Defendants
Arakawa and Hee "were negligent in the way they handled the
custodial interference complaint."  FAC ¶ 196.  Plaintiff Garcia
alleges that Defendants Arakawa and Hee "knew or should have
known that" the incident report "would be used against Plaintiff
in the ongoing custody and child support dispute."  FAC ¶ 125.
She also alleges that Defendants Arakawa and Hee are liable "for
not knowing the laws they enforce," FAC ¶ 181 & 195, and for
failing to conduct initial investigations before filing the
incident report, which would have shown the information therein
was false, FAC ¶ 190.  Indeed, Plaintiff Garcia brought a
negligence claim against Defendants Arakawa and Hee, which was
dismissed by the Court in its 05/03/2019 Order.[16]

The Court acknowledges that the First Amended
Complaint also contains certain references suggesting deliberate
conduct.  Again, Plaintiff Garcia alleges that Defendants
Arakawa and Hee "knew or should have known" the incident report

---

[16] The negligence claim was dismissed because Plaintiff Garcia alleged
that Defendants Arakawa and Hee had violated a duty imposed on them by HPD
policy, and the Court held that HPD policy did not create a legal duty.
05/03/2019 Order at 50.

would be used against Plaintiff Garcia.  FAC ¶ 125.  She also alleges that Defendants Arakawa and Hee had a duty "to not knowingly falsify a report or place any inaccurate or false information in a report," FAC ¶ 195, and that it was "reasonably foreseeable" to Defendants Arakawa and Hee that the false incident report "would be put to such use" as the Virginia show-cause hearing, FAC ¶ 244.  But allegations suggesting any deliberate misconduct by Defendants Arakawa and Hee are cabined, and the Court finds them consistent with Plaintiff Garcia's allegation that Defendants Arakawa and Hee acted negligently. Since "[l]iability for negligently inflicted harm is categorically beneath the constitutional due process threshold," Lewis, 523 U.S. at 834, the substantive due process claim against Defendants Arakawa and Hee is subject to dismissal on this basis alone.

### b.    Filing a False Report

Defendants Arakawa and Hee also correctly argue that the filing of a false police report, without more, does not amount to a constitutional violation.  Landrigan v. City of Warwick, 628 F.2d 736, 744-45 (1st Cir. 1980).  District courts in the Ninth Circuit have repeatedly held as much.  See, e.g., Reno v. Nielson, 424 F. Supp. 3d 1045, 1059 (D. Haw. 2019); Williams v. Jurdon, No. 117CV00860LJOMJS, 2017 WL 3981405, at *3 (E.D. Cal. Sept. 11, 2017); Moreno v. Idaho, No. 4:15-CV-00342-

BLW, 2017 WL 1217113, at *16 n.20 (D. Idaho Mar. 31, 2017);

McKinley v. United States, No. 3:14-CV-01931-HZ, 2015 WL

4663206, at *11 (D. Or. Aug. 5, 2015); J.K.G. v. Cty. of San

Diego, No. 11CV305 JLS RBB, 2011 WL 5218253, at *5 (S.D. Cal.

Nov. 2, 2011).  The filing of a false police report may,

however, "provide the basis for a § 1983 action where it results

in some constitutional harm to the plaintiff."  J.K.G., 2011 WL

5218253 at *5; see also Lawrence v. City of St. Paul, 740 F.

Supp. 2d 1026, 1038-39 (D. Minn. 2010) ("In any event, even if

the police defendants knowingly inserted false information in

their reports, Lawrence was not deprived of a constitutionally

protected interest because of that false information, and thus

she was not deprived of substantive due process.").

        Here, Plaintiff Garcia alleges that Defendants Arakawa

and Hee authored and approved a false HPD incident report and

forwarded that report to Honolulu's Department of the

Prosecuting Attorney.[17]  FAC ¶ 196; Opp. to Arakwa and Hee

Motion at 2-3.  The Honolulu Department of the Prosecuting

Attorney did not pursue charges against Plaintiff Garcia.  Opp.

to Arakawa and Hee Motion at 7; see also FAC ¶ 123.  Regardless,

---

[17]  The Court has already referred to the nature of the Incident Reports—
including the report filed by Defendants Arakawa and Hee—which on their face
stated that they were to be submitted for further investigation by
the CID-Child Abuse section and appear to have been subsequently forwarded by
the CID-Child Abuse section to the Prosecutor's Office.  Because Defendants
Arakawa and Hee move for judgment on the pleadings rather than summary
judgment, however, the Court does not here discuss the contents of that
report.

the filing of charges based on the incident report, without more, would still be insufficient to constitute the requisite constitutional harm.  As the Ninth Circuit has noted, "no substantive due process right exists under the Fourteenth Amendment to be free from prosecution without probable cause."[18/] Awabdy v. City of Adelanto, 368 F.3d 1062, 1069 (9th Cir. 2004); see also J.K.G., 2011 WL 5218253 at *6 ("[T]he filing of the false police report, even where it resulted in charges being filed, did not constitute a civil rights violation.").

Plaintiff Garcia does allege that Defendant Lombardi used the Incident Reports against her in a Virginia contempt proceeding, but Plaintiff Garcia fails to explain how this amounts to constitutional harm.  Cf. Awabdy, 368 F.3d at 1069–70.[19/]  The Court also notes that the Virginia contempt

_____

[18/] Plaintiff cites Awabdy for the proposition that Officer Defendants may be liable if they "improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings."  368 F.3d at 1067.  Awabdy, however, was a malicious prosecution case, and the Ninth Circuit went on to find that the defendants must have acted with the intent to deprive the plaintiff of a constitutional right—there, the plaintiff had alleged "that the defendants engaged in malicious conduct with the purpose of depriving him of his constitutional rights to free speech and equal protection."  Id. at 1070.  The court made clear that the intent to deprive the plaintiff of a constitutional right may not rely on substantive due process because "no substantive due process right exists under the Fourteenth Amendment to be free from prosecution without probable cause."  Id. at 1069.

[19/] The Court already found in its 05/03/2019 Order that Plaintiff Garcia does not allege an equal protection claim against Defendants Arakawa and Hee. As explained above, a substantive due process claim cannot qualify as the constitutional harm.

proceeding was dismissed with Plaintiff Garcia being awarded fees.  FAC ¶ 124.

Plaintiff Garcia argues that the constitutional harm flowing from the incident report takes the form of her emotional damages.  The Court acknowledges that emotional harm may, in some instances, be actionable as a substantive due process violation.  As Plaintiff Garcia points out, the Tenth Circuit has "imagine[d] a case where psychological harassment might be so severe that it would amount to torture," and in that case held a plaintiff may bring a substantive due process claim. Abeyta By & Through Martinez v. Chama Valley Indep. Sch. Dist., No. 19, 77 F.3d 1253, 1258 (10th Cir. 1996).  But the filing of an incident report with HPD does not rise to this level, as evidenced by the number of cases finding false police reports are not actionable on their own.

Plaintiff also cites cases involving the state-created danger doctrine.  In those cases, police officers were held liable for substantive due process violations where the officers arrested the driver of a vehicle and deserted the passengers in high risk situations.  In one case, the female passenger was left in a high crime area at 2:30 a.m. and then raped.  Wood v. Ostrander, 879 F.2d 583 (9th Cir. 1989).  In the second case, three minor children were abandoned in a vehicle on the side of the road in extreme weather conditions.  White v. Rochford, 592

F.2d 381 (7th Cir. 1979).  In both cases, the police were responsible for subjecting the passengers to extreme danger that they would not have otherwise faced.

Given the cases finding that the filing of a false police report does not amount to a constitutional violation, the Court concludes that the facts here do not rise to the level involved in the state-created danger doctrine.  Even if Defendants Arakawa and Hee assisted Defendant Lombardi with filing an intentionally erroneous report for use in the contempt proceedings, court proceedings are not the type of state-created danger the doctrine is meant to address.[20]

---

[20] The Court does note that the Ninth Circuit recently recognized the applicability of the state-created danger doctrine in domestic violence settings.  For that doctrine to apply, a plaintiff must show three elements: "First, she must show that the officers' affirmative actions created or exposed her to an actual, particularized danger that she would not otherwise have faced.  Second, she must show that the injury she suffered was foreseeable.  Third, she must show that the officers were deliberately indifferent to the known danger."  Martinez v. City of Clovis, 943 F.3d 1260, 1271 (9th Cir. 2019) (citation omitted).  The Ninth Circuit found that those elements are met "when an officer reveals a domestic violence complaint made in confidence to an abuser while simultaneously making disparaging comments about the victim in a manner that reasonably emboldens the abuser to continue abusing the victim with impunity," and "when an officer praises an abuser in the abuser's presence after the abuser has been protected from arrest, in a manner that communicates to the abuser that the abuser may continue abusing the victim with impunity."  Id. at 1276-77.  The Court finds that Plaintiff Garcia's allegations falling within the two-year statute of limitations do not implicate the state-created danger doctrine.  That Plaintiff Garcia had to answer contempt allegations in court is not equivalent to the physical violence the Ninth Circuit found qualified as "actual, particularized danger" in Martinez.

Moreover, Martinez does not help Plaintiff Garcia here because the Ninth Circuit found at the time of its decision that those rights were not clearly established and the officers were thus entitled to qualified immunity.  If the law was not clearly established in 2019, when the Martinez decision was issued, see id. (noting the court was "establish[ing]" the application of the state-created danger doctrine to the "protections afforded (Continued . . .)

Because Plaintiff Garcia has not identified any constitutional harm flowing from the incident report, Defendants Arakawa and Hee are entitled to qualified immunity.

### 3. Whether the Rights Were Clearly Established

Although the Court has already found that Plaintiff Garcia has failed to show that Defendants Arakawa and Hee violated her right to bodily integrity, the Court goes on to address the second prong of the qualified immunity analysis: whether that right was clearly established.

Plaintiff Garcia argues that actions which are malum in se support a denial of qualified immunity. The case to which Plaintiff Garcia cites involved allegations against a police officer who touched and made inappropriate comments to that plaintiff. Fontana v. Haskin, 262 F.3d 871, 875 (9th Cir. 2001). There, the Ninth Circuit expressly did not address qualified immunity "other than to note that the alleged conduct, if proved, is malum in se. No reasonable officer could believe this conduct did not violate [the plaintiff's] constitutional rights." Id. at 882 n.8.

To the extent that Fontana is applicable in light of that court's express declination to address qualified immunity,

---

victims of domestic violence in situations like this one"), it certainly was not clearly established in 2016, when Defendants Arakawa and Hee acted. See Anderson v. Creighton, 483 U.S. 635, 639, 107 S. Ct. 3034, 3038, 97 L. Ed. 2d 523 (1987) (the qualified immunity analysis considers the "the legal rules that were 'clearly established' at the time [the action] was taken").

the direct sexual harassment while under police restraint that the Ninth Circuit found patently unreasonable in Fontana is distinct in kind from Defendants Arakawa and Hee assisting Defendant Lombardi by filing an incident report.   The plaintiff in Fontana was handcuffed in the back of a police car and a police officer sat in the back of the vehicle next to her, physically touched her, and made sexual comments to her while his partner drove.   See Fontana, 262 F.3d at 875.   Here, Defendants Arakawa and Hee filed an incident report containing the representations presented to them by Defendant Lombardi, while Plaintiff Garcia was living thousands of miles away, that Plaintiff Garcia did not learn about for months until Defendant Lombardi himself sent to her attorney the report pursuant to a discovery request, and that never resulted in charges being filed by HPD and the Honolulu Prosecutor.

The Court acknowledges Plaintiff Garcia's allegations of significant emotional harm based on her fear of ramifications stemming from the incident report and does not condone Defendant Lombardi's upsetting actions.   But Defendants Arakawa and Hee were only involved in filing the single incident report, and the Court again notes that courts in this district have held that even false police reports do not constitute a constitutional violation.   Nor has Plaintiff Garcia alleged a constitutional harm flowing from the report.

In conclusion, the Court finds that Plaintiff Garcia has failed to sufficiently allege and failed to establish any material issue of fact that Defendants Arakawa and Hee violated her substantive due process constitutional rights and, further, that Defendants Arakawa and Hee are entitled to qualifieid immunity.  Accordingly, the Court GRANTS Defendant Arakawa and Hee's Motion for Judgment on the Pleadings, and the substantive due process claim asserted against them is DISMISSED.

## III.   Section 1983 Claims Against Defendant Honolulu (Count III)

Plaintiff Garcia also asserts a § 1983 claim against Defendant Honolulu for municipal liability under Monell, 436 U.S. 658.  Defendant Honolulu argues that summary judgment should be granted in its favor because (1) Plaintiff Garcia's claims are barred by the statute of limitations; (2) Plaintiff Garcia cannot demonstrate any underlying equal protection or substantive due process violation; and (3) no unlawful practice or custom exists in the Honolulu Police Department, as is required to assert municipal liability, nor are the other elements of municipal liability met.

### A. Statute of Limitations

#### 1.   Erosion of the Continuing Violations Doctrine

Both Plaintiff Garcia's initial Complaint and her now-operative First Amended Complaint include allegations of events that date back to 2008.  Because the initial Complaint was filed

on March 15, 2018, the parties initially disputed whether the claims were time-barred by the two-year statute of limitations. In its 11/16/2018 Order, the Court found that Plaintiff Garcia's claims against Defendant Honolulu qualified as a continuing violation and were not time-barred.[21/]  11/16/2018 Order at 22.

Defendant Honolulu now argues that the Court's finding was erroneous based on a Ninth Circuit case decided after the Court's prior orders.  In Bird v. Department of Human Services, 935 F.3d 738, 746-49 (9th Cir. 2019), the Ninth Circuit addressed what remains of the continuing violations doctrine in light of certain case law limiting its application, referring extensively to the United States Supreme Court decision in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002).  The court found that, except for a hostile work environment exception, "the serial acts branch [of the continuing violations doctrine] is virtually non-existent."  935 F.3d at 748.  As to the systemic branch of the continuing violations doctrine, the court particularly noted a remaining application to "class-wide pattern-or-practice claims," but "refused to apply the systematic branch to rescue individualized claims that are otherwise time-barred."  Id.

---

[21/] As against the individual officers, the Court found that Plaintiff could only recover for those claims involving non-time-barred acts taken in furtherance of the discriminatory policy.  11/16/2018 Order at 24.

Citing its earlier decision in <u>Pouncil v. Tilton</u>, 704 F.3d 568 (9th Cir. 2012), the <u>Bird</u> court therefore found that a plaintiff may recover for discrete acts that occur within the limitations period, but that recovery for related discrete acts that occur prior to the limitations period cannot be saved by the continuing violations doctrine and remain time barred.  <u>Id.</u> at 749.  Indeed, the Ninth Circuit discussed at length the ability to recover for discrete acts in <u>Pouncil</u>, where it carefully differentiated between cases involving a continuing effect of an untimely violation, and cases alleging a discrete new violation.  Continuing effects, even if they occur within the limitations period, do not rescue a claim if the violation itself occurred prior to the limitations period.  <u>Id.</u> at 581. In contrast, where an entirely new discrete violation occurs within the limitations period, a plaintiff may proceed on the timely present violation regardless of whether untimely prior violations existed.[22/]  <u>Id.</u>

Pursuant to that logic, the <u>Pouncil</u> court found a 2008 violation timely alleged even though there had been a nearly

---

[22/] In the context of a Title VII claim, the Supreme Court described "termination, failure to promote, denial of transfer, or refusal to hire" as "easy to identify" discrete acts.  <u>Morgan</u>, 536 U.S. at 114.  The Court distinguished discrete acts from hostile work environment claims which, unlike discrete acts, by "[t]heir very nature involve[] repeated conduct" and "therefore cannot be said to occur on any particular day"; rather, a hostile work environment claim "occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own."  <u>Id.</u> at 115.

identical 2002 violation that was not timely.  It explained that "[t]he 2008 denial is an independently wrongful present violation, because Pouncil's claims do not rely on any acts that occurred before the statute of limitations period to establish a violation." Id.  The 2008 denial "fully establishe[d]" a violation occurred "without reaching back to the 2002 denial to establish a necessary element" of Pouncil's claims.  Id. Quoting Morgan, the Pouncil court noted that where a plaintiff has alleged timely discrete acts, she may submit prior untimely acts "as background evidence in support of a timely claim."  Id. at 578 (quoting Morgan, 536 U.S. at 113).

The Court finds that Plaintiff Garcia's equal protection claim, which asserts an ongoing pattern-or-practice of discrimination based on Plaintiff Garcia's membership in a stated class, falls into the systemic branch of the continuing violations doctrine.  While the Supreme Court declined to address how these claims fit into the continuing violations doctrine in Morgan, 536 U.S. at 115 n.9, the Ninth Circuit has "left room for the systematic branch to apply to class-wide pattern-or-practice claims." Bird, 935 F.3d at 748.  The continuing violations doctrine may therefore apply "so long as the last act evidencing the continuing practice falls within the limitations period."  Id. at 746.

The Court finds that Plaintiff Garcia's substantive due process claim, on the other hand, falls into the serial acts branch to which the continuing violations doctrine does not apply.  Id.  With respect to the substantive due process claim, Plaintiff Garcia may only invoke the untimely allegations to show motive or context.  Carpinteria Valley Farms, Ltd. v. Cty. of Santa Barbara, 344 F.3d 822, 829 (9th Cir. 2003) (time-barred acts may be considered "as evidence to establish motive and to put . . . timely-filed claims in context" (citing RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1062 (9th Cir. 2002))).

**2.   Analysis of Plaintiff Garcia's Timely Allegations**

Plaintiff Garcia here alleges violations that span back ten years from the date that she filed her Complaint.  For purposes of her equal protection claim, Plaintiff Garcia must establish that the discriminatory pattern-or-practice continued into the limitations period—meaning, Plaintiff Garcia must establish some timely conduct constituting a violation of her equal protection right.  For purposes of her substantive due process claim, Plaintiff Garcia may only recover for violations within the limitations period.[23]  The Court next considers

---

[23] Although the Court may consider untimely allegations in its analysis of motive and context, Carpinteria Valley Farms, Ltd. v. Cty. of Santa Barbara, 344 F.3d 822, 829 (9th Cir. 2003), the Court may not permit Plaintiff Garcia to proceed without establishing some timely abusive conduct.

whether there is sufficient evidence of any timely-alleged constitutional deprivation.

Turning to the timely alleged acts, Plaintiff Garcia alleges that her constitutional rights to equal protection and substantive due process were violated based on (1) the internal preliminary incident report written by Defendant Arakawa and approved by Defendant Hee, containing Defendant Lombardi's accusation of custodial interference, which did not result in any charges by HPD and the Honolulu Prosecutor; (2) Defendant Lee's investigation of the four preliminary Incident Reports, which Defendant Lee spent two months investigating and ultimately resulted in Defendant Lombardi's five-day suspension;[24/] (3) Defendant Lombardi's use of the Incident Reports in a Virginia show-cause hearing in an effort to hold Plaintiff Garcia in contempt of court, which caused Plaintiff considerable distress resulting in her hospitalization and impacting her employment, but was summarily dismissed by the Virginia judge with Plaintiff Garcia being awarded fees; and (4) harassing emails Defendant Lombardi sent to Plaintiff Garcia, which Plaintiff Garcia forwarded to Defendant Lee during and after his investigation into the Incident Reports.

---

[24/] The Court finds that the filing of each incident report and each of Plaintiff Garcia's PSO complaints constitutes a "discrete act" under Morgan and its progeny.

While the Court by no means condones this clearly distressing behavior, the Court does note that it is entirely non-physical and occurred while Plaintiff Garcia was living thousands of miles away in Georgia.  Garcia Decl. ¶¶ 39, 52.  As to the incident report filed by Defendants Arakawa and Hee and the investigation conducted by Defendant Lee, the Court has already reviewed extensively why those incidents do not constitute a constitutional violation.  The Court has accordingly dismissed the claims asserted against the officers based on that conduct.

Defendant Honolulu may be liable even when the individual officers are exonerated if Defendant Honolulu is separately and independently responsible for a claimed violation.  Fairley v. Luman, 281 F.3d 913, 917 (9th Cir. 2002).  Plaintiff Garcia attempts to additionally cast a separate claim against Defendant Honolulu of "collective inaction."[25/]  Horton by Horton v. City of Santa Maria, 915 F.3d 592, 604 (9th Cir. 2019).  In Horton, the Ninth Circuit considered a Fourteenth Amendment claim brought after a detainee attempted suicide.  The court found that the plaintiff had plausibly alleged collective

---

[25/] Plaintiff Garcia does not specifically characterize her claims under this line of case law, but at bottom her allegation is that Defendant Honolulu consistently failed to take sufficient action when she notified HPD of Defendant Lombardi's domestic abuse.  See, e.g., Opp. to Honolulu Motion at 9 (discussing "HPD's systematic failure to address" "[t]he abuse Plaintiff experienced over a ten-year span at the hands of Defendant LOMBARDI").

inaction by the police department because (1) a policy stating officers "should" remove belts from detainees was understood to be optional, the usual practice did not involve removing belts, and an independent audit conducted shortly before the attempted suicide showed many officers had only a "passing knowledge" of department policies; and (2) the security cameras were apparently improperly monitored because, despite informing Horton that he could wave at the cameras to obtain assistance, "no officer apparently observed Horton looping his belt through the cell door and hanging from it for over twenty minutes." Id. at 604-05.

The Ninth Circuit likewise found a sufficient showing of collective inaction in Fairley, 281 F.3d 913. In that case, the police incarcerated John Fairley for twelve days on outstanding warrants for his twin brother. Id. at 915. Both Fairley and his wife informed the police that the outstanding warrants had to be for the twin brother and the police were aware that Fairley had a twin brother. Id. During his twelve-day incarceration, Fairley repeatedly protested that he was innocent, which only resulted in a reduction of his privileges. Id. Had any officer conducted a basic fingerprint comparison or run a DMV check over the course of his twelve-day incarceration, Fairley's innocence would have been established. Id. On these facts, the Ninth Circuit held that the "alleged constitutional

deprivations were not suffered as a result of actions of the individual officers, but as a result of the collective inaction of the Long Beach Police Department." Id. at 917.

Unlike Horton and Fairley, Defendant Honolulu did take action on Plaintiff Garcia's complaints. Defendant Lee spent two months investigating the Incident Reports—an investigation that led to punitive action against Defendant Lombardi. And HPD and the Honolulu Prosecutor never filed charges against Plaintiff Garcia. Defendant Lee reviewed documents, conducted interviews, and although he found Plaintiff Garcia's PSO complaint was largely not timely filed, he ultimately recommended disciplinary action against Defendant Lombardi for Defendant Lombardi's sending of the Incident Reports outside HPD. The Court finds that these facts do not rise to the level of collective inaction.

As to the actions of Defendant Lombardi, the allegations are only relevant if taken pursuant to Defendant Honolulu's alleged longstanding practice or custom of mishandling domestic abuse complaints against HPD officers. See Bd. of Cty. Comm'rs, 520 U.S. at 404. When stated this way, however, it becomes plain that Defendant Lombardi's actions cannot have been taken pursuant to a custom of mishandling complaints of abuse by HPD officers. This is because Defendant Lombardi is the HPD officer who is alleged to have committed the

abusive acts.   It follows that Defendant Lombardi cannot have

mishandled the complaints made against him; he was not handling

those complaints at all.   Instead, the issue for municipal

liability is whether other officers provided Defendant Lombardi

favorable treatment based on his status as an HPD officer

pursuant to Defendant Honolulu's practice or custom.

In any event, the Court would dismiss allegations of

municipal liability derived from Defendant Lombardi's own

conduct because the Court finds that Defendant Lombardi was not

acting under color of law.[26/]   "There is no rigid formula for

determining whether a state or local law official is acting

under color of state law."   Anderson v. Warner, 451 F.3d 1063,

1068 (9th Cir. 2006) (internal quotation marks and citation

omitted).   Courts consider the "nature and circumstances of the

officer's conduct and the relationship of that conduct to the

performance of his official duties."   Id.

Defendant Honolulu argues that Defendant Lombardi was

"driven by his own personal desires" and that his conduct was

---

[26/] In its 11/16/2018 Order, the Court found that Plaintiff Garcia had
plausibly alleged that Defendants Arakawa, Hee, and Lee acted under color of
state law for purposes of § 1983.   11/16/2018 Order at 54-55.   In both its
11/16/2018 and 05/03/2019 Orders, the Court declined to consider whether
Defendant Lombardi had acted under color of law because Defendant Lombardi
had not yet filed a motion nor had the parties briefed the point.   05/03/2019
Order at 21 n.9.   Defendant Lombardi has not filed a dispositive motion at
this juncture either, however Defendant Honolulu's summary judgment motion
turns in part on whether there are any actionable underlying violations by
Defendant Lombardi.   Accordingly, the Court now considers whether Defendant
Lombardi acted under color of law.

"not related in any meaningful way either to his status as a
police officer or his duties." Honolulu Motion at 17. At the
hearing, Plaintiff Garcia's counsel conceded that Defendant
Lombardi was acting for his own benefit. Nevertheless,
Plaintiff Garcia argues that because Defendant Honolulu
"insinuated itself into a position of interdependence with"
Defendant Lombardi, that Defendant Honolulu "must be recognized
as a joint participant in the challenged activity," thereby
infusing Defendant Lombardi's otherwise personal conduct with
the requisite color of law. Opp. to Honolulu Motion at 7
(quoting Howerton v. Gabica, 708 F.2d 380, 383 (9th Cir. 1983)).

"A plaintiff may demonstrate joint action by proving
the existence of a conspiracy or by showing that the private
party was 'a willful participant in joint action with the State
or its agents.'" Franklin v. Fox, 312 F.3d 423, 445 (9th Cir.
2002) (quoting Collins v. Womancare, 878 F.2d 1145, 1154 (9th
Cir. 1989)). "Our cases have been careful to require a
substantial degree of cooperation before imposing civil
liability for actions by private individuals that impinge on
civil rights," id., only finding liability where "the particular
actions challenged are inextricably intertwined with those of

the government," <u>Mathis v. Pac. Gas & Elec. Co.</u>, 75 F.3d 498, 503 (9th Cir. 1996).

Plaintiff Garcia alleges three potential violations by Defendant Lombardi within the limitations period: (1) that Defendant Lombardi obtained Defendant officers Arakawa and Hee's assistance in filing the last custodial interference incident report; (2) that Defendant Lombardi used the Incident Reports in the Virginia show cause hearing; and (3) that Defendant Lombardi continued to send Plaintiff Garcia additional harassing emails. These allegations do not support a finding of joint action.

Police officers are necessarily the ones who file HPD incident reports. That police officers were involved in doing so here does not create a genuine issue of material fact as to the substantial degree of cooperation necessary to find joint action. Even assuming there was sufficient collusion to find the actions of the officers who filed the reports were inextricably intertwined with the actions of Defendant Lombardi, the Court has already found that the filing of a false police report is not alone a constitutional violation. Further, the incident reports on their face stated they were for internal purposes only, to be forwarded to the CID-Child Abuse section for investigation.

Nor is there any indication of joint action as to Plaintiff Garcia's allegations that Defendant Lombardi used the

Incident Reports in a contempt proceeding in Virginia.
Plaintiff Garcia includes no allegations that HPD generally or
any HPD officers (other than Lombardi) were involved in
Defendant Lombardi's use of the Incident Reports in the Virginia
proceeding.  Because the police were not involved, there is no
basis for the Court to find joint action.  Moreover, the Court
hearing in Virginia involved Defendant Lombardi's charges that
Plaintiff Garcia violated his visitation rights, not that any
custodial right had been violated.

The same is true of Defendant Lombardi continuing to
send Plaintiff Garcia harassing emails.  There is no evidence
that any HPD officer aside from Defendant Lombardi was involved
in sending those emails, and the Court does not ascribe their
content to Defendant Honolulu.  Although Plaintiff Garcia
forwarded those emails to Defendant Lee, this does not amount to
the substantial degree of cooperation necessary to find joint
action.

Simply put, Plaintiff Garcia has not shown any genuine
issue of material fact exists as to a timely-alleged
constitutional violation.  Accordingly, Plaintiff Garcia's
claims are barred by the statute of limitations.

B.    **Elements of a <u>Monell</u> Claim**

The Court additionally addresses the merits of
Plaintiff Garcia's municipal liability claim.  To hold a

- 71 -

municipality liable under Monell, the plaintiff must show the
municipality had a policy, practice, or custom that was the
moving force behind a violation of her constitutional rights.
Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011).
Specifically, the plaintiff must prove "(1) that [the plaintiff]
possessed a constitutional right of which [s]he was deprived;
(2) that the municipality had a policy; (3) that this policy
amounts to deliberate indifference to the plaintiff's
constitutional right; and, (4) that the policy is the moving
force behind the constitutional violation." Id. (quoting
Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill, 130 F.3d 432, 438
(9th Cir. 1997)) (alterations in original).

Plaintiff Garcia's Monell claim is premised on a
longstanding practice or custom theory. Once the plaintiff has
established the existence of a longstanding practice or custom,
"a municipality may be liable for its custom 'irrespective of
whether official policy-makers had actual knowledge of the
practice at issue.'" Navarro, 72 F.3d at 714–15 (quoting
Thompson v. City of Los Angeles, 885 F.2d 1439, 1444 (9th Cir.

1989), <u>overruled on other grounds by</u> <u>Bull v. City and Cty. of San Francisco</u>, 595 F.3d 964 (9th Cir. 2010)).[27/]

In its 05/03/2019 Order, the Court found that Plaintiff Garcia had plausibly alleged the existence of a longstanding practice or custom—that is, Defendant Honolulu's alleged custom of mishandling domestic abuse complaints filed against HPD officers.  05/03/2019 Order at 39.  The Court went on to find that Plaintiff Garcia had sufficiently alleged the remaining elements of a <u>Monell</u> claim.  <u>Id.</u> at 43-49.  The Court now considers the evidence presented on summary judgment.

### 1.  Constitutional Violation Claims

Plaintiff Garcia alleges that Defendant Honolulu violated her constitutional rights to equal protection and substantive due process.

#### a.  Equal Protection

Plaintiff Garcia's class-based equal protection claim requires a showing of intentional discrimination on the

---

[27/] The Ninth Circuit has had little occasion to address <u>Monell</u> liability pursuant to a longstanding practice or custom.  Another district court aptly described how an unconstitutional practice or custom originates, stating that "[u]nlike a 'policy', which comes into existence because of the top-down affirmative decision of a policymaker, a custom develops from the bottom-up. Thus, the liability of the municipality for customary constitutional violations derives not from its creation of the custom, but from its tolerance or acquiescence in it." <u>Britton v. Maloney</u>, 901 F. Supp. 444, 450 (D. Mass. 1995).  Further, "[c]onstructive knowledge may be inferred from the widespread extent of the practices, general knowledge of their existence, manifest opportunities and official duty of responsible policymakers to be informed, or combinations of these." <u>Spell v. McDaniel</u>, 824, F.2d 1380 (4th Cir. 1987).

basis of the plaintiff's membership in an identifiable class, which in turn requires a showing of the plaintiff's membership in an identifiable class and a similarly-situated Compare Class.[28/] _Gallinger_, 898 F.3d at 1016 (9th Cir. 2018).

Plaintiff Garcia's identifiable class is victims of domestic abuse whose abusers are HPD officers.  In addition to her claims that she was subjected to domestic abuse by Defendant Officer Lombardi, Plaintiff Garcia alleges that Officer Cachola abused his girlfriend and that HPD mishandled its response.  FAC ¶ 165.  Defendant Honolulu states in its Concise Statement of Fact that "[i]n 2014, after learning of the incident involving Officer Darren Cachola, HPD added a course to its Annual Recall Training which specifically deals with officer involved domestic abuse and domestic violence."  ECF No. 133 at 3; Tsuchida Decl., ECF No. 133-8 ("Tsuchida Decl."), ¶¶ 10-11.  Plaintiff Garcia admitted her agreement to the preceding statement.[29/]  Opp. to Honolulu Motion, CSF at 5 ¶ 19.  Other than the foregoing, the parties provide scant evidence regarding Officer Cachola.

---

[28/] Although the Court has held that Plaintiff's equal protection claim is a pattern-or-practice claim amenable to the systemic branch of the continuing violations doctrine, as stated above, Plaintiff Garcia still must show that the alleged pattern-or-practice continued into the limitations period. _Bird_, 935 F.3d at 746.

[29/] The Court relies on Plaintiff Garcia's FAC, the parties' respective CSFs, and the Tsuchida Declaration for the references to the incident involving Officer Cachola.  The Court does not rely on H.B. 2133 (also discussing the incident involving Officer Cachola), for which, as discussed _infra_, it has denied judicial notice.

Plaintiff Garcia's Compare Class is victims of domestic abuse whose abusers are not HPD officers.  Plaintiff Garcia's FAC references two incidents of domestic abuse where the abuser was not an HPD officer, alleging that in both cases, the abuser was promptly arrested.  FAC ¶¶ 172-73.  One of the incidents occurred on November 18, 2018, and the second occurred on November 24, 2018.  Id.; see also Cruce Decl., ECF No. 133-1 ("Cruce Decl."); Torres Decl., ECF No. 133-7 ("Torres Decl.").  Plaintiff Garcia does not submit evidence on summary judgment pertaining to the Compare Class instances, but Defendant Honolulu submits declarations from the officers who investigated those allegations and found probable cause to arrest the alleged abusers.  Cruce Decl.; Torres Decl.

To establish an equal protection violation, Plaintiff Garcia must show the Defendant Honolulu unconstitutionally discriminated between the two classes by showing either intentional discrimination or deliberate indifference.  The Court has herein found that Defendant Lee did not engage in unconstitutional discrimination and dismissed the equal protection claim asserted against him.  However, Defendant Honolulu may still be found liable if Defendant Honolulu independently discriminated against Plaintiff Garcia based on her membership in the identified class.  See Fairley, 281 F.3d at 917.

As discussed below in its analysis of deliberate indifference, Defendant Honolulu has submitted evidence that in cases of domestic abuse alleged against its officers, HPD performs investigations, arrests, and submits allegations to the prosecutor.  See Nakasone Decl., ECF No. 133-5 ("Nakasone Decl.").  Defendant Honolulu also submits evidence that it conducted detailed investigations of Plaintiff Garcia's own complaints.  Johnson Decl., ECF No. 133-4 ("Johnson Decl."); Thornley Decl., ECF No. 133-6 ("Thornley Decl."); see also Lee Decl.  That Defendant Honolulu was appropriately investigating Plaintiff Garcia's allegations of officer-involved domestic abuse is supported by the fact that the independent Ottawa Police Department reached the same conclusion as HPD in investigating the allegations of harassment brought by Plaintiff Garcia in her 2015 PSO complaint—that the allegations were better treated as family dispute, not a criminal matter.  Lee Decl. ¶ 50.

Further, after the incident involving Officer Cachola, Defendant Honolulu took action by adding additional Annual Recall Training specifically dealing with officer-involved domestic abuse.  Tsuchida Decl. ¶¶ 10-11.  Defendant Honolulu's active response to the only other incident in Plaintiff Garcia's identified class undermines the conclusion that Defendant Honolulu was intentionally discriminating against or

deliberately indifferent to victims of officer-involved domestic abuse.

In support of her claim of discrimination based on her membership in the identified class, Plaintiff Garcia submits the Davis Report.  Opp. to Honolulu Motion, CSF, ECF No. 158-4.[30/] Initially, the Court notes that Ms. Davis includes some statements that she believes Plaintiff Garcia was treated differently based on her abuser being an HPD officer (the membership class), see e.g., Davis Report at ¶ 8, but the Court finds the statements of this kind are conclusory.  This is especially so given that Ms. Davis does not address how instances of non-officer-involved domestic abuse are treated and thus provides no basis for asserting Plaintiff Garcia was treated any differently.  In terms of factual evidence, Ms. Davis highlights certain areas she finds deficient in HPD policy as well as HPD's handling of Plaintiff Garcia's 2008 allegations of domestic abuse.

Ms. Davis first acknowledges that HPD has at least three policies regarding officer-involved domestic abuse.  Davis Report ¶ 5 (citing "HPD Policy Number 3.26 Employees Involved in

---

[30/] The Court previously referred to the Davis Report with respect to Defendant Lee's motion, citing Plaintiff Garcia's opposition thereto. Plaintiff Garcia submits identical exhibits in opposition to both Defendant Lee's motion and Defendant Honolulu's motion.  Accordingly, the "Davis Report" refers to either or both of ECF Nos. 157-4 (Opp. to Lee Motion, CSF) and 158-4 (Opp. to Honolulu Motion, CSF).

Domestic Violence"; "HPD Policy Number 3.12 Employee Early
Recognition System"; and HPD Policy Number 7.09, which Plaintiff
Garcia's FAC identifies as being titled "Court Orders for
Protection," FAC ¶ 133, and describes as pertaining to
allegations of officer-involved domestic abuse (see FAC ¶¶ 152-
57)); see also Davis Report ¶ 5 (citing "HPD Policy Number 4.18
Abuse of Family or Household Members" which would apply to both
officer-involved domestic violence and ordinary cases).

Ms. Davis states that HPD should have a "requirement
for training for agency personnel on responding to officer-
involved intimate partner violence," and does not.  Davis Report
¶ 5.  But while it may be worthwhile to have a specific officer-
involved domestic violence policy, HPD's failure to do so simply
means that HPD is not singling out officer-involved domestic
violence for unique treatment.  That is, HPD's policy, in the
absence of a policy unique to officer-involved domestic abuse,
is to treat all cases of domestic abuse the same.  This is
consistent with, not a violation of, equal protection.  See Lee
v. City of Los Angeles, 250 F.3d 668, 687 (9th Cir. 2001)
(rejecting an equal protection claim that the City provided
insufficient training regarding mentally disabled individuals,
because providing specific training as to disabled individuals
would be treating them differently from—not the same as—others
similarly situated).

Ms. Davis also states that HPD's policy pertaining to officer-involved domestic violence was issued in the year 2000 with an instruction to post on the bulletin board for one week, which "trivializes the issue of police-perpetrated domestic violence." Davis Report ¶ 5. The Court declines to find an equal protection violation based on the amount of time a policy was posted on a bulletin board twenty years ago, especially where it predates the relevant time period (here beginning in 2008).

Ms. Davis next identifies six ways in which she believes HPD mishandled Plaintiff Garcia's 2008 allegations against Defendant Lombardi. Pursuant to a policy requiring "appropriate intervention," Ms. Davis states that Defendant Lombardi should have been subject to a division-level commander employee review at three different points during 2008 and was not. Id. She further states that in June 2008 HPD improperly waited three days after serving the protective order on Defendant Lombardi to remove his firearms in violation of HPD policy. Id. Ms. Davis also states that HPD should have performed a lethality assessment on Plaintiff Garcia in either March or June of 2008 pursuant to HPD policy, which would have shown that Plaintiff Garcia was at a high risk for homicide. Id. ¶ 6.

Further, Plaintiff Garcia filed a police report in June 2008 against Defendant Lombardi and was told by an HPD officer that the report lacked the elements of a criminal offense; according to Ms. Davis, this was an improper response because it was the officer's obligation to investigate the claims and determine whether there was probable cause of a crime. Id. ¶ 9. Ms. Davis also identifies instances in June, September, and November of 2008 when Defendant Lombardi violated Plaintiff Garcia's protective orders but was not arrested or subject to administrative action for doing so, stating this was in violation of HPD policy. Id. Finally, in June 2008 Defendant Lombardi told another HPD officer that he was concerned Plaintiff Garcia would make a false report against him.[31] In response, that officer authored a report stating that she was "familiar with circumstances surrounding events which confirm Officer Lombardi's concerns," which Ms. Davis identifies as evidence of collusion between the officers. Id. at ¶ 10.

The entire list of purported failures in HPD's investigations occurred in the year 2008 and relate only to Plaintiff Garcia's case. This is problematic for multiple reasons. First, because it only goes to the events in 2008, the

---

[31] The Davis Report identifies this incident as occurring in June 2018, but Plaintiff Garcia's FAC references the report as being dated June 2008, which is substantially more consistent with the chronology presented. FAC ¶ 88. The Court therefore understands the Davis Report's reference to 2018 to be a typographical error.

Davis Report fails to show a pattern or practice of equal
protection violations extended into the 2016-2018 limitations
period, as required to establish a viable claim.

Second, because it relates only to Plaintiff Garcia's
case, the Davis Report fails to establish any differential
treatment between the identified classes.  Assuming HPD violated
certain policies in Plaintiff Garcia's case, that fact is only
relevant to an equal protection violation if HPD followed those
same policies in the Compare Class instances.  Although the
Davis Report contains certain conclusory statements that the
cited deficiencies in handling Plaintiff Garcia's complaints
occurred because her abuser was an HPD officer, it contains no
facts representing how the Compare Class was treated or whether
HPD policy was followed in those cases.[32/]  Again, Plaintiff
Garcia does not offer evidence—in the Davis Report or otherwise—
showing that the Compare Class was treated any differently.
Plaintiff Garcia instead relies solely on the allegations in her
First Amendment Complaint as to the two November 2018 Compare
Class instances.  FAC ¶¶ 172-73.  Defendant Honolulu, for its
part, provides declarations from the officers who investigated

---

[32/] At the end of her report, Ms. Davis lists the documents she reviewed
"to form [her] opinions."  Davis Report ¶ 11.  The Court notes that Ms.
Davis' review appears to have been limited to documents in Plaintiff Garcia's
case, HPD policies, and an HPD organizational chart.  Id.  To the extent that
Ms. Davis formed the opinion that Plaintiff Garcia was treated differently
based on her abuser being an HPD officer without having reviewed HPD's
response in any other cases of alleged domestic abuse, the Court finds that,
in addition to being conclusory, the statement is unsupported.

the Compare Class instances.  And those declarations, coupled
with the declarations from the officers who investigated
Plaintiff Garcia's allegations, provide legitimate bases for the
chosen response.  <u>Compare</u> Cruce Decl. & Torres Decl. <u>with</u>
Johnson Decl. & Thornley Decl.

Third, it is notable that the Davis Report emphasizes
issues of physical domestic violence.  Ms. Davis contends that
Plaintiff Garcia was at a high risk of homicide, that Defendant
Lombardi's guns were not taken away quickly enough, and cites to
policies involving violence (e.g., HPD Policy Number 3.26, which
addresses preventing violence and responses "[w]hen acts of
violence occur," FAC ¶ 142; Davis Report ¶ 5).  The evidence in
Plaintiff Garcia's case, on the other hand, does not involve
allegations of violence other than the alleged and disputed
sexual assault on the minor children.  The disparity between the
concerns raised by Ms. Davis and the facts in this case limit
the usefulness of the report.

Because Defendant Honolulu met its initial burden of
identifying the absence of a genuine issue of material fact as
to Plaintiff Garcia's failure to establish her claim that HPD
violated her equal protection rights by exhibiting
unconstitutional intent or treating the identified classes
differently, and Plaintiff Garcia has failed to show evidence

that a genuine issue of material fact remains for trial, Plaintiff Garcia's equal protection claim fails.

### b.   Substantive Due Process

Plaintiff Garcia also alleges that Defendant Honolulu violated her right to bodily integrity, which is a type of substantive due process claim protected by the Due Process Clause of the Fourteenth Amendment.  Under Bird, Pouncil, and Morgan, the continuing violations doctrine does not permit Plaintiff Garcia to recover for acts that occurred prior to the limitations period.  Moreover, in order to recover for the alleged violations that occurred within the limitations period, Plaintiff Garcia must be able to show that those are independent discrete violations—meaning, Plaintiff Garcia must be able to show a complete violation without reaching back to any untimely conduct in order to establish a necessary element of her claim, except that she may rely on untimely conduct to show motive and provide context for her timely claims.  Pouncil, 704 F.3d at 581; Carpinteria, 344 F.3d at 829.

The threshold standard for judging a substantive due process claim is whether the challenged conduct is so arbitrary and capricious that it "shocks the conscience and violates the decencies of civilized conduct."  Lewis, 523 U.S. at 846 (internal quotation marks omitted).  "[O]nly the most egregious official conduct can be said to be arbitrary in a constitutional

sense." <u>Brittain v. Hansen</u>, 451 F.3d 982, 991 (9th Cir. 2006) (quoting <u>Lewis</u>, 523 U.S. at 846).  In addition to conscience-shocking action, a plaintiff must show a government deprivation of life, liberty, or property because "there is no general liberty interest in being free from capricious government action."  <u>Id.</u> (internal quotations marks and citation omitted).

Plaintiff Garcia argues that Defendant Honolulu violated her right to substantive due process because Defendant Honolulu's alleged custom of mishandling complaints alleging domestic abuse by HPD officers "permits, allows, encourages, and emboldens police officers to commit acts under color of law which violate a victim's constitutional right to bodily integrity."  FAC ¶ 216.  Considering the timely allegations, Plaintiff Garcia has not shown any violation of her right to bodily integrity by Defendant Honolulu.

Plaintiff Garcia does allege that Defendant Lombardi harassed her, but as explained above, Defendant Lombardi's personally-motivated conduct cannot be attributed to Defendant Honolulu.  The Court has now found that the timely-alleged incident report did not amount to a substantive due process violation.  Plaintiff Garcia generally alleges that Defendant Honolulu took insufficient action to protect her, but "[t]he general rule is that a state is not liable for its omissions and the Due Process Clause does not impose a duty on the state to

protect individuals from third parties."[33/] Martinez v. City of
Clovis, 943 F.3d 1260, 1271 (9th Cir. 2019).  The Court
addressed this point in its dismissal of the substantive due
process claim asserted against Defendants Arakawa and Hee, where
the Court explained that substantive due process claims
typically involve unjustifiable deliberate conduct; negligence
necessarily does not constitute a violation and "when
culpability falls between negligence and intentional conduct [it
becomes] a matter for closer calls."  Lewis, 523 U.S. at 834.

Plaintiff Garcia has not submitted evidence of
"deliberate decisions of government officials to deprive [her]
of life, liberty, or property."  Daniels, 474 U.S. at 331.  And
in any event, as reviewed in the Court's discussion of the equal
protection claim asserted against Defendant Honolulu, supra, and
in its discussion on the asserted custom, infra, the purported
custom is not borne out by the evidence.  Defendant Honolulu has
provided substantial evidence that it in fact conducts
investigations of allegations regarding officer-involved
domestic abuse—evidence that Plaintiff Garcia fails to refute.

---

[33/] "There are two exceptions to this general rule.  First, a special
relationship between the plaintiff and the state may give rise to a
constitutional duty to protect.  Second, the state may be constitutionally
required to protect a plaintiff that it affirmatively places in danger by
acting with deliberate indifference to a known or obvious danger."  Martinez
v. City of Clovis, 943 F.3d 1260, 1271 (9th Cir. 2019) (internal citation,
quotation marks, ellipses, and footnote omitted).  Plaintiff Garcia does not
allege a special relationship and the Court has already discussed why the
state-created danger doctrine does not apply.

Moreover, Plaintiff Garcia points to no timely discrete violation of her right to bodily integrity that Defendant Honolulu should have protected her from.  Again, Defendant Honolulu did in fact conduct investigations of Plaintiff Garcia's complaints, despite that Plaintiff Garcia believes more action should have been taken.

Defendant Honolulu has identified the absence of a genuine issue of material fact that Plaintiff Garcia failed to establish her claim that HPD violated her substantive due process rights, and Plaintiff Garcia has failed to show evidence that creates a genuine issue of material fact remains for trial. Accordingly, Plaintiff Garcia's substantive due process claim fails.

### 2.   Longstanding and Widespread Custom

"[A]lthough the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution," municipalities may be liable for "constitutional deprivations visited pursuant to governmental 'custom'" if that custom is "persistent and widespread."  Monell, 436 U.S. at 690-91 (internal quotation marks and citation omitted).  "Liability for improper custom may not be predicated on isolated or sporadic incidents," rather, "it must be founded upon practices of sufficient duration, frequency and consistency that the

conduct has become a traditional method of carrying out policy." Trevino, 99 F.3d at 918 (9th Cir. 1996).  That is, the alleged custom must be both widespread and longstanding.

In its 05/03/2019 Order, the Court found that Plaintiff Garcia had adequately alleged a longstanding custom of mishandling domestic abuse complaints filed against HPD officers.  05/03/2019 Order at 39.  The Court included in its holdings findings made by the Hawai`i State Legislature in H.B. No. 2133 regarding issues of domestic abuse in Hawai`i between 2008 and 2014, of which the Court took judicial notice. 05/03/2019 Order at 28, 41-43.

On summary judgment, the Court finds that judicial notice of the facts asserted in H.B. No. 2133 is inappropriate because Defendant Honolulu heavily contests those facts, and Plaintiff Garcia has not shown the facts are beyond dispute. Owino v. Holder, 771 F.3d 527, 534 n.4 (9th Cir. 2014) (denying judicial notice of an "Amnesty International article about conditions in Kenya" because "[t]he government does not concede that the facts in this article are beyond dispute, and Owino has not so demonstrated"); see also Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001); Honolulu Motion at 20-21 ("These off-handed statements made as part of the Legislative process are not admissible evidence, and thus should not be credited for purposes of summary judgment."); Honolulu Reply at

6-8 (explaining that "Rule 201(b) only authorizes a court to take judicial notice of facts 'not subject to reasonable dispute'" and stating that Defendant Honolulu "vigorously disputes" the legislative findings in H.B. 2133); Nakasone Decl. (undermining the assertions in H.B. 2133 as to Defendant Honolulu's insufficient action on officer-involved domestic abuse cases by showing actions taken by HPD on allegations of officer-involved domestic abuse); Johnson Decl. (same, by showing HPD investigated allegations of domestic abuse asserted against Defendant Lombardi); Thornely Decl. (same).

Defendant Honolulu argues that in the absence of the findings contained in H.B. No. 2133, Plaintiff Garcia has failed to show the existence of a longstanding and widespread custom. Even assuming constructive knowledge by Defendant Honolulu of all of Plaintiff Garcia's allegations, the Court nevertheless agrees.

First, Defendant Honolulu shows that, contrary to Plaintiff Garcia's allegations, it does take action on allegations of officer-involved domestic abuse.  Defendant Honolulu submits the Declaration of Brandon Nakasone, who has worked in the PSO-CIS office for the past eight years, and who details the number of investigations and actions taken in cases where allegations of domestic abuse are made against HPD officers.  Plaintiff Garcia's allegation of Defendant Honolulu's

near-total inaction is undermined by evidence that Defendant Honolulu is conducting investigations, arresting its own officers, and sending reports regarding some of the complaints to the prosecutor's office for further action. Defendant Honolulu's alleged inaction is likewise undermined by evidence that it did take action on the complaints made by Plaintiff Garcia against Defendant Lombardi, Johnson Decl.; Thornley Decl.; see also Lee Decl., and did take action by amending its Annual Recall Training after the incident involving Officer Cachola. Tsuchida Decl. ¶¶ 10-11. This latter change occurred in 2014, suggesting at that time no such custom existed.

Second, Plaintiff Garcia fails to show that the investigations of her complaints were in fact substandard. As to the 2008 investigations, Defendant Honolulu submits declarations from the officers who conducted these investigations, each of whom reviews the actions taken during the investigations and the relevant bases therefore.[34]   Johnson Decl.; Thornley Decl. As to the 2015 PSO complaint, the Ottawa

---

[34] As discussed above, the Davis Report does identify certain ways in which she believes HPD might have better handled Plaintiff Garcia's allegations of domestic abuse in 2008. But in order for the purported deficiencies to be relevant to the asserted custom, they must have been practices used in Compare Class cases of domestic abuse (where the abuser is an ordinary citizen) and not used in cases of officer-involved domestic abuse. The Davis Report is specific to Plaintiff Garcia's case, and aside from citing HPD policy, does not address HPD's general practices. Because Defendant Honolulu has met its initial burden of identifying the absence of a genuine issue of material fact as to the existence of a custom, Plaintiff Garcia was required to come forward with facts showing there is a genuine issue for trial. This she has failed to do.

Police Department reached the same finding as HPD in reviewing overlapping allegations—that the contention between ex-husband and ex-wife at issue was a family dispute and did not rise to the level of a criminal offense.  See supra n.5.  An independent police department having reached the same conclusion strongly supports HPD's determinations.  That Plaintiff Garcia did not like the outcome of those investigations does not mean that the investigations were substandard.  As to the 2017 PSO complaint investigated by Defendant Lee, the Court has already addressed the sufficiency thereof.[35]

Third, the asserted Compare Class instances both occurred in November 2018.  This is in contrast to Plaintiff Garcia's allegations of mistreatment spanning the decade between 2008 and 2018, and the incident involving Officer Cachola in 2014.  Because the purported custom relies on the difference in treatment between the two groups, Plaintiff Garcia must show that Defendant Honolulu mishandled instances of officer-involved

---

[35] Further, unsustained complaints cannot alone establish a discriminatory custom.  In the absence of evidence showing that "complaints filed were meritorious but were nevertheless unsustained," this district has rejected a plaintiff's argument "that the court should infer . . . the City's failure to sustain complaints should create an inference of the City's inadequate internal investigations and disciplinary procedures."  Bartolome v. City & Cty. of Honolulu, No. CIV. 06-00176SOMLEK, 2008 WL 2736016, at *9 (D. Haw. July 14, 2008).  The court likewise rejected a theory that the municipality had ratified the officers' conduct by failing to investigate or discipline the officers, explaining "[t]he law does not say that, whenever an investigative group accepts an officer's version over a victim's differing version, this acceptance establishes a policy for which a municipality may be held liable under § 1983."  Id. (quoting Kanae v. Hodson, 294 F. Supp. 2d 1179, 1191 (D. Haw. 2003)).

domestic abuse while at the same time properly handling other instances of domestic abuse.  The difference in timing between the two groups is problematic for Plaintiff Garcia, particularly given that the Court has already found that the recent handling of Plaintiff Garcia's domestic abuse complaints does not constitute a violation and the Compare Class incidents at best only relate to the last two years.  Although the Court found these allegations sufficiently plausible to survive the minimal standard applicable on a motion to dismiss, Plaintiff Garcia has failed to buttress these allegations with evidence at the summary judgment stage.  See 05/03/2019 Order at 40.

Accordingly, the Court finds that Defendant Honolulu has identified the absence of a genuine issue of material fact as to Plaintiff Garcia's failure to establish her claim of the existence of a longstanding and widespread custom, and Plaintiff Garcia has failed to show a genuine issue of material fact remains for trial.

### 3.    Deliberate Indifference

Monell liability requires a showing that the relevant custom amounts to deliberate indifference of the plaintiff's constitutional rights.  City of Canton, 489 U.S. at 389. Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  Bd. of Cty. Comm'rs of

Bryan Cty., Okl. v. Brown, 520 U.S. 397, 410, 117 S. Ct. 1382, 1391, 137 L. Ed. 2d 626 (1997).  "Deliberate indifference exists when the need for more or different action is so obvious, and the inadequacy [of existing practice] so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."  Hyun Ju Park v. City & Cty. of Honolulu, 952 F.3d 1136, 1141 (9th Cir. 2020) (alterations in original, internal quotation marks omitted) (quoting City of Canton, 489 U.S. at 390).

        The Declaration of Brandon Nakasone detailing the investigations, arrests, and conferrals with prosecutors where HPD has received complaints of officer-involved domestic abuse shows that Defendant Honolulu has not been deliberately indifferent to such complaints.  Further, Defendant Honolulu submits a series of policies in support of its motion, and states that its "policies and procedures have developed over time—with HPD recognizing and adopting effective practices and techniques to not only better fight domestic abuse and violence within the community, but address the problem of domestic abusers within its own force."  Honolulu Motion at 4-5.  This includes Defendant Honolulu responding to an instance of officer-involved domestic abuse by adding Annual Recall Training specifically addressing that issue.  Tsuchida Decl. ¶¶ 10-11.

As pertaining specifically to Plaintiff Garcia, and even considering the allegations dating back to 2008, HPD submits evidence that it did investigate her complaints—even if Plaintiff Garcia disagreed with the conclusions thereof.[36/]  See Johnson Decl. (describing his investigation of the 2008 complaint of sexual assault against the minor children); Thornley Decl. (same); Lee Decl. (describing his investigation of the March 2017 complaint, as well as Lieutenant Lundberg's investigation of the prior June 2015 complaint); see generally Nakasone Decl. (describing action taken by HPD on complaints of officer-involved domestic abuse).

For her part, Plaintiff Garcia cites the numerous complaints she made to HPD regarding Defendant Lombardi.  See generally Garcia Decl.  But Defendant Honolulu conducted investigations of those complaints and Plaintiff Garcia has not shown that those investigations were substandard.  That Plaintiff Garcia disagreed with the outcome does not amount to deliberate indifference.  The Nakasone Declaration shows that in other cases, HPD did pursue arrest and prosecution of the allegedly abusing HPD officer, and the Johnson Declaration

---

[36/] The Court has herein found that Plaintiff Garcia's substantive due process claim is a type of serial acts allegation, to which the continuing violations doctrine no longer applies.  As stated above, the Court may consider untimely allegations for its discussion of motive, as well as for context.  Even still, going back to the 2008 allegations does not save Plaintiff Garcia's claims.

(submitted by the HPD officer who investigated Plaintiff Garcia's most egregious complaints alleging the 2008 abuse of the minor children) provides a reasonable basis for the actions taken in the investigations of her complaints.  See also Lee Decl.

Plaintiff Garcia cites the Lautenberg Amendment as providing a possible motivation for the HPD to look the other way when HPD officers engage in domestic abuse.[37/]  Plaintiff Garcia's expert witness generally proposes that, under the Lautenberg Amendment, a police officer convicted of domestic abuse would be barred from carrying a firearm, and HPD (and apparently every police force in the nation) thus might avoid prosecutions because of an existing manpower shortage.  Davis Report.  That a possible motivation exists for Defendant Honolulu to avoid investigation of its own officers, however, falls far short of the standard required to show Defendant Honolulu was in fact deliberately indifferent of officer-involved domestic abuse.

The Court finds that, on the evidence presented, Defendant Honolulu has identified the absence of a genuine issue of material fact as to Plaintiff Garcia's failure to establish

---

[37/] The Gun Ban for Individuals Convicted of a Misdemeanor Crime of Domestic Violence is informally known as the "Lautenberg Amendment," and is codified at 18 U.S.C. § 922(g)(9). FAC ¶ 167.  The Lautenberg Amendment, inter alia, prohibits any person who has been convicted of a misdemeanor crime of domestic violence from possessing a firearm. 18 U.S.C. 922(g)(9).

her claim HPD violated her equal protection rights by deliberate indifference to the need for more or different action regarding Plaintiff Garcia's equal protection claim.  The Court further finds that Plaintiff Garcia has failed to show that a genuine issue of material fact remains for trial.

### 4.    Moving Force

The last element of a <u>Monell</u> claim requires that the policy (or custom) is the moving force behind the ultimate injury.  <u>Oviatt</u>, 954 F.2d at 1481 (citing <u>City of Canton</u>, 489 U.S. at 391).  "For a policy to be the moving force behind the deprivation of a constitutional right, the identified deficiency in the policy must be closely related to the ultimate injury." <u>Long</u>, 442 F.3d at 1190 (quotation marks omitted, citing <u>Gibson</u>, 290 F.3d at 1196).  The plaintiff must establish that the injury would have been avoided if the proper policies had been implemented.  <u>Long</u>, 442 F.3d at 1190 (citing <u>Oviatt</u>, 954 F.2d at 1478).

Plaintiff Garcia's singular argument on this element points to a comment made by another HPD officer to Defendant Lombardi in September of 2008 which, she alleges, shows "the <u>de facto</u> policy emboldened the officer/abuser and was the moving force behind the constitutional violation."  Opp. to Honolulu Motion at 11.  The Court would not find a single comment that occurred a decade before Plaintiff Garcia filed her complaint

sufficient to constitute evidence of the moving force element.
The Court's finding of no deliberate indifference and the
absence of a widespread longstanding custom negate any
likelihood that the alleged custom was a moving force.

Because Defendant Honolulu has met its initial burden
by identifying the absence of a genuine issue of material fact
that Plaintiff Garcia has failed to establish her claim that the
alleged custom existed and the absence of a genuine issue of
material fact that Plaintiff Garcia has failed to meet any of
the <u>Monell</u> elements, and Plaintiff Garcia has failed to
establish any genuine issue of material fact remains for trial,
Plaintiff Garcia's <u>Monell</u> claim fails.

### CONCLUSION

For the foregoing reasons, the Court:

- GRANTS the Motion for Summary Judgment filed by Defendant Paul Lee, ECF No. 131;

- GRANTS the Motion for Judgment on the Pleadings filed by Defendants Lanell Arakawa and Nathan Hee, ECF No. 130; and

- GRANTS the Motion for Summary Judgment filed by the City and County of Honolulu, ECF No. 134.

The Court finds that dismissal with prejudice is
warranted as to the claims against Defendants Arakawa and Hee.
Litigation in this case has been ongoing for well over two
years.  Plaintiff Garcia has already filed a first amended

complaint, and Plaintiff Garcia was further permitted an opportunity to file a second amended complaint following the 05/03/2019 Order ruling on the prior motions to dismiss but opted not to do so.  See 05/03/2019 Order at 57.  During the more than two years of litigation, the parties have argued three sets of dispositive motions, conducted discovery, and postponed trial multiple times.  Given the procedural history and the advanced stage of litigation in this case, the Court finds dismissal with prejudice is now appropriate.

IT IS SO ORDERED:

DATED:  Honolulu, Hawai`i, September 18, 2020.

_____
Alan C. Kay
Sr. United States District Judge

Garcia v. City and County of Honolulu, et al., Civ. No. 18-00100 ACK-WRP Order Granting Defendants' Motions for Judgment on the Pleadings and to Dismiss.